Tyler M. Paetkau (SBN 146305)
Olga Savage (SBN 252009)
HUSCH BLACKWELL LLP
1999 Harrison St., Suite 700
Oakland, CA 94612
*Telephone:* 510.768.0650
*Facsimile:* 510.768.0651
Tyler.Paetkau@huschblackwell.com
Olga.Savage@huschblackwell.com

Attorneys for Defendant
TRANSDEV SERVICES, INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA GANTHER, on behalf of herself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSDEV SERVICES, INC., a Maryland Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 22CV000632<br><br>**NOTICE OF REMOVAL BY DEFENDANT TRANSDEV SERVICES, INC.**<br><br>State Complaint Filed: June 8, 2022 |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA: Please take notice that Defendant Transdev Services, Inc. ("Transdev"), by and through its undersigned attorneys, hereby removes the above-captioned civil action, and all claims and causes of action therein (the "Action"), from the Superior Court of the State of California, County of Napa, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446. As required by 28 U.S.C. § 1446(a), all process, pleadings, and orders served on Defendant Transdev in the action to date are attached hereto as Exhibit A. As the requisite "short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), Defendant Transdev states as follows:

HUSCH BLACKWELL LLP
1999 HARRISON ST., SUITE 700, OAKLAND, CA 94612
(510) 768-0650

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

## I.    INTRODUCTION

1.    As set forth below, Transdev properly removed this action to this Court pursuant to 28 U.S.C. § 1331 because this is a civil action that raises issues that directly implicate questions of federal law under Section 301 of the Labor Management Relations Act and the National Labor Relations Act. Plaintiff was a member of a union.  Her employment, as well as the employment of the putative class members, was governed by the terms of a valid Collective Bargaining Agreement.  Plaintiff's claims cannot be adjudicated without interpreting the terms of that Collective Bargaining Agreement.  Accordingly, this Court has original jurisdiction over Plaintiff's claims.

2.    Further, the diversity statute grants this Court original jurisdiction over this Action because the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states, California (Plaintiff) and Maryland and Illinois (Defendant).  28 U.S.C. § 1332. Consequently, this Court has original jurisdiction over Plaintiff's claims under both diversity jurisdiction and federal question jurisdiction.

## II.    PROCEDURAL HISTORY

3.    On June 8, 2022, Plaintiff Brenda Ganther filed a putative class action complaint in the Superior Court of California, County of Napa entitled *Brenda Ganther v. Transdev Services, Inc.*, Napa County Court Case No. 22CV000632 ("Complaint").  **See attached Exhibit ("Ex.") A.** Plaintiff purports to sue on her own behalf and on behalf of "[a]ll current and former California employees of Defendants [*sic*] since the date four (4) year prior to the filing of this complaint." (Complaint ("Compl."), ¶23.)  Plaintiff alleges the following causes of action: (1) failure to provide meal periods in violation of Labor Code §§ 226.7, 512, and 558; (2) failure to provide rest periods in violation of Labor Code §§ 226.7, 512, and 558; (3) failure to pay all wages in violation of Labor Code §§ 510, 1194, and 1194.2; (4) knowing and intentional failure to comply with itemized employee wage statement provisions in violation of Labor Code § 226(a), (e); (5) failure to timely pay wages due at termination in violation of Labor Code §§ 201-203; (6) failure to timely pay employees in violation of Labor Code § 204(a)(b); and (7) failure to reimburse for business expenses in violation of Labor Code § 2802.  (*See* Compl., ¶¶3-9, 15-20.)

4.   Plaintiff purportedly served Transdev with the Summons and Complaint on June 20, 2022. *See* **attached Ex. B.**

5.   On July 20, 2022, Transdev filed its Answer to Plaintiff's Complaint in the Napa County Superior Court.  *See* **attached Exhibit C.**

6.   Based on information and belief, there are no other pleadings filed in this matter.

## III.    FACTUAL BACKGROUND

7.   As relevant to this Court's jurisdiction conferred pursuant to 28 U.S.C. § 1331, Plaintiff specifically alleges:

    a.    "Defendants willfully deny their California employees their meal and rest periods, and fail to timely provide such, or compensation in lieu thereof, as required by Labor Code §§ 226.7, 512, and 558." (Compl., ¶15.)

    b.   "Defendant has failed to pay all over time wages due to non-exempt employees . . . . These failures to pay all overtime wages constitute violations of Labor Code § 510, 1194, 1194.2." (Compl., ¶16.)

    c.   "Defendants fail to properly itemize the wage statement of Plaintiff and members of [the] California class, in violation of Labor Code § 226(a)."   (Compl., ¶17.)

    d.   "Defendants also violate Labor Code §§ 201-203 pertaining to the waiting time penalties as a result of Defendant's failure to pay Plaintiff and the aggrieved employees in a timely manner." (Compl., ¶18.)

    e.   Defendants pay Plaintiff and its California employees on a bi-weekly basis and have failed to comply with Labor Code § 204(a), which holds that wages earned on a bi-weekly basis must be paid no later than seven calendar days following the close of the payroll period." (Compl., ¶19.)

    f.   "Defendant also failed to reimburse Plaintiff and Defendant's California employees for reasonable and necessary expenses in the course of their job duties, in violation of Labor Code § 2802." (Compl., ¶20.)

/ / /

/ / /

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

#### IV.    BASIS FOR FEDERAL QUESTION JURISDICTION

8.   This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1331, and removal is proper under 28 U.S.C. §§ 1441 and 1446, in that this is a civil action that raises issues that directly implicate questions of federal law under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") and the National Labor Relations Act, 29 U.S.C. §§ 151-169 ("NLRA").

9.   The LMRA, which is codified at Title 29 U.S.C. §§ 141-187, provides in Section 301 that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or with regard to the citizenship of the parties." 29 U.S.C. § 185(a).  Section 301 applies "beyond cases specifically alleging contract violation to those whose resolution is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract."  *Cramer v. Consolidated Freightways, Inc.,* 255 F.3d 683, 689 (9th Cir. 2001) (*en banc,* internal citations omitted); *see also Ramirez v. Fox Television Station, Inc.,* 998 F.2d 743, 748 (9th Cir. 1993) (Section 301 preempts a state law claim "if the resolution of [that] claim depends upon the meaning of a collective bargaining agreement").  Essentially, Section 301 preempts "state law claims grounded in the provisions of a CBA or requiring interpretation of a CBA."  *Kobold v. Good Samaritan Reg'l Med. Ctr.,* 832 F.3d 1024, 1032 (9th Cir. 2016).

10. Here, during the time period at issue, Transdev was a party to multiple Collective Bargaining Agreements ("CBAs") that governed the hours of work, rates of pay, and other conditions related to the employment relationship between Transdev and at least some of the putative class members, including Plaintiff Brenda Ganther, whose employment was governed by the terms of Transdev's CBA with Local Union No. 315, International Brotherhood of Teamsters.  Examples of CBAs in effect during the class period are attached as **Exhibits D to F.**

11. Section 301 of the LMRA preempts Plaintiff's theories because resolution of his claims will require interpretation of the CBAs in place during the relevant time period.  Specific provisions of the CBA that will require interpretation include, without limitation, the following:

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

a.  Ex. D at Article 12 ("Work Week and Overtime") ("Time and one-half (1 ½ shall be paid for: All hours in excess of forty (40) hours per week.  Hours in excess of eight (8) hours per day for employees working a five (5) day week.  Hours in excess of ten (10) hours per day for employees working a four (4) day week.  Hours in excess of eight (8) hours per day for extra-board operators, unless such employee is working a 4/10 schedule as a hold-down.")

b.  Ex. D at Article 14 ("Meal and Rest Periods") ("Employees shall be provided with an unpaid meal period of at least 30-minutes when their shifts exceed six (6) hours of work ….  Every employee shall be entitled to take a ten (10) minute net rest period during each four (4) hour block of work or major fraction thereof during the course of the employee's shift, which rest period shall be paid time.")

c.  Ex. E at Section 9 ("Overtime") ("Except as set forth below, all time worked in excess of an eight (8) hour daily assignment, all time worked in excess of a ten (10) hour daily assignment and all time worked in excess of forty (40) hours per week, shall be paid at the rate of time and one half (1 ½ x) of the regular straight time rate.  Any work performed on the seventh (7th) consecutive day (Saturday) in a workweek shall be compensated at double (2x) the regular straight-time rate of pay.  All time worked in excess of twelve (12) hours per workday shall be paid at double (2x) the regular straight-time rate of pay.")

d.  Ex. F at Section 14.2 ("Overtime") ("Unless otherwise stated in this Agreement, time and one half shall be paid for all hours actually worked in excess eight (8) hours per day or forty (40) hours per week. Employees who bid or are assigned a shift comprised of a four (4) day work week containing four (4) ten (10) hour work days shall be paid time and one half for all hours actually worked in excess often (10) hours per day or forty (40) hours per week.")

e.  Ex. F at Article 18 ("Meal and Rest Breaks").

12. Moreover, Section 301 of the LMRA preempts Plaintiff's state law claims because California overtime law does not apply to an employee working under a qualifying collective

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

1  bargaining agreement.  *See Curtis v. Irwin Indus., Inc.,* 913 F.3d 1146, 1150 (2019) (citing Cal. Lab.

2  Code. § 514).

3      13. To the extent that Plaintiff has not specifically pled that her claims require interpretation of

4  the applicable CBA, she attempts to "artfully plead" her claim.  This is improper and cannot defeat

5  Section 301 preemption.  *Young v. Anthony's Fish Grottos, Inc.,* 830 F.2d 993, 997 (9th Cir. 1987).

6      14. Accordingly, this Court has original jurisdiction over Plaintiff's causes of action.

7  **V.      BASIS FOR DIVERSITY JURISDICTION**

8      15. Under 28 U.S.C. section 1332(a)(1), district courts have original jurisdiction over all civil

9  actions where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest

10  and costs, and is between citizens of different states.

11      16. Under 28 U.S.C. section 1446(c)(2)(A)(i), the notice of removal may assert the amount in

12  controversy where the initial pleading seeks either nonmonetary relief or a money judgment "where

13  the State practice either does not permit demand for a specific sum or permits recovery of damages

14  in excess of the amount demanded."  28 U.S.C. § 1446(c)(2)(A).

15      17. If the Court finds that there is complete diversity, and determines by a preponderance of the

16  evidence that the amount asserted in the notice for removal under Section 1446(c)(2)(A) exceeds

17  $75,000, then removal on that basis is proper.  *See id.* § (c)(2)(B).

18  **A.  Complete Diversity of Citizenship Exists.**

19      18. Plaintiff alleges that she is a resident of the State of California.  (Compl., ¶11).  Even though

20  Plaintiff does not specifically allege that she is a *citizen* of the State of California, Plaintiff's

21  allegation of residence is *prima facie* evidence of his domicile and citizenship.  *Marroquin v. Wells*

22  *Fargo, LLC*, 2011 WL 476540, at *2 (S.D. Cal. Feb. 3, 2011).  Plaintiff's employment records also

23  reflect that Plaintiff lived, worked, and was physically present in the State of California throughout

24  Plaintiff's employment.  Thus, Plaintiff is, and at all relevant times was, a citizen of the State of

25  California.

26      19. Transdev is, and at all relevant times was, a citizen of Maryland (its state of incorporation)

27  and Illinois (its principal place of business).

28

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

20. The Complaint also names Defendants Does 1-10.  The Complaint does not allege the citizenship of the Doe Defendants.  Further, Defendant is informed and believes that Plaintiff has neither identified nor served any of the Doe Defendants in the matter.  Accordingly, pursuant to 28 U.S.C. section 1441(a), the Court must disregard these Doe defendants' citizenship in determining the Court's diversity jurisdiction.

**B.  The Amount in Controversy Exceeds the Sum or Value of $75,000, Exclusive of Interest and Costs.**

21. Plaintiff's Complaint does not specify the amount of damages that she seeks against Transdev.  In such a situation, the U.S. Court of Appeals for the Ninth Circuit has applied the preponderance of evidence burden of proof to a removing defendant.  *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 (9th Cir. 2007).  However, the law does not require the removing defendant to research, state and prove the exact amount the plaintiff sought by filing suit.  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008).  Where the complaint is ambiguous, "a defendant's reasonable extrapolations from the plaintiff's allegations" may be sufficient to establish the amount in controversy.  *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1041 (N.D. Cal. 2014).

22. Although Transdev denies that it is liable for any damages allegedly incurred by Plaintiff, for purposes of establishing diversity jurisdiction, the Court must presume that Plaintiff will prevail on each of the asserted claims.  Here, Plaintiff seeks relief for alleged (1) failure to provide meal periods; (2) failure to provide rest period; (3) failure to compensate worked performed in excess of eight hours per day or 40 hours per week at one and one half times Plaintiff's regular rate; (4) failure to provide accurate itemized wage statements; (5) failure to page wages due at time of discharge; (6) failure to pay employees no later than seven days following the close of the payroll period; and (7) failure to reimburse for equipment purchased to perform work such as face masks.   As explained below, the amount in controversy more likely than not exceeds the jurisdictional threshold of $75,000.00.

23.  Plaintiff seeks monetary relief including (a) payment of minimum wage, overtime, meal and rest period compensation; (b) liquidated damages; (c) penalties pursuant to Labor Code sections

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

203, 226(e), 226.7, 510, 204(b) and 2802; (d) prejudgment and post-judgment interest; and (e) statutory attorney's fees and costs.

24. In the Civil Case Cover Sheet, Plaintiffs designated this case as an unlimited civil case, where the amount demanded exceeds $25,000.00. As such, Plaintiffs admit that the damages sought for the causes of action asserted in the Complaint, at minimum, exceed **$25,000** – the jurisdictional minimum amount for an unlimited civil case under California Code of Civil Procedure section 85. However, as explained below, the actual amount in controversy in this case far exceeds $25,000.

25. Transdev employed Ganther from on or about August 2, 2021 until January 2022. Thus, for purposes of calculating the amount in controversy, Transdev employed Ganther for approximately 26 weeks within the relevant statutes of limitations.

26. At the time of Ganther's separation from employment with Transdev, her hourly pay rate was $17.75/hour. Previously, during the first 90 days of her employment with Transdev, Ganther received an hourly pay rate of $15.55/hour. For purposes of calculating the amount in controversy, Transdev will utilize an averaged rate of $16.65.

27. Plaintiff alleges that she and the putative class were "routinely" unable to take uninterrupted meal and rest breaks. (Compl., ¶3.) Plaintiff's claims for violations of California meal and rest period laws adds to the amount in controversy. Assuming Transdev did not provide lawful meal and rest periods as Plaintiff alleges in her Complaint, then Plaintiff could recover one hour of pay for each missed meal and rest break. Cal. Lab. Code § 226.7; *Brinker v. Superior Court*, 53 Cal. 4th 1004, 1039 (2012). If Transdev, as alleged by Plaintiff, "routinely" failed to provide uninterrupted meal and rest breaks, then Plaintiff could recover at least $4,329.00 in premium payments for the violations ($16.65 (hourly wage) x 5 (days a week) x 26 (work weeks) x 2 (maximum hours of pay per day for missed meal and rest periods)).

28. Additionally, Plaintiff's allegations of failure to pay wages and overtime add more to the amount in controversy. Plaintiff does not limit this allegation to any particular period of time and does not specifically state how many hours on average she worked every day or every week for purposes of determining overtime. Plaintiff alleges that she and the putative class members "regularly" worked over eight hours in one day or 40 hours in one week and were not paid for the

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

1  additional hours worked, either at the straight time or overtime rate.  (Compl., ¶¶4 & 47.)  Assuming,

2  conservatively, that Plaintiff worked at least five hours of overtime per week and received no pay

3  for those five hours, that would mean $3,247.4 in overtime payments due to Plaintiff ($24.98 (one

4  and one half times the hourly wage) x 5 (days a week) x 26 (work weeks)).

5     29. Plaintiff's claim for failure to provide accurate wage statements also adds to the amount in

6  controversy.  Plaintiff alleges that Transdev provide Plaintiff with inaccurate wage statements for

7  every pay period in which Transdev allegedly did not pay to Plaintiff all wages due.  (Compl., ¶5.)

8  Therefore, it is reasonable to assume that Plaintiff's claim puts at least **$4,000** in controversy – the

9  maximum recovery under California Labor Code section 226.

10     30. Plaintiff also alleges that Transdev failed to pay her last wages in timely manner following

11  her separation.  Plaintiff's cause of action for such statutory "waiting time" penalties is $4,260.00

12  ($142 (Plaintiff's earnings per day based on her hourly rate at the time of separation ($17.75) x 30

13  days under Cal. Lab. Code § 203(a)); *see Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK

14  JCX, 2015 WL 2452755, at *6 (C.D. Cal. May 21, 2015).

15     31. Plaintiff also alleges violations of Labor Code sections 204 and 2802.  Because Plaintiff's

16  Complaint fails to allege even in a conclusory fashion the damages, penalties or recovery Plaintiff

17  seeks based on the alleged violations, Transdev does not include those two claims in its calculations,

18  but does note that those claims also add to the amount in controversy.

19     32. Plaintiff also seeks doubled or "liquidated" damages for alleged violations of the minimum

20  wage law.  (Compl., ¶49.)  Plaintiff's Complaint does not allege the number of hours she worked

21  for which she and/or the putative class members who he seeks to represent were not paid the

22  statutory minimum wage.  However, to the extent that Transdev did not pay Plaintiff for alleged

23  "off-the-clock" work, the failure to pay the statutory minimum wage would be doubled pursuant to

24  California Labor Code sections 1194, 1194.2 and 1197.  Assuming Plaintiff worked five hours per

25  week of which she was not paid in compliance with the minimum wage law, this would add an

26  additional $4,329.00 ($16.65 (hourly wage) x 5 (hours of work) x 26 (work weeks) x 2 (double time

27  for liquidated damages)).

28

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

33. Plaintiff also seeks reasonable attorneys' fees as provided for under California Labor Code sections 218.5, 1194 and 2802, and California Code of Civil Procedure section 1021.5. Where a Plaintiff seeks attorneys' fees authorized by statute, such fees may be included in the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). The fees may consist of all that would accrue when the action is resolved. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018). District courts may properly rely on their expertise in determining whether the amount in controversy, including attorneys' fees, exceeds the jurisdictional threshold. *Id*., 899 F.3d at 795. Here, even a conservative estimate of attorneys' fees in cases like the instant Action would support an amount in controversy that exceeds the jurisdictional amount.

34. As one court noted, "recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours." *Stainbrook v. Target Corp.*, No. 2:16-CV-00090-ODW, 2016 WL 3248665, at *5 (C.D. Cal. June 8, 2016) (internal citations and quotation marks omitted); *see also Lippold v. Godiva Chocolatier, Inc.*, 2010 WL 1526441, at *4 (N.D. Cal. Apr. 15, 2010) (noting "attorneys handling wage-and-hour cases typically spend far more than 100 hours on the case"); *Park v. Joong-Ang Daily News Cal., Inc.*, No. BC508362, 2016 WL 363171, at *3 (Cal. Supp. Jan. 7, 2016) (*Park*) (awarding in attorney's fees for 456.30 hours billed between two attorneys in single-plaintiff wage and hour case).

35. Assuming Plaintiff's attorneys bill at a flat rate of $350.00 per hour (an amount that was found to be reasonable for counsel in *Navarro v. Servisair*, No. C 08-02716 MHP, 2010 WL 1729538, at *3 (N.D. Cal. Apr. 27, 2010) (*Navarro*) – a wage and hour matter in 2010), and the attorneys spend a conservative estimate of 200 hours on the case through trial, plaintiff would be entitled to substantial attorneys' fees, **far beyond $75,000**. *See, e.g.*, *Park*, 2016 WL 363171, at *3 (awarding $258,155 in attorney's fees for 456.30 hours billed between two attorneys in a single plaintiff wage and hour case); *Navarro*, 2010 WL 1729538, at *3 (granting $84,531.70 in attorneys' fees for plaintiff's counsel's then firm for work-related only to a motion to remand a case); *Makabi v. Gedalia*, No. B261005, 2016 WL 815937, at *6 (Cal. Ct. App. Mar. 2, 2016) (granting plaintiff's attorneys' fees of $456,522.50 and costs in the amount of $20,343.39 for a total of $476,865.89 in another employment litigation case).

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

36. Consequently, even though Plaintiff does not provide any readily ascertainable amounts, Plaintiff's broad allegations, as explained above, that the amount in controversy more likely than not far exceeds $75,000. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002) ("By choosing to over plead in his complaint, plaintiff has chosen to accept the risk that he will plead himself into federal court").

37. Because it is facially apparent from the Complaint and other matters submitted in this Notice of Removal, Transdev has met its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum of $75,000.

**VI.    THIS REMOVAL NOTICE IS TIMELY AND SATISFIES ALL PREREQUSITES**

38.   Under 28 U.S.C. § 1446(b), a "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise . . .."  The 30-day period for removal is triggered once proper service occurs. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 354 (1999).

39.  Plaintiff purportedly served Transdev with the Summons and Complaint on June 20, 2022. This Notice of Removal is timely because it has been filed within thirty days of Plaintiff's purported service of the Complaint on [date]. *See* 28 U.S.C. § 1446; Fed. R. Civ. P. 6(a)(1).

40. No previous application has been made by Transdev for this or similar relief.

41. Written notice of the filing of this Notice of Removal will be given to the adverse parties and state court as required by 28 U.S.C. § 1446(d).

Dated: July 20, 2022                          HUSCH BLACKWELL LLP


                                    By:  /s/  Tyler M. Paetkau
                                         Tyler M. Paetkau
                                         Olga Savage

                                         Attorneys for Defendant
                                         TRANSDEV SERVICES, INC.

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

# EXHIBIT A

1 | Roman Otkupman, CSBN 249423
*Roman@OLFLA.com*
2 | Nidah Farishta, CSBN 312360
*Nidah@OLFLA.com*
3 | **OTKUPMAN LAW FIRM, A LAW CORPORATION**
5743 Corsa Ave., Suite 123,
4 | Westlake Village, CA 91362
Telephone: (818) 293-5623
5 | Facsimile: (888) 850-1310

6 | Attorney for Plaintiff,
Brenda Ganther, on behalf of herself and all others similarly situated, and on behalf of the
7 | general public

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **COUNTY OF NAPA**

10 | BRENDA GANTHER, on behalf of herself
and all others similarly situated, and on behalf | CASE NO.
11 | of the general public,
| **CLASS ACTION COMPLAINT FOR:**
12 | Plaintiff,
| 1. **FAILURE TO PROVIDE MEAL**
13 | vs. | **PERIODS IN VIOLATION OF**
**(LABOR CODE § 226.7, 512 and**
14 | **558);**
TRANSDEV SERVICES, INC., a Maryland
15 | Corporation, and DOES 1 through 10, | 2. **FAILURE TO PROVIDE REST**
inclusive. | **PERIODS IN VIOLATION OF**
16 | **(LABOR CODE § 226.7, 512 and**
Defendants. | **558);**
17 |
| 3. **FAILURE TO PAY ALL WAGES**
18 | **IN VIOLATION OF (LABOR**
**CODE §§ 510, 1194, 1194.2);**
19 |
| 4. **KNOWING AND INTENTIONAL**
20 | **FAILURE TO COMPLY WITH**
**ITEMIZED EMPLOYEE WAGE**
21 | **STATEMENT PROVISIONS**
**(LABOR CODE § 226(a), (e));**
22 |
| 5. **FAILURE TO TIMELY PAY**
23 | **WAGES DUE AT TERMINATION**
**(LABOR CODE §§ 201-203);**
24 |
| 6. **FAILURE TO TIMELY PAY**
25 | **EMPLOYEES IN VIOLATION OF**
**LABOR CODE § 204(a)(b);**
26 |
| 7. **FAILURE TO REIMBURSE FOR**
27 | **BUSINESS EXPENSES IN**
**VIOLATION OF (LABOR CODE §**
28 | **2802);**

**DEMAND FOR JURY TRIAL**

PLAINTIFF, Brenda Ganther ("Plaintiff"), on behalf of herself and other "aggrieved employees" complains of Defendants as follows:

## I.    INTRODUCTION

1.    This is a Class Action, pursuant to Code of Civil Procedure § 382 on behalf of Plaintiff and certain individuals who are employed by, or were formerly employed by, Transdev Services, Inc. and any subsidiaries or affiliated companies (hereinafter collectively referred to as "Defendants") within California.

2.    For at least four (4) years prior to the filing of this action and continuing to the present (the "liability period").

3.    Defendant failed to pay premium wages to Plaintiff and its non-exempt California employees who were denied meal and rest breaks, in violation of Labor Codes §§ 226.7, 512 and 558, and IWC Order No. 5-2001, Section 12. Plaintiff and all other non-exempt California employees were routinely unable, and not authorized, to take a (10) minute rest break and were also unable to take an uninterrupted thirty (30) minute lunch break for every shift they worked. Specifically, Plaintiff and Defendant's California employees were forced to continue working through their meal and rest breaks in order to assist Defendant's needs. Because of this, Plaintiff and Defendant's California employees were unable to take their required meal and rest breaks. Moreover, Defendants failed to pay premium wages of one hour's pay for each missed meal and rest break to Plaintiff and Defendant's California employees who were denied timely meal and rest breaks, in violation of Labor Code §§ 226.7, 512, and 558, and IWC Order No. 5-2001, Section 12.

4.    Plaintiff also claims that Defendant has failed to pay all overtime wages due to non-exempt employees. As a result, employees are not properly compensated for work performance in excess of eight (8) hours in a workday and work performed in excess of forty (40) hours in a workweek at a rate of no less than one and one-half times the regular rate of pay. Employees of Defendant regularly work in excess of eight (8) hours in a day or more than forty (40) hours per week and do not receive overtime compensation at a rate of one and one half of their regular rate. Plaintiff and Defendant's California employees were forced to work overtime and were

OTKUPMAN LAW FIRM, ALC
ATTORNEYS AT LAW

not paid for all hours worked including all straight time wages, and overtime wages. These failures to pay all overtime wages constitute violations of Labor Code §§ 510, 1194, 1194.2.

5.      Defendants failed to issue Plaintiff and Defendant's California employees accurately itemized wage statements. As Defendants failed to compensate Plaintiff and Defendants' California employees with all wages due, as detailed above, their wage statements failed to accurately state all gross wages earned, in violation of Labor Code § 226(a)(1), total hours worked, in violation of Labor Code § 226(a)(2), and net wages earned, in violation of Labor Code § 226(a)(5), and all applicable hourly rates during the pay period and the corresponding number of hours worked, in violation of Labor Code § 226(a)(9), as a result of Defendants' failure to pay all overtime wages due. These violations also violate Labor Code §§ 226(e) and 226.3 with respect to Plaintiff and Defendants' California employees.

6.       Plaintiff further alleges that Defendants paid her and Defendant's California employees their final wages beyond the time frames set forth in Labor Code §§ 201 and 202. As they were not paid all wages due and owing throughout the course of their employment as a result of Defendants' failure to pay all premium wages as detailed above, at the time of their separation, they were not paid all final wages due and owing for the entirety of their employment. This violates Labor Code §§ 201-203.

7.      Defendant pays Plaintiff and it's California employees on a bi-weekly basis and has failed to comply with Labor Code § 204(a) which holds that wages earned on a bi-weekly basis must be paid no later than seven calendar days following the close of the payroll period. Due to the violations described above, Plaintiff and Defendant's California employees did not receive all of their wages earned in a timely manner as required by Labor Code § 204(a)(b).

8.      Defendant also failed to reimburse Plaintiff and Defendant's California employees for reasonable and necessary expenses in the course of their job duties, in violation of Labor Code § 2802.

9.      Plaintiff, on behalf of herself and all proposed Plaintiff Class members (specifically, the "California Class" as defined herein), brings this action pursuant to Labor Code §§ 226.7, 512, and 558, Labor §§ 510, 1194, 1194.2, Labor § 226(a)(e), Labor Code § 201-203, Labor Code § 204(a)(b), 2802.

10.      Venue as to each Defendant is proper in this judicial district, pursuant to Code of Civil Procedure § 395.  Defendants operate within the State of California. The unlawful acts

alleged herein took place in Napa, California.

**II.    PARTIES**

**A.    PLAINTIFF**

11.    Plaintiff Brenda Ganther is a resident of Vacaville, California. At all times relevant herein, she was employed by Defendants in Napa County, California. Plaintiff was employed by Defendants as a non-exempt, hourly employee in California, including in and around the city of Napa, County of Napa. During Plaintiff's employment:

A.    Plaintiff did not receive final wages upon termination.

B.    Plaintiff and the Class were not paid in a timely manner pertaining to the waiting time penalties in accordance with Labor Code §§ 201-203.

C.    Plaintiff was forced to receive inaccurately itemized and deficient wage statements, in violation of Labor Code § 226(a).

D.    Plaintiff did not receive her compensation in accordance with Labor Code Section 204 in that Defendant failed to issues wages to its employees within seven (7) calendar days after the pay period ended.

E.    Plaintiff was required to work without meal and rest periods, nor compensation in lieu thereof, as required by the Labor Code and relevant Wage Orders.

F.    Plaintiff was required to work either in excess of eight hours per workday or in excess of forty hours per workweek without receiving compensation at a rate of one and one half the regular rate of pay.

G.    Defendant also failed to reimburse Plaintiff and Defendant's California employees for reasonable and necessary expenses in the course of their job duties, in violation of Labor Code § 2802.

**B**.    **DEFENDANTS**

12.    Defendant Transdev Services, Inc. is doing business in Napa, California. It operates within the State of California.  Defendants employed Plaintiff and similarly situated employees within California. The violations alleged herein arose in Napa, California.

13.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 10, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names under Code of Civil Procedure § 474. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants designated herein as a

DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

14.     Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. Furthermore, Defendants in all respects acted as the employer and/or joint employer of Plaintiff and the proposed Class.

## **FACTUAL ALLEGATIONS**

15.     Defendants willfully deny their California employees their meal and rest periods, and fail to timely provide such, or compensation in lieu thereof, as required by Labor Code §§ 226.7, 512, and 558.

16.     Defendant has failed to pay all overtime wages due to non-exempt employees. As a result, employees are not properly compensated for work performance in excess of eight (8) hours in a workday and work performed in excess of forty (40) hours in a workweek at a rate of no less than one and one-half times the regular rate of pay. Employees of Defendant regularly work in excess of eight (8) hours in a day or more than forty (40) hours per week and do not receive overtime compensation at a rate of one and one half of their regular rate. Plaintiff and Defendant's California employees were forced to work overtime and were not paid for all hours worked including all straight time wages, and overtime wages. These failures to pay all overtime wages constitute violations of Labor Code §§ 510, 1194, 1194.2.

17.     Defendants fail to properly itemize the wage statement of Plaintiff and members of California class, in violation of Labor Code §226(a).

18.     Defendants also violate Labor Code §§ 201-203 pertaining to the waiting time penalties as a result of Defendant's failure to pay Plaintiff and the aggrieved employees in a timely manner.

19.     Defendants pay Plaintiff and its California employees on a bi-weekly basis and have failed to comply with Labor Code § 204(a) which holds that wages earned on a bi-weekly basis must be paid no later than seven calendar days following the close of the payroll period. Due to the violations described above, Plaintiff and Defendants' California employees did not receive all of their wages earned in a timely manner as required by Labor Code § 204(a)(b).

20.     Defendant also failed to reimburse Plaintiff and Defendant's California employees for reasonable and necessary expenses in the course of their job duties, in violation of Labor Code § 2802.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on behalf of herself and all others similarly situated as a Class Action pursuant to § 382 of the Code of Civil Procedure.

22.     Plaintiff seeks to represent a class composed of and defined as follows:

## THE CALIFORNIA CLASS

23.     All current and former California employees of Defendants since the date four (4) year prior to the filing of this complaint.

24.     Plaintiff reserves the right under Rule 3.765, California Rules of Court, to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues.

25.     This action has been brought and may properly be maintained as a class action under the provisions of § 382 of the Code of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**A.     NUMEROSITY**

26.     The potential members of the proposed Class as defined are so numerous that joinder of all the members of the proposed Class is impracticable. While the precise number of proposed Plaintiff Class members has not been determined at this time, Plaintiff is informed and believes that Defendants currently employ, and during the relevant time periods employed, over seventy-five (75) Class members in the State of California.

27.     Accounting for employee turnover during the relevant periods necessarily increases this number substantially. Plaintiff alleges that Defendants' employment records would provide information as to the number and location of all proposed Plaintiff Class members. Joinder of all members of the proposed Class is not practicable.

**B.     COMMONALITY**

28.     There are questions of law and fact common to the proposed Class that predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation, whether Defendants failed to provide members of the Class with

wage statements that fully and accurately itemize the requirements set forth in Labor Code §226(a), accurate final wages, and final wages on the day of termination and or within seventy-two (72) hours of separation and whether the rest periods were timely made available.

**C.    TYPICALITY**

29.    The claims of the named Plaintiff are typical of the claims of the proposed Class. Plaintiff and all members of the proposed Class sustained injuries and damages arising out of and caused by Defendants' common course of conduct in violation of laws, regulations that have the force and effect of law, and statutes as alleged herein.

**D.    ADEQUACY OF REPRESENTATION**

30.    Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed Class. Counsel who represents Plaintiff is competent and experienced in litigating large employment class actions.

**E.    SUPERIORITY OF CLASS ACTION**

31.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all proposed Plaintiff Class members is not practicable, and questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the proposed Class. Each member of the proposed Class has been damaged and is entitled to recovery by reason of Defendant's failure to comply with Labor Code 226(a).

32.    Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**FAILURE TO PROVIDE MEAL PERIODS OR COMPENSATION IN LIEU THEREOF**

**(LABOR CODE §§ 226.7, 512 and 558)**

33.    Plaintiff incorporates paragraphs 1 through 32 of this Complaint as though fully set forth herein.

34.    Plaintiff is entitled to one hour of pay for each day that Defendants failed to properly provide one or more meal periods as set forth in the IWC Wage Orders and Labor Code §§ 226.7,

512 and 558.

35.      Plaintiff and all other aggrieved employees were routinely unable, and not authorized to take an uninterrupted 30-minute meal break for every shift they worked. Specifically, Plaintiff and Defendant's California employees were forced to continue working through their meal breaks in order to assist Defendant's needs. Because of this, Plaintiff and Defendant's California employees were unable to take their required meal breaks. Moreover, Defendants failed to pay premium wages of one hour's pay for each missed meal break to Plaintiff and Defendant's California employees who were denied timely meal breaks, in violation of Labor Code §§ 226.7, 512, and 558, and IWC Order No. 5-2001, Section 12.

36.      Pursuant to Labor Code §§ 226.7, 512 and 558 Plaintiff seeks the payment of all meal period compensations, which she was owed since she commenced to work for Defendant, according to proof.

37.      Additionally, Plaintiff is entitled to, and seeks, attorney's fees and costs, and prejudgment interest.

38.      Wherefore, Plaintiff seeks to represent request relief as described below.

## SECOND CAUSE OF ACTION

### FAILURE TO PROVIDE REST PERIODS OR COMPENSATION IN LIEU THEREOF
### (LABOR CODE §§ 226.7, 512 and 558)

39.      Plaintiff incorporates paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40.      Plaintiff is entitled to one hour of pay for each day that Defendants failed to properly provide one or more rest periods as set forth in the IWC Wage Orders and Labor Code §§ 226.7, 512 and 558.

41.      Plaintiff and all other aggrieved employees were routinely unable, and not authorized to take their 10-minute rest periods for every shift they worked. Specifically, Plaintiff and Defendant's California employees were forced to continue working through their rest breaks in order to assist Defendant's needs. Because of this, Plaintiff and Defendant's California employees were unable to take their required rest breaks. Moreover, Defendants failed to pay premium wages of one hour's pay for each missed rest break to Plaintiff and Defendant's California employees who were denied timely rest breaks, in violation of Labor Code §§ 226.7, 512, and 558, and IWC Order No. 5-2001, Section 12.

42.     Pursuant to Labor Code §§ 226.7, 512 and 558 Plaintiff seeks the payment of all rest period compensations, which she was owed since she commenced to work for Defendant, according to proof.

43.     Additionally, Plaintiff is entitled to, and seeks, attorney's fees and costs, and prejudgment interest.

44.     Wherefore, Plaintiff seeks to represent request relief as described below.

### THIRD CAUSE OF ACTION

### FAILURE TO PAY ALL WAGES IN VIOLATION OF

### (LABOR CODE §§ 510, 1194, 1194.2)

45.      Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

46.     During the liability period, Defendant failed to pay all wages to Plaintiff and Defendant's California employees.

47.     Defendant has failed to pay all overtime wages due to non-exempt employees. As a result, employees are not properly compensated for work performance in excess of eight (8) hours in a workday and work performed in excess of forty (40) hours in a workweek at a rate of no less than one and one-half times the regular rate of pay. Employees of Defendant regularly work in excess of eight (8) hours in a day or more than forty (40) hours per week and do not receive overtime compensation at a rate of one and one half of their regular rate. Plaintiff and Defendant's California employees were forced to work overtime and were not paid for all hours worked including all straight time wages, and overtime wages. These failures to pay all overtime wages constitute violations of Labor Code §§ 510, 1194, 1194.2.

48.     As a result, Plaintiff and Defendant's California employees were not paid for all hours worked including all straight time wages, and overtime wages. These failures to pay wages constitute violations of Labor Code § 510 and 1194.

49.     As a result of the unlawful acts of Defendants in willfully filing to pay all alleges, Plaintiff and Defendant's California employees have been deprived of wages in amounts to be determined at trial, and are entitled to restitution and recovery of such amounts, plus interest thereon, attorneys' fees, and costs pursuant to Labor Code § 1194 and liquidated damages pursuant to Labor Code § 1194.2.

///

OTKUPMAN LAW FIRM, ALC

ATTORNEYS AT LAW

**FOURTH CAUSE OF ACTION**

**KNOWING AND INTENTIONAL FAILURE TO COMPLY WITH ITEMIZED EMPLOYEE WAGE STATEMENT PROVISIONS (LABOR CODE § 226(a),(e))**

50.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

51.     Section 226(a) of the California Labor Code requires Defendants to provide wage statements to employees. In those wage statements, Defendants must accurately set forth, among other things, the total gross and net wages earned, and all hourly rates in effect, for Plaintiff. Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a).

52.     Defendants failed to issue Plaintiff and Defendant's California employees accurately itemized wage statements. As Defendants failed to compensate Plaintiff and Defendants' California employees with all wages due, as detailed above, their wage statements failed to accurately state all gross wages earned, in violation of Labor Code § 226(a)(1), total hours worked, in violation of Labor Code § 226(a)(2), and net wages earned, in violation of Labor Code § 226(a)(5), and all applicable hourly rates during the pay period and the corresponding number of hours worked, in violation of Labor Code § 226(a)(9), as a result of Defendants' failure to pay all overtime wages due. These violations also violate Labor Code §§ 226(e) and 226.3 with respect to Plaintiff and Defendants' California employees.

53.     The wage statements provided to Plaintiff and members of the Class fail to accurately itemize in wage statements total gross and net wages earned, and all hourly rates in effect for Plaintiff. Defendants' violations of Labor Code § 226(a) are knowing and intentional, and Plaintiff has suffered injury as a result of the receipt of defective wage statements, thereby entitling them to penalties pursuant to Labor Code § 226(e).

**FIFTH CAUSE OF ACTION**

**FAILURE TO PAY WAGES DUE AT THE TIME OF DISCHARGE IN VIOLATION OF LABOR CODE §§ 201-202, RESULTING IN SECTION 203 WAGES AND PENALTIES (WAITING TIME PENALTIES)**

54.     Plaintiff hereby incorporates preceding paragraphs of this Complaint as though fully set forth herein.

55.     At all times material herein, the California Labor Code Sections 201, 202, and 203 were in effect and binding on Defendant.

56.     California Labor Code § 202 requires employers to pay employees all wages due within seventy-two (72) hours of resignation. California Labor Code § 201 states in pertinent part that "if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages the employer must, as penalty, continue to pay the subject employee's wages until the back wages are paid in full or an action is commenced. The penalty cannot exceed 30 days of wages.

57.     Plaintiff was entitled to compensation for unpaid wages, but to date has not received such compensation. Specifically, Defendant failed to pay Plaintiff all wages due to Plaintiff at the time of her separation of employment from Defendant's. Thus, since Defendant failed to promptly pay Plaintiff all wages due to Plaintiff at the time of her separation of employment, Defendant violated Section 201 of the Labor Code and Plaintiff is therefore entitled to wages and penalties pursuant to Labor Code Section 203.

58.     More than 30 days have passed since Plaintiff's employment ended with Defendant.

59.     As a consequence of Defendant's willful conduct in not paying wages owed to Plaintiff, Plaintiff is entitled to 30 days of wages as a penalty pursuant to Labor Code § 203 for Defendant's failure to timely pay legal wages, together with attorney's fees and cost of suit, and interest pursuant to California Labor Code Section 218.5.

<u>**SIXTH CAUSE OF ACTION**</u>

**FAILURE TO TIMELY PAY EMPLOYEES IN VIOLATION OF LABOR CODE § 204(a)(b)**

60.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

61.     At all times relevant herein, Labor Code § 204 was in full force and effect and binding on Defendants.

62.     Wages must be paid according to a regularly set schedule. (Labor Code § 204). All earned wages must be paid at least twice a month, on days designated in advance by the employer. Work performed between the 1st and the 15th days, inclusive, of any calendar month must be paid between the 16th and 26th day of the same month. Work performed between the 16th and the last day of the month must be paid between the 1st and 10th day of the following month. (Labor Code § 204). Weekly or bi-weekly (every two weeks) payroll must be paid within seven (7) days of the end

of the pay period in which the wages were earned (Labor Code §§ 204(a), 204(b)).

63.    Defendants pay Plaintiff and its California employees on a bi-weekly basis and have failed to comply with Labor Code § 204(a) which holds that wages earned on a bi-weekly basis must be paid no later than seven calendar days following the close of the payroll period. Due to the violations described above, Plaintiff and Defendant's California employees did not receive all of their wages earned in a timely manner as required by Labor Code § 204(a)(b).

64.    Defendants have failed to comply with the above-section because they waited longer than seven days from the close of the pay period to pay its bi-weekly paid employees.

## SEVENTH CAUSE OF ACTION

## FAILURE TO REIMBURSE FOR BUSINESS EXPENSES IN VIOLATION OF CALIFORNIA LABOR CODE § 2802

65.    Plaintiff hereby incorporates preceding paragraphs of this Complaint as though fully set forth herein.

66.    Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

67.    Defendant failed to reimburse Plaintiff and Defendant's California employees for the equipment they purchased to perform work for Defendant such as face masks. Defendant further failed to reimburse its California employees for using their personal cell phones for the benefit of Defendant. Labor Code section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." As such, Plaintiff and Defendant's California employees have incurred reasonable and necessary expenses in the course of their job duties, which were not reimbursed by Defendant, in violation of Labor Code § 2802.

68.    Plaintiff is entitled to reimbursement for these necessary expenditures, plus interest and attorneys' fees and cost, under Labor Code § 2802.

69.        Plaintiff also requests relief as described below.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for the following relief:

1.    For penalties pursuant to Labor Code § 203 for all members of the California class who are no longer employed by Defendants, equal to their daily wage multiplied by thirty (30) days;

2.      For penalties pursuant to Labor Code § 226(e) for Plaintiff and all members of the Class;

3.      For penalties pursuant to Labor Code § 226.7 for Plaintiff and all members of the Class;

4.      For penalties pursuant to Labor Code § 510 for Plaintiff and all members of the Class;

5.      For penalties pursuant to Labor Code § 204(b) for Plaintiff and all members of the Class;

6.      For penalties pursuant to Labor Code § 2802 for Plaintiff and all members of the Class;

7.      An award of prejudgment and post-judgment interest;

8.      An award providing for payment of costs of suit;

9.      An award of attorneys' fees; and

10.     Such other and further relief as this Court may deem just and proper.

Dated:  June 8, 2022                        OTKUPMAN LAW FIRM,
                                            A Law Corporation

                                            By:   _____
                                                  ROMAN OTKUPMAN
                                                  Attorneys for Plaintiff

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated:  June 8, 2022                        OTKUPMAN LAW FIRM,
                                            A Law Corporation

                                            By:   _____
                                                  ROMAN OTKUPMAN
                                                  Attorneys for Plaintiff

# EXHIBIT B

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
06/20/2022
CT Log Number 541774319

## Service of Process Transmittal Summary

**TO:**  Beverly Wedin, Manager, Legal Department
Transdev North America, Inc.
720 E Butterfield Rd Ste 300
Lombard, IL 60148-5601

**RE:**  **Process Served in California**

**FOR:**  Transdev Services, Inc  (Domestic State: MD)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Re: BRENDA GANTHER, on behalf of herself and all others similarly situated, and on behalf of the general public // To: Transdev Services, Inc |
| **CASE #:** | 22CV000632 |
| **NATURE OF ACTION:** | Employee Litigation |
| **PROCESS SERVED ON:** | C T Corporation System, GLENDALE, CA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 06/20/2022 at 01:04 |
| **JURISDICTION SERVED:** | California |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/20/2022, Expected Purge Date: 06/25/2022 |
| | Image SOP |
| | Email Notification,  Beverly Wedin  beverly.wedin@transdev.com |
| **REGISTERED AGENT CONTACT:** | C T Corporation System |
| | 330 N BRAND BLVD |
| | STE 700 |
| | GLENDALE, CA 91203 |
| | 800-448-5350 |
| | MajorAccountTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                    Mon, Jun 20, 2022
**Server Name:**                             Janney and Janney

| | |
|---|---|
| Entity Served | TRANSDEV SERVICES, INC. |
| Case Number | 22CV000632 |
| Jurisdiction | CA |

| Inserts | | |
|---|---|---|
| | | |



22CV000632
Napa - Civil

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

TRANSDEV SERVICES, INC., a Maryland Corporation, and DOES 1
through 10, inclusive.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

BRENDA GANTHER, on behalf of herself and all others similarly
situated, and on behalf of the general public,

| |
|---|
| *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |
| FILED<br>6/8/2022 7:40 PM<br>Clerk of the Napa Superior Court<br>By: Allison Hayes, Deputy |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Historic Courthouse

825 Brown Street
Napa, CA 94559

**CASE NUMBER:**
*(Número del Caso):* 22CV000632

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Roman Otkupman, Nidah Farishta: 5743 Corsa Ave, Suite 123, Westlake Village, CA 91362; (818)293-5623

Robert E. Fleshman

**DATE:** 06/08/22                                     Clerk, by    Allison Hayes                       , Deputy
*(Fecha)*                                               *(Secretario)*                                   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Transdev Services, Inc., a Maryland Corporation

under: ☑ CCP 416.10 (corporation)                   ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

FILED
6/8/2022 7:40 PM
Clerk of the Napa Superior Court
By: Allison Hayes, Deputy

1  Roman Otkupman, CSBN 249423
   *Roman@OLFLA.com*
2  Nidah Farishta, CSBN 312360
   *Nidah@OLFLA.com*
3  **OTKUPMAN LAW FIRM, A LAW CORPORATION**
   5743 Corsa Ave., Suite 123,
4  Westlake Village, CA 91362
   Telephone: (818) 293-5623
5  Facsimile: (888) 850-1310

6  Attorney for Plaintiff,
   Brenda Ganther, on behalf of herself and all others similarly situated, and on behalf of the
7  general public

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                            **COUNTY OF NAPA**

                                                22CV000632
10 BRENDA GANTHER, on behalf of herself     CASE NO.
   and all others similarly situated, and on behalf
11 of the general public,                   **CLASS ACTION COMPLAINT FOR:**

12              Plaintiff,                   1.  **FAILURE TO PROVIDE MEAL**
                                                **PERIODS IN VIOLATION OF**
13         vs.                                   **(LABOR CODE § 226.7, 512 and**
                                                **558);**
14 TRANSDEV SERVICES, INC., a Maryland
   Corporation, and DOES 1 through 10,      2.  **FAILURE TO PROVIDE REST**
15 inclusive.                                   **PERIODS IN VIOLATION OF**
                                                **(LABOR CODE § 226.7, 512 and**
16              Defendants.                      **558);**

17                                          3.  **FAILURE TO PAY ALL WAGES**
                                                **IN VIOLATION OF (LABOR**
18                                              **CODE §§ 510, 1194, 1194.2);**

19                                          4.  **KNOWING AND INTENTIONAL**
                                                **FAILURE TO COMPLY WITH**
20                                              **ITEMIZED EMPLOYEE WAGE**
                                                **STATEMENT PROVISIONS**
21                                              **(LABOR CODE § 226(a), (e));**

22                                          5.  **FAILURE TO TIMELY PAY**
                                                **WAGES DUE AT TERMINATION**
23                                              **(LABOR CODE §§ 201-203);**

24                                          6.  **FAILURE TO TIMELY PAY**
                                                **EMPLOYEES IN VIOLATION OF**
25                                              **LABOR CODE § 204(a)(b);**

26                                          7.  **FAILURE TO REIMBURSE FOR**
                                                **BUSINESS EXPENSES IN**
27                                              **VIOLATION OF (LABOR CODE §**
                                                **2802);**
28

**DEMAND FOR JURY TRIAL**

PLAINTIFF, Brenda Ganther ("Plaintiff"), on behalf of herself and other "aggrieved employees" complains of Defendants as follows:

## I.    INTRODUCTION

1.    This is a Class Action, pursuant to Code of Civil Procedure § 382 on behalf of Plaintiff and certain individuals who are employed by, or were formerly employed by, Transdev Services, Inc. and any subsidiaries or affiliated companies (hereinafter collectively referred to as "Defendants") within California.

2.    For at least four (4) years prior to the filing of this action and continuing to the present (the "liability period").

3.    Defendant failed to pay premium wages to Plaintiff and its non-exempt California employees who were denied meal and rest breaks, in violation of Labor Codes §§ 226.7, 512 and 558, and IWC Order No. 5-2001, Section 12. Plaintiff and all other non-exempt California employees were routinely unable, and not authorized, to take a (10) minute rest break and were also unable to take an uninterrupted thirty (30) minute lunch break for every shift they worked. Specifically, Plaintiff and Defendant's California employees were forced to continue working through their meal and rest breaks in order to assist Defendant's needs. Because of this, Plaintiff and Defendant's California employees were unable to take their required meal and rest breaks. Moreover, Defendants failed to pay premium wages of one hour's pay for each missed meal and rest break to Plaintiff and Defendant's California employees who were denied timely meal and rest breaks, in violation of Labor Code §§ 226.7, 512, and 558, and IWC Order No. 5-2001, Section 12.

4.    Plaintiff also claims that Defendant has failed to pay all overtime wages due to non-exempt employees. As a result, employees are not properly compensated for work performance in excess of eight (8) hours in a workday and work performed in excess of forty (40) hours in a workweek at a rate of no less than one and one-half times the regular rate of pay. Employees of Defendant regularly work in excess of eight (8) hours in a day or more than forty (40) hours per week and do not receive overtime compensation at a rate of one and one half of their regular rate. Plaintiff and Defendant's California employees were forced to work overtime and were

1    not paid for all hours worked including all straight time wages, and overtime wages. These failures
2    to pay all overtime wages constitute violations of Labor Code §§ 510, 1194, 1194.2.

3        5.    Defendants failed to issue Plaintiff and Defendant's California employees
accurately itemized wage statements. As Defendants failed to compensate Plaintiff and Defendants'
4    California employees with all wages due, as detailed above, their wage statements failed to
5    accurately state all gross wages earned, in violation of Labor Code § 226(a)(1), total hours worked,
6    in violation of Labor Code § 226(a)(2), and net wages earned, in violation of Labor Code §
7    226(a)(5), and all applicable hourly rates during the pay period and the corresponding number of
hours worked, in violation of Labor Code § 226(a)(9), as a result of Defendants' failure to pay all
8    overtime wages due. These violations also violate Labor Code §§ 226(e) and 226.3 with respect to
9    Plaintiff and Defendants' California employees.

10        6.    Plaintiff further alleges that Defendants paid her and Defendant's California
11    employees their final wages beyond the time frames set forth in Labor Code §§ 201 and 202. As
12    they were not paid all wages due and owing throughout the course of their employment as a result
13    of Defendants' failure to pay all premium wages as detailed above, at the time of their separation,
they were not paid all final wages due and owing for the entirety of their employment. This violates
14    Labor Code §§ 201-203.

15        7.    Defendant pays Plaintiff and it's California employees on a bi-weekly basis and has
16    failed to comply with Labor Code § 204(a) which holds that wages earned on a bi-weekly basis
17    must be paid no later than seven calendar days following the close of the payroll period. Due to
18    the violations described above, Plaintiff and Defendant's California employees did not receive
19    all of their wages earned in a timely manner as required by Labor Code § 204(a)(b).

20        8.    Defendant also failed to reimburse Plaintiff and Defendant's California employees for
reasonable and necessary expenses in the course of their job duties, in violation of Labor Code §
21    2802.

22        9.    Plaintiff, on behalf of herself and all proposed Plaintiff Class members (specifically,
23    the "California Class" as defined herein), brings this action pursuant to Labor Code §§ 226.7, 512,
24    and 558, Labor §§ 510, 1194, 1194.2, Labor § 226(a)(e), Labor Code § 201-203, Labor Code §
25    204(a)(b), 2802.

26        10.    Venue as to each Defendant is proper in this judicial district, pursuant to Code
of Civil Procedure § 395. Defendants operate within the State of California. The unlawful acts
27

alleged herein took place in Napa, California.

## II.   PARTIES

### A.   PLAINTIFF

11.     Plaintiff Brenda Ganther is a resident of Vacaville, California. At all times relevant herein, she was employed by Defendants in Napa County, California. Plaintiff was employed by Defendants as a non-exempt, hourly employee in California, including in and around the city of Napa, County of Napa. During Plaintiff's employment:

A. Plaintiff did not receive final wages upon termination.

B. Plaintiff and the Class were not paid in a timely manner pertaining to the waiting time penalties in accordance with Labor Code §§ 201-203.

C. Plaintiff was forced to receive inaccurately itemized and deficient wage statements, in violation of Labor Code § 226(a).

D. Plaintiff did not receive her compensation in accordance with Labor Code Section 204 in that Defendant failed to issues wages to its employees within seven (7) calendar days after the pay period ended.

E. Plaintiff was required to work without meal and rest periods, nor compensation in lieu thereof, as required by the Labor Code and relevant Wage Orders.

F. Plaintiff was required to work either in excess of eight hours per workday or in excess of forty hours per workweek without receiving compensation at a rate of one and one half the regular rate of pay.

G. Defendant also failed to reimburse Plaintiff and Defendant's California employees for reasonable and necessary expenses in the course of their job duties, in violation of Labor Code § 2802.

### B.   DEFENDANTS

12.     Defendant Transdev Services, Inc. is doing business in Napa, California. It operates within the State of California.  Defendants employed Plaintiff and similarly situated employees within California. The violations alleged herein arose in Napa, California.

13.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 10, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names under Code of Civil Procedure § 474. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants designated herein as a

OTKUPMAN LAW
FIRM, ALC

ATTORNEYS AT LAW

DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES when such identities become known.

14.    Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants. Furthermore, Defendants in all respects acted as the employer and/or joint employer of Plaintiff and the proposed Class.

## FACTUAL ALLEGATIONS

15.    Defendants willfully deny their California employees their meal and rest periods, and fail to timely provide such, or compensation in lieu thereof, as required by Labor Code §§ 226.7, 512, and 558.

16.    Defendant has failed to pay all overtime wages due to non-exempt employees. As a result, employees are not properly compensated for work performance in excess of eight (8) hours in a workday and work performed in excess of forty (40) hours in a workweek at a rate of no less than one and one-half times the regular rate of pay. Employees of Defendant regularly work in excess of eight (8) hours in a day or more than forty (40) hours per week and do not receive overtime compensation at a rate of one and one half of their regular rate. Plaintiff and Defendant's California employees were forced to work overtime and were not paid for all hours worked including all straight time wages, and overtime wages. These failures to pay all overtime wages constitute violations of Labor Code §§ 510, 1194, 1194.2.

17.    Defendants fail to properly itemize the wage statement of Plaintiff and members of California class, in violation of Labor Code §226(a).

18.    Defendants also violate Labor Code §§ 201-203 pertaining to the waiting time penalties as a result of Defendant's failure to pay Plaintiff and the aggrieved employees in a timely manner.

19.    Defendants pay Plaintiff and its California employees on a bi-weekly basis and have failed to comply with Labor Code § 204(a) which holds that wages earned on a bi-weekly basis must be paid no later than seven calendar days following the close of the payroll period. Due to the violations described above, Plaintiff and Defendants' California employees did not receive all of their wages earned in a timely manner as required by Labor Code § 204(a)(b).

20.     Defendant also failed to reimburse Plaintiff and Defendant's California employees for reasonable and necessary expenses in the course of their job duties, in violation of Labor Code § 2802.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on behalf of herself and all others similarly situated as a Class Action pursuant to § 382 of the Code of Civil Procedure.

22.     Plaintiff seeks to represent a class composed of and defined as follows:

## THE CALIFORNIA CLASS

23.     All current and former California employees of Defendants since the date four (4) year prior to the filing of this complaint.

24.     Plaintiff reserves the right under Rule 3.765, California Rules of Court, to amend or modify the class description with greater specificity or further division into subclasses or limitation to particular issues.

25.     This action has been brought and may properly be maintained as a class action under the provisions of § 382 of the Code of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

**A.     NUMEROSITY**

26.     The potential members of the proposed Class as defined are so numerous that joinder of all the members of the proposed Class is impracticable. While the precise number of proposed Plaintiff Class members has not been determined at this time, Plaintiff is informed and believes that Defendants currently employ, and during the relevant time periods employed, over seventy-five (75) Class members in the State of California.

27.     Accounting for employee turnover during the relevant periods necessarily increases this number substantially. Plaintiff alleges that Defendants' employment records would provide information as to the number and location of all proposed Plaintiff Class members. Joinder of all members of the proposed Class is not practicable.

**B.     COMMONALITY**

28.     There are questions of law and fact common to the proposed Class that predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation, whether Defendants failed to provide members of the Class with

1  wage statements that fully and accurately itemize the requirements set forth in Labor Code §226(a),

2  accurate final wages, and final wages on the day of termination and or within seventy-two (72) hours

of separation and whether the rest periods were timely made available.

3  **C.    TYPICALITY**

4      29.    The claims of the named Plaintiff are typical of the claims of the proposed Class.

5  Plaintiff and all members of the proposed Class sustained injuries and damages arising out of and

6  caused by Defendants' common course of conduct in violation of laws, regulations that have the

7  force and effect of law, and statutes as alleged herein.

**D.    ADEQUACY OF REPRESENTATION**

8      30.    Plaintiff will fairly and adequately represent and protect the interests of the members

9  of the proposed Class. Counsel who represents Plaintiff is competent and experienced in litigating

10  large employment class actions.

11  **E.    SUPERIORITY OF CLASS ACTION**

12      31.    A class action is superior to other available means for the fair and efficient

13  adjudication of this controversy. Individual joinder of all proposed Plaintiff Class members is not

practicable, and questions of law and fact common to the proposed Class predominate over any

14  questions affecting only individual members of the proposed Class. Each member of the proposed

15  Class has been damaged and is entitled to recovery by reason of Defendant's failure to comply with

16  Labor Code 226(a).

17      32.    Class action treatment will allow those similarly situated persons to litigate their

18  claims in the manner that is most efficient and economical for the parties and the judicial system.

19  Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this

action that would preclude its maintenance as a class action.

20  

**CAUSES OF ACTION**

21  **FIRST CAUSE OF ACTION**

22  **FAILURE TO PROVIDE MEAL PERIODS OR COMPENSATION IN LIEU THEREOF**

23  **(LABOR CODE §§ 226.7, 512 and 558)**

24      33.    Plaintiff incorporates paragraphs 1 through 32 of this Complaint as though fully set

25  forth herein.

26      34.    Plaintiff is entitled to one hour of pay for each day that Defendants failed to properly

27  provide one or more meal periods as set forth in the IWC Wage Orders and Labor Code §§ 226.7,

512 and 558.

35.     Plaintiff and all other aggrieved employees were routinely unable, and not authorized to take an uninterrupted 30-minute meal break for every shift they worked. Specifically, Plaintiff and Defendant's California employees were forced to continue working through their meal breaks in order to assist Defendant's needs. Because of this, Plaintiff and Defendant's California employees were unable to take their required meal breaks. Moreover, Defendants failed to pay premium wages of one hour's pay for each missed meal break to Plaintiff and Defendant's California employees who were denied timely meal breaks, in violation of Labor Code §§ 226.7, 512, and 558, and IWC Order No. 5-2001, Section 12.

36.     Pursuant to Labor Code §§ 226.7, 512 and 558 Plaintiff seeks the payment of all meal period compensations, which she was owed since she commenced to work for Defendant, according to proof.

37.     Additionally, Plaintiff is entitled to, and seeks, attorney's fees and costs, and prejudgment interest.

38.     Wherefore, Plaintiff seeks to represent request relief as described below.

### SECOND CAUSE OF ACTION

### FAILURE TO PROVIDE REST PERIODS OR COMPENSATION IN LIEU THEREOF
### (LABOR CODE §§ 226.7, 512 and 558)

39.     Plaintiff incorporates paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40.     Plaintiff is entitled to one hour of pay for each day that Defendants failed to properly provide one or more rest periods as set forth in the IWC Wage Orders and Labor Code §§ 226.7, 512 and 558.

41.     Plaintiff and all other aggrieved employees were routinely unable, and not authorized to take their 10-minute rest periods for every shift they worked. Specifically, Plaintiff and Defendant's California employees were forced to continue working through their rest breaks in order to assist Defendant's needs. Because of this, Plaintiff and Defendant's California employees were unable to take their required rest breaks. Moreover, Defendants failed to pay premium wages of one hour's pay for each missed rest break to Plaintiff and Defendant's California employees who were denied timely rest breaks, in violation of Labor Code §§ 226.7, 512, and 558, and IWC Order No. 5-2001, Section 12.

42.     Pursuant to Labor Code §§ 226.7, 512 and 558 Plaintiff seeks the payment of all rest period compensations, which she was owed since she commenced to work for Defendant, according to proof.

43.     Additionally, Plaintiff is entitled to, and seeks, attorney's fees and costs, and prejudgment interest.

44.     Wherefore, Plaintiff seeks to represent request relief as described below.

### THIRD CAUSE OF ACTION

### FAILURE TO PAY ALL WAGES IN VIOLATION OF
### (LABOR CODE §§ 510, 1194, 1194.2)

45.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

46.     During the liability period, Defendant failed to pay all wages to Plaintiff and Defendant's California employees.

47.     Defendant has failed to pay all overtime wages due to non-exempt employees. As a result, employees are not properly compensated for work performance in excess of eight (8) hours in a workday and work performed in excess of forty (40) hours in a workweek at a rate of no less than one and one-half times the regular rate of pay. Employees of Defendant regularly work in excess of eight (8) hours in a day or more than forty (40) hours per week and do not receive overtime compensation at a rate of one and one half of their regular rate. Plaintiff and Defendant's California employees were forced to work overtime and were not paid for all hours worked including all straight time wages, and overtime wages. These failures to pay all overtime wages constitute violations of Labor Code §§ 510, 1194, 1194.2.

48.     As a result, Plaintiff and Defendant's California employees were not paid for all hours worked including all straight time wages, and overtime wages. These failures to pay wages constitute violations of Labor Code § 510 and 1194.

49.     As a result of the unlawful acts of Defendants in willfully filing to pay all alleges, Plaintiff and Defendant's California employees have been deprived of wages in amounts to be determined at trial, and are entitled to restitution and recovery of such amounts, plus interest thereon, attorneys' fees, and costs pursuant to Labor Code § 1194 and liquidated damages pursuant to Labor Code § 1194.2.

///

1
2

## FOURTH CAUSE OF ACTION

## KNOWING AND INTENTIONAL FAILURE TO COMPLY WITH ITEMIZED
## EMPLOYEE WAGE STATEMENT PROVISIONS (LABOR CODE § 226(a),(e))

3
4

50.    Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

5
6
7
8

51.    Section 226(a) of the California Labor Code requires Defendants to provide wage statements to employees. In those wage statements, Defendants must accurately set forth, among other things, the total gross and net wages earned, and all hourly rates in effect, for Plaintiff. Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a).

9
10
11
12
13
14
15

52.    Defendants failed to issue Plaintiff and Defendant's California employees accurately itemized wage statements. As Defendants failed to compensate Plaintiff and Defendants' California employees with all wages due, as detailed above, their wage statements failed to accurately state all gross wages earned, in violation of Labor Code § 226(a)(1), total hours worked, in violation of Labor Code § 226(a)(2), and net wages earned, in violation of Labor Code § 226(a)(5), and all applicable hourly rates during the pay period and the corresponding number of hours worked, in violation of Labor Code § 226(a)(9), as a result of Defendants' failure to pay all overtime wages due. These violations also violate Labor Code §§ 226(e) and 226.3 with respect to Plaintiff and Defendants' California employees.

16
17
18
19
20

53.    The wage statements provided to Plaintiff and members of the Class fail to accurately itemize in wage statements total gross and net wages earned, and all hourly rates in effect for Plaintiff. Defendants' violations of Labor Code § 226(a) are knowing and intentional, and Plaintiff has suffered injury as a result of the receipt of defective wage statements, thereby entitling them to penalties pursuant to Labor Code § 226(e).

## FIFTH CAUSE OF ACTION

21
22
23

## FAILURE TO PAY WAGES DUE AT THE TIME OF DISCHARGE IN VIOLATION
## OF LABOR CODE §§ 201-202, RESULTING IN SECTION 203 WAGES AND
## PENALTIES (WAITING TIME PENALTIES)

24
25

54.    Plaintiff hereby incorporates preceding paragraphs of this Complaint as though fully set forth herein.

26
27

55.    At all times material herein, the California Labor Code Sections 201, 202, and 203 were in effect and binding on Defendant.

56.     California Labor Code § 202 requires employers to pay employees all wages due within seventy-two (72) hours of resignation. California Labor Code § 201 states in pertinent part that "if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages the employer must, as penalty, continue to pay the subject employee's wages until the back wages are paid in full or an action is commenced. The penalty cannot exceed 30 days of wages.

57.     Plaintiff was entitled to compensation for unpaid wages, but to date has not received such compensation. Specifically, Defendant failed to pay Plaintiff all wages due to Plaintiff at the time of her separation of employment from Defendant's. Thus, since Defendant failed to promptly pay Plaintiff all wages due to Plaintiff at the time of her separation of employment, Defendant violated Section 201 of the Labor Code and Plaintiff is therefore entitled to wages and penalties pursuant to Labor Code Section 203.

58.     More than 30 days have passed since Plaintiff's employment ended with Defendant.

59.     As a consequence of Defendant's willful conduct in not paying wages owed to Plaintiff, Plaintiff is entitled to 30 days of wages as a penalty pursuant to Labor Code § 203 for Defendant's failure to timely pay legal wages, together with attorney's fees and cost of suit, and interest pursuant to California Labor Code Section 218.5.

## SIXTH CAUSE OF ACTION

**FAILURE TO TIMELY PAY EMPLOYEES IN VIOLATION OF LABOR CODE § 204(a)(b)**

60.     Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

61.     At all times relevant herein, Labor Code § 204 was in full force and effect and binding on Defendants.

62.     Wages must be paid according to a regularly set schedule. (Labor Code § 204). All earned wages must be paid at least twice a month, on days designated in advance by the employer. Work performed between the 1st and the 15th days, inclusive, of any calendar month must be paid between the 16th and 26th day of the same month. Work performed between the 16th and the last day of the month must be paid between the 1st and 10th day of the following month. (Labor Code § 204). Weekly or bi-weekly (every two weeks) payroll must be paid within seven (7) days of the end

of the pay period in which the wages were earned (Labor Code §§ 204(a), 204(b)).

63.     Defendants pay Plaintiff and its California employees on a bi-weekly basis and have failed to comply with Labor Code § 204(a) which holds that wages earned on a bi-weekly basis must be paid no later than seven calendar days following the close of the payroll period. Due to the violations described above, Plaintiff and Defendant's California employees did not receive all of their wages earned in a timely manner as required by Labor Code § 204(a)(b).

64.     Defendants have failed to comply with the above-section because they waited longer than seven days from the close of the pay period to pay its bi-weekly paid employees.

## SEVENTH CAUSE OF ACTION

## FAILURE TO REIMBURSE FOR BUSINESS EXPENSES IN VIOLATION OF

## CALIFORNIA LABOR CODE § 2802

65.     Plaintiff hereby incorporates preceding paragraphs of this Complaint as though fully set forth herein.

66.     Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

67.     Defendant failed to reimburse Plaintiff and Defendant's California employees for the equipment they purchased to perform work for Defendant such as face masks. Defendant further failed to reimburse its California employees for using their personal cell phones for the benefit of Defendant. Labor Code section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." As such, Plaintiff and Defendant's California employees have incurred reasonable and necessary expenses in the course of their job duties, which were not reimbursed by Defendant, in violation of Labor Code § 2802.

68.     Plaintiff is entitled to reimbursement for these necessary expenditures, plus interest and attorneys' fees and cost, under Labor Code § 2802.

69.     Plaintiff also requests relief as described below.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for the following relief:

1.     For penalties pursuant to Labor Code § 203 for all members of the California class who are no longer employed by Defendants, equal to their daily wage multiplied by thirty (30) days;

2.    For penalties pursuant to Labor Code § 226(e) for Plaintiff and all members of the Class;

3.    For penalties pursuant to Labor Code § 226.7 for Plaintiff and all members of the Class;

4.    For penalties pursuant to Labor Code § 510 for Plaintiff and all members of the Class;

5.    For penalties pursuant to Labor Code § 204(b) for Plaintiff and all members of the Class;

6.    For penalties pursuant to Labor Code § 2802 for Plaintiff and all members of the Class;

7.    An award of prejudgment and post-judgment interest;

8.    An award providing for payment of costs of suit;

9.    An award of attorneys' fees; and

10.    Such other and further relief as this Court may deem just and proper.

Dated: June 8, 2022              OTKUPMAN LAW FIRM,
                                 A Law Corporation


                          By: _____
                                 ROMAN OTKUPMAN
                                 Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: June 8, 2022              OTKUPMAN LAW FIRM,
                                 A Law Corporation


                          By: _____
                                 ROMAN OTKUPMAN
                                 Attorneys for Plaintiff

22CV000632
Napa - Civil

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Roman Otkupman, Esq. Bar No. 249423; Nidah Farishta, Esq. Bar No. 312360<br>Otkupman Law Firm, ALC<br>5743 Corsa Ave, Suite 123<br>Westlake Village, CA 91362<br>TELEPHONE NO.: (818) 293-5623   FAX NO.: (888) 850-1310<br>ATTORNEY FOR *(Name)*: Plaintiff Vincent Butler | **FILED**<br>6/8/2022 7:40 PM<br>Clerk of the Napa Superior Court<br>By: Allison Hayes, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Napa
STREET ADDRESS: 825 Brown Street
MAILING ADDRESS:
CITY AND ZIP CODE: Napa, CA 94559
BRANCH NAME: Historic Courthouse

CASE NAME:
Brenda Ganther v. Transdev Services, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER 22CV000632 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☑ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rule 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify)*:  Seven (7)
5. This case ☑ is ☐ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 8, 2022
Roman Otkupman
_____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
* Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
* File this cover sheet in addition to any cover sheet required by local court rule.
* If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
* Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

**CM-010**

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF NAPA
825 Brown Street, Napa, CA 94559

## Notice of Case Management Conference

**Case #: 22CV000632**    **Brenda Ganther vs  Transdev Services, Inc.**

A Case Management Conference has been scheduled in this matter pursuant to California Rule of Court 3.221.

**Date: 11/16/2022**        **Time: 8:30 AM**            **Room: Courtroom A**

The plaintiff/petitioner must include a copy of this notice with the complaint when serving the defendant/respondent.  Cross complainants must serve a copy of this notice on any new parties named to the action. (Civil only)

To learn more about the types and benefits of Alternative Dispute Resolution (ADR), and whether it may be appropriate for your case, please access the California Courts website at http://www.courts.ca.gov/programs-adr.htm.

This site also contains Judicial Council forms applicable to ADR.

## CERTIFICATE OF ELECTRONIC DELIVERY

This notice was delivered via eMail to:  roman@olfla.com

Napa Court is equipped to handle remote appearances.  With proper notice to all parties, you may be allowed to appear remotely. See CCP section 367.75.  Zoom meeting links and participant information can be found at www.napacourt.com/remote.  When appearing via video, court hearings should be treated the same as if you are appearing in Court.  Please contact the court with any questions 707-299-1100.

# EXHIBIT C

Tyler M. Paetkau (SBN 146305)
Olga Savage (SBN 252009)
HUSCH BLACKWELL LLP
1999 Harrison St., Suite 700
Oakland, CA  94612
*Telephone:*  510.768.0650
*Facsimile:*  510.768.0651
Tyler.Paetkau@huschblackwell.com
Olga.Savage@huschblackwell.com

Attorneys for Defendant
TRANSDEV SERVICES, INC.

HUSCH BLACKWELL LLP
1999 HARRISON ST., SUITE 700, OAKLAND, CA 94612
(510) 768-0650

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF NAPA

| | |
|---|---|
| BRENDA GANTHER, on behalf of herself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>TRANSDEV SERVICES, INC., a Maryland Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 22CV000632<br><br>**ANSWER BY DEFENDANT TRANSDEV SERVICES, INC. TO PLAINTIFF'S UNVERIFIED COMPLAINT**<br><br>State Complaint Filed:  June 8, 2022 |

Defendant Transdev Services, Inc.  ("Defendant") hereby submits the following answer and affirmative defenses to the unverified Complaint filed by Brenda Ganther ("Plaintiff").

## **GENERAL DENIAL**

Pursuant to California Code of Civil Procedure section 431.30, Defendant denies generally and specifically each, every, and all of the allegations of the unverified Complaint, and the whole thereof.  Defendant further denies that Plaintiff or any putative class member has sustained, or will sustain, any injury, damage, or loss by reason of any act, omission, breach, negligence, or any other conduct or in the absence thereof, on the part of Defendant, or any agent, attorney, servant, or employee of Defendant.

**AFFIRMATIVE DEFENSES**

As separate and distinct affirmative defenses to the Complaint, and to each purported cause of action therein, Defendant alleges:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Cause of Action)**

1.    Plaintiff's Complaint does not state facts sufficient to constitute a cause of action against Defendant. *See* Code of Civil Procedure Section 430.80 (indicating defense of failure to state a claim may be raised by demurrer or answer). Among other things, the Complaint is vague, fails to allege facts establishing any violation of law, and fails to allege facts establishing injury. The Complaint is vague, uncertain, ambiguous, and unintelligible, including, but not limited to, the nature of any allegedly uncompensated work time and how Defendant allegedly violated the provisions of California law enumerated in the Complaint.

**SECOND AFFIRMATIVE DEFENSE**

**(No Damages or Injury)**

2.    Any recovery on Plaintiff's Complaint is barred, in whole or in part, due to lack of any cognizable injury or damages legally compensable under law.

**THIRD AFFIRMATIVE DEFENSE**

**(Failure to Exhaust Internal Remedies)**

3.    Defendant alleges that Plaintiff's Complaint and any purported causes of action alleged therein is barred by Plaintiff's failure and the failure of putative class members to timely and successfully exhaust internal remedies, including without limitation mandatory grievance arbitration, under any applicable Collective Bargaining Agreement.

**FOURTH AFFIRMATIVE DEFENSE**

**(Exempt Pursuant to Collective Bargaining Agreement)**

4.    Defendant alleges that Plaintiff's job duties and the job duties of putative class members were dictated by and subject to a valid Collective Bargaining Agreement(s), which governed the wages, hours of work, and working conditions of Plaintiff and the proposed class of employees she seeks to represent.

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

**FIFTH AFFIRMATIVE DEFENSE**

**(Preemption)**

5.       Defendant alleges that Plaintiff's claims and the claims of putative class members are preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, and the National Labor Relations Act, 29 U.S.C. §§ 151-169, because such claims are for alleged violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce.

**SIXTH AFFIRMATIVE DEFENSE**

**(Failure to Join Necessary and Indispensable Party)**

6.       Defendant alleges that Plaintiff cannot bring a claim against Defendant without alleging and showing that Plaintiff's work duties were dictated by and subject to one or more Collective Bargaining Agreements.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Arbitration)**

7.       Plaintiff's claims and the claims of certain members of the putative class are barred to the extent that they are subject to the exclusive remedy of arbitration.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Estoppel)**

8.       The Complaint is barred in whole or in part because Plaintiff and the putative class members are estopped from pursuing the Complaint, and each of its causes of action, by reason of their own action and courses of conduct, including, but not limited to, failure to abide by company policies and practices pertaining to the allegations in the lawsuit, failing to abide by the terms of any applicable Collective Bargaining Agreements, failing to accurately record all hours worked, and failing to raise and/or stating they had not experienced the violations alleged in the Complaint.

**NINTH AFFIRMATIVE DEFENSE**

**(Equitable Defenses)**

9.       Any recovery on Plaintiff's Complaint or purported cause of action alleged therein on behalf of Plaintiff or the purported "Class members" is barred, in whole or in part, based on

principles of equity.

## TENTH AFFIRMATIVE DEFENSE

### (Estoppel)

10.    Any recovery on Plaintiff's Complaint or purported cause of action alleged therein on behalf of Plaintiff or the purported "Class members" is barred under the equitable doctrine of estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Laches)

11.    Plaintiff's Complaint is barred by the doctrine of laches.  While employed, Plaintiff and/or the purported "Class members" failed to use Defendant's internal procedures to raise any alleged wage and hour violations.  Plaintiff's undue delay in raising the alleged violations in the Complaint has prejudiced Defendant because any harm to Plaintiff and/or the purported "Class members" would have been avoided if they had reported any alleged violations through Defendant's internal procedures.

## TWELFTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

12.    The Complaint is barred in whole or in pat by the doctrine of unclean hands based on, *inter alia,* Plaintiff's and the putative class members' failure to accurately report their work times, failure to abide by Company policies and practices pertaining to the allegations in the lawsuit, and failing to abide by the terms of any applicable Collective Bargaining Agreements pertaining to the allegations in the lawsuit.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Consent)

13.    Any recovery on Plaintiff's Complaint or purported cause of action alleged therein on behalf of Plaintiff or the purported "Class members" is barred because Plaintiff and/or the purported "Class members" consented to any an all actions allegedly taken by Defendant.

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Release and Waiver)

14.     Any recovery on Plaintiff's Complaint or purported cause of action alleged therein on behalf of Plaintiff or the purported "Class members" is barred under the equitable doctrine of release and waiver.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Waiver of Meal and Rest Periods)

15.     Plaintiff is not entitled to the relief sought for the alleged underlying violations of the applicable Industrial Welfare Commission Wage Orders because he and/or the purported "Class members" were authorized and permitted to take meal and/or rest periods but chose to waive the meal and/or rest periods.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Good Faith Dispute)

16.     Plaintiff is not entitled to recover some or all of the California Labor Code penalties prayed for in the Complaint because at all times, Defendant acted in good faith and had reasonable grounds for believing its actions did not violate the law, including, but not limited to, Defendant's good faith belief that it paid all wages due and owing to Plaintiff and the putative class members based on the hours reported by Plaintiff and the putative class members during and upon termination of employment.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Privilege)

17.     Plaintiff's Complaint is barred, in whole or in part, because Defendant's conduct, if any, was privileged, performed in the exercise of an absolute right, proper and/or justified.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

18.     The Complaint, and each of its causes of action, is barred in whole or in part by the applicable statute of limitations, including but not limited to California Code of Civil Procedure sections 338(a) and 340(a), and California Business & Professions code section 17208.

### NINETEENTH AFFIRMATIVE DEFENSE

#### (Uncompensated Time *De Minimis*)

19.     Plaintiff's claims and the claims of the putative class members are barred to the extent that any uncompensated time and alleged "off the clock" work was *de minimis,* including, but not limited to, any time spent on alleged pre-shift activities.  Defendant is informed and believes that such alleged uncompensated time was so irregular or minute that it would be unreasonable to expect the time to be recorded or compensated.

### TWENTIETH AFFIRMATIVE DEFENSE

#### (Apportionment)

20.     Defendant is not legally responsible for any damages or restitution claimed by Plaintiff and the putative class members.  If, however, Defendant is found to be legally responsible, Defendant's legal responsibility is not the sole and proximate cause of any injury, and damages or restitution awarded to Plaintiff and the putative class members, if any, should be apportioned according to the respective fault and legal responsibility of all parties, persons and entities, and/or the agents, servants and employees who contributed to and/or caused said incidents according to proof presented at the time of trial.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

#### (No Improper Conduct by Defendant)

21.     Plaintiff's Complaint is barred, in whole or in part, because if any alleged improper conduct occurred, which Defendant denies, Defendant is not liable because (a) any persons allegedly engaging in any such conduct were not acting as an employee or agent of Defendant, (b) such conduct was outside the scope, course and/or authority of any employee or agent, (c) Defendant was not negligent or reckless with respect to any such conduct, and/or (d) such conduct was expressly contrary to and in disregard of Defendant's interests, rules, policies and/or procedures.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

#### (Plaintiff's Own Conduct)

22.     Plaintiff's Complaint is barred, in whole or in part, because the alleged injuries or damages, if any, were caused by Plaintiff's own conduct.

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

23.    The Complaint is barred to the extent that Plaintiff and/or the purported "Class members" have failed to take all reasonable and necessary care and diligence to mitigate the damages alleged.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (No Claim for Attorney's Fees)

24. The Complaint fails to state facts sufficient to support a claim for attorney's fees.

## TWENTHY-FIFTH AFFIRRMATIVE DEFENSE

### (Not Suitable for Class Treatment)

25.    The claims in Plaintiff's Complaint do not state facts that render them appropriate for class treatment in that the claims lack commonality, individualized questions predominate, and/or Plaintiff is an inadequate and not a typical representative of the interests of the putative class members.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Class Action Claims Improper)

26.    The claims of Plaintiff and the putative class members violate Defendant's due process rights under the United States and California Constitutions to the extent that relief is sought on behalf of third persons even though this lawsuit cannot be maintained as a proper class action. Defendant is entitled to adjudication of these claims on an individualized, rather than class-wide, basis.  Regardless, Defendant is entitled to damages or restitution analyzed on an individualized basis.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (No Entitlement to Waiting Time Penalties)

27.    The Complaint is barred Plaintiff and the putative class members' claims for waiting time penalties are barred because a good faith dispute as to the facts and the law that any wages are due precludes imposition of waiting time penalties under California Labor Code section 203.

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Set-Off for Damages Claimed)

28.    To the extent that Plaintiff has received compensation for her alleged injuries from other sources, or to the extent that a cross-demand for money exists from Defendant to Plaintiff, a damage award in this action, if any, should be offset accordingly.

## RESERVATION OF RIGHTS

Defendant currently has insufficient information upon which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available.  Defendant therefore reserves the right to assert additional affirmative defenses in the event that discovery indicates that they would be appropriate.  Defendant will seek such relief in accordance with applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Defendant requests relief as follows:

1.  That Plaintiff and the putative class members take nothing by virtue of this action;

2.  That any liability attributed to Defendant be limited in direct proportion to that percentage of fault actually attributable to Defendant;

3.  Denial of injunctive relief;

4.  For reasonable attorneys' fees pursuant to California Labor Code section 218.5 or any other applicable law, and for costs of suit incurred herein, including experts' fees;

5.  For an order of this Court denying all relief sought by Plaintiff; and

6.  For such other and further relief is this Court may deem just and proper.

Dated: July 20, 2022                 HUSCH BLACKWELL LLP


By:  /s/  Tyler M. Paetkau
       Tyler M. Paetkau
       Olga Savage
       Attorneys for Defendant
       TRANSDEV SERVICES, INC.

**PROOF OF SERVICE**

*Ganther v Transdev Services, Inc.*
County of Napa Superior Court Case No. 22CV000632

    I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 300 South Grand, Suite 1500, Los Angeles, CA 90071. On July 20, 2022, I served a copy of the within document(s):

**ANSWER BY DEFENDANT TRANSDEV SERVICES, INC. TO PLAINTIFF'S UNVERIFIED COMPLAINT**

as follows:

☒    by sealing the document(s) listed above in an envelope and placing it for collection, which would, in the ordinary course of business, be deposited with the United States Postal Service on this date for delivery to the person(s) at the address(es) set forth below. by sealing the document(s) listed above in an envelope and placing it for collection, which would, in the ordinary course of business, be deposited with the United States Postal Service on this date for delivery to the person(s) at the address(es) set forth below.

☐    by sealing the document(s) listed above in an envelope and causing them to be personally delivered *via* courier to the person(s) at the address(es) set forth below.

☐    by electronically serving the document(s) listed above *via* File&ServeXpress on the recipient(s) designated on the Transaction Receipt located on the File&ServeXpress website.

☐    by sealing the document(s) listed above in a FEDEX envelope/box and placing it for collection, which would, in the ordinary course of business, be deposited with FEDEX for delivery to the person(s) at the address(es) set forth below.

☒    by emailing a true and correct copy of the document(s) listed to the person(s) at the email address(es) set forth below.

| Roman Otkupman, Esq.<br>Roman@OLFLA.com<br>Nidah Farishta, Esq.<br>Nidah@OLFLA.com<br>OTKUPMAN LAW FIRM, A LAW CORPORATION<br>5743 Corsa Ave., Suite 123,<br>Westlake Village, CA 91362<br>Telephone: (818) 293-5623<br>Facsimile: (888) 850-1310 | Attorney for Plaintiff |
| --- | --- |

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 20, 2022, at Los Angeles, California.

*/s/Dana Chan*
DANA CHAN

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550



Submitted Pending Clerk Review

| | |
|---|---|
| **Filing ID:** | 6723333 |
| **Envelope No:** | 22RSCR00162147 |
| **Document(s):** | Answer to Complaint - Sent |
| **Case:** | CVSW2202496 - SCLAFANI vs RHINO ASSEMBLY CORPORATION |
| **Court Location:** | Superior Court of California, County of Riverside Southwest Justice Center Department S303 |
| **Filer:** | Allison M. Scott |
| **Client Matter No:** | 2086313 |

**Estimated Fees:**

| | |
|---|---|
| Answer to Complaint | $450.00 |
| Riverside County Court Transaction Fee | $1.85 |
| EFM Convenience Fee | $1.95 |
| Provider Service Fee (Ace Attorney Service) | $1.95 |
| Payment Service Fee | $1.00 |
| Total | $456.75 |

**Card Used:**    CHECKING-xxxxxxxxxxxx2701

Thank you!

# EXHIBIT D

# Agreement between

# The Sonoma County Transit Division of Transdev Services and Teamsters, Local 665

# Effective November 24, 2020 through November 23, 2023

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

## PREAMBLE

**Parties and Recognition:** This Agreement, executed herein below, is between Transdev, hereinafter referred to as the Company, and Teamster Local 665 hereinafter alternatively referred to as the Union or as the Teamsters. The Company recognizes the Teamsters as the exclusive representative of "employees" as defined appropriate on July 16, 2019, by the National Labor Relations Board in RC-243557 as follows:

> *All full-time and regular part-time Bus Operators and fueler/washers employed at the Employers 355 W. Robles Ave location, in Santa Rosa California; excluding all other employees, full- time dispatchers and supervisors, mechanics, confidential employees, guards and supervisors as defined by the act.*

## ARTICLE 1 – PURPOSE

The Company and The Union recognize that it is in the best interest of both parties that all dealings between them continue to be characterized by mutual responsibility and respect.  The Company and The Union and their respective representatives at all levels will apply the terms of this contract fairly and in accord with its intent and meaning.

Progress in industry demands a mutuality of confidence between The Company and The Union. To these ends, under this agreement the parties have provided for the adjustment of grievances, prevention of lockouts, strikes, interruption of work, work stoppages and/or other interferences with the work of The Company during the life of this agreement.

The Union agrees that it will cooperate with The Company and lend its support to assure a full day's honest effort on the part of all of its members in return for a day's pay and that it will assist in combating absenteeism and any other practices which restrict production, and will work to enhance the services provided by The Company.

Both parties agree to abide by all Federal, State and Local laws, ordinances and orders. This CBA shall not supersede any of the aforementioned, unless mutually agreed by the parties.

## ARTICLE 2 - NON-DISCRIMINATION

Provisions of this agreement shall be equally applied to all employees in the bargaining unit without unlawful discrimination as to age, sex, race, color, creed, national origin, physical or mental disability, medical condition, or political affiliation.  The company agrees that the prohibition against sexual discrimination includes sexual harassment.

## ARTICLE  3 – MANAGEMENT RIGHTS

Except to the extent expressly abridged by a specific provision of this agreement, The Company reserves and retains, solely and exclusively, all of its rights to manage its business.  Prominent among such unqualified rights, although by no means a wholly inclusive list thereof are the following:  to decide all machines, tools, and equipment to be used; to improve efficiency; to

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

hire, layoff, assign, transfer, and promote employees; to determine the qualifications of employees; to determine the starting and quitting time; to establish the number of shifts; to determine the number of hours to be worked, including the determination or necessity of overtime work; to establish customer service and public relations policies; to determine the business hours and location of its establishment; to decide the processes of operation; to adopt and enforce working rules; to establish or continue policies or procedures for the conduct of the business, and, from time to time, change or abolish such policies or procedures; to discipline and discharge employees for just cause.

Failure of The Company to exercise rights herein reserved to it or exercising them in a particular way shall not be deemed a waiver of said rights or of The Company's right to exercise said rights in some other manner not in conflict with the terms of this agreement, whether or not such rights have been exercised by The Company in the past.

## ARTICLE 4 - TECHNOLOGY RIGHTS

The company may employ new technology, including video systems, GPS, mobile data terminals/computers and other present or future technologies for the transit industry, in order to help ensure the safety of the driver and passengers, and compliance with all federal, state, and local driving rules and regulations by both the driver and the motoring or pedestrian public. Any recording resulting from such technology may be used as evidence in the investigation of any accident/incident involving the company facility, or another employee, or an employee while operating a company vehicle. In the event any data or recording is used as evidence for purposes of disciplinary action, the employee shall be afforded an opportunity to view the evidence as soon as practicable.

## ARTICLE 5 – UNION RIGHTS

### Section A: Business Agent

Union Business Agent shall have access to the premises during work hours for the purpose of seeing that the provisions of the agreement are being adhered to. Said visits shall not interfere with the normal conduct of work. It is understood that the authorized Field Representative of The Union in requesting clearance through the facility shall make an appointment in advance for each and every such visit.

### Section B: Picket Lines

Refusal of employees to cross a lawful primary picket line shall not be cause for disciplinary action. Employees who fail to pass through a picket line at the company's facility which is established by employees of another employer shall be in violation of this agreement and may be subject to discipline up to and including discharge. This article shall not be interpreted to in any way constrain an employee's right to honor a picket line under the National Labor Relations Act.

## ARTICLE 6 – FULL PERFORMANCE, STRIKES AND LOCKOUTS

Teamsters Local 655 and the employees agree not to engage in any job actions, during the term of this contract, including but not limited to, work stoppages, strikes, "sick-outs", or similar concerted activity against the company. Any employee who violates this article will be subject to discipline, up to and including discharge.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

The Company agrees that so long as this agreement is in effect there shall be no lockouts. The curtailing of any operations for business reasons shall not be construed as a lock-out

## ARTICLE 7 - EMPLOYEE DEFINITIONS
### Section A:  Definitions
At the time of initial employment, each employee covered by this agreement shall be placed in one of the following classifications for the purpose of determining wages and eligibility for benefits as set forth in this agreement.  The definitions within this article are intended only to provide a basis for determining the classification of an employee and shall not be construed as a guarantee to any employee of any specified number of hours of work.

PART-TIME, HOURLY, Regular Employee:  An employee who is hired or is assigned by request to regularly work less than thirty (30) hours in a workweek for an indefinite period of time.

FULL-TIME HOURLY, Regular Employee:  An employee who is hired to work at least thirty (30) hours in a workweek and who is hired for an indefinite period of time.  Any employee expected to be available to work thirty (30) or more hours in a workweek shall be deemed a full-time employee.

### Section B:  Benefit Entitlement
Except as otherwise provided in this agreement, full-time employees shall become eligible for all full-time regular employee benefits provided in this agreement upon successful completion of a 90-day probationary period.

### Section C:  Increase in Hours
Part-time employees may be required to work more than thirty (30) hours in a workweek in order to meet unusually high service demands or other unusual situations. If a part-time employee works at least thirty (30) or more hours a workweek for three (3) consecutive months, his/her classification will be changed to full-time regular at the end of that three (3) consecutive month period.

## ARTICLE 8 – PROBATIONARY PERIOD and SENIORITY

### Section A: Probationary Period
The probationary period for all new employees shall be one-hundred-twenty (120) working days. The probationary period shall commence on the date that the new employee physically reports to work for the first time.  Until the completion of the probationary period, all employees are employees "at will" and may be terminated for any reason at the sole discretion of the Company. Such termination shall not be subject to the grievance and arbitration provisions of this Agreement.  Upon successful completion of the probation, an employee will receive a written notice from the Company of completion of the probationary period.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

### Section B: Definition

Seniority shall mean continuous employment with the Company beginning with the date of hire (or date and time an application was received in the case of conflicts) or transfers to another department. Employees may not hold seniority in more than one (1) department. There are two (2) departments recognized by the Company. They are Bus Operators and Utility Workers. The only exception is Section C and D – Transfers and a person can only have seniority in two (2) departments during the probationary period. Once the probationary period is completed, the seniority in the previous department will be terminated

### Section C: Acquiring Seniority

New full-time employees shall obtain seniority upon completion of a one hundred and twenty (120) working day probationary period at which time their seniority date shall take effect and date back to their original date of hire or re-hire. Employees transferring to a new classification or department shall be required to complete a probationary period in the new classification or department for the purpose of determining that their skills and abilities are adequate for that position. New part-time employees shall obtain seniority upon completion of a four hundred (400) hour or six (6) month (whichever comes first) probationary period at which time their seniority date shall take effect and date back to their original date of hire or re-hire.

During the probationary period, the Company shall have the right to discipline or discharge such employees for any reason and such discipline or discharge shall not be subject to the provisions of Article 17, or Article 18 contained in this Agreement. The Company shall have sole responsibility of determining whether or not a new employee has successfully completed the probationary period.

As an alternative to termination the company may elect to extend the probationary period of a new employee for one (1) thirty (30) day period. Extension of probation shall not be used arbitrarily or capriciously and is intended only to provide an additional adjustment period for new employees.

### Section D: Application of Seniority

Seasonal Layoffs: Employees will not continue to accrue seniority during a seasonal layoff.

Transfers: An employee who transfers from one job classification and/or department to another in which he has previously worked will be placed on the seniority list according to the total time

worked in that job classification and/or department. An employee who transfers to a new job classification and/or department will retain seniority in the previous classification during the probationary period. At the end of the probation period, the employee will be credited with seniority in the new job classification from the date of the original transfer. However, an employee who does not satisfactorily perform the new job or does not wish to remain in the new job, will be returned to his previous position during or at the conclusion of the probationary period, without any loss of seniority.

### Section E: Leave of Absence

Personal: Employees will not accrue seniority during a personal leave in excess of two (2) weeks.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

Medical: Employees will not accrue seniority during medical leave of absence in excess of Twelve (12) months.

No employee's seniority will be adversely affected when the employee is unable to work due to either a compensable industrial (on-the-job) illness or injury or military service in accord with the Universal Military Training Act.

### Section F: Loss of Seniority

Continuous service shall be broken, and seniority lost if:

- The employee fails to comply with the recall procedures outlined in section H of this section and / or does not return from a recall within seven (7) days. The seven (7) days may be extended by mutual written agreement between the Company and the Union.
- The employee is absent two (2) consecutive workdays without notification to the Employer unless the employee is incapable of notifying the employer.
- The employee voluntary resigns
- The employee is terminated by the Company.

If an employee is absent due to a layoff or disability for a period of one (1) year, after that year, seniority shall be lost at the rate at which it accrued.  In addition, if an employee has less than one year of service and is absent due to layoff or disability for a period of time equal to or greater than his/her length of service, seniority shall be lost at the rate at which it was accrued.

### Section G: Layoff

In reduction of forces due to lack of work, layoff shall occur in reverse order of seniority in the job classification in which a reduction is deemed necessary. A laid off employee may exercise his seniority to displace the least senior employee in an equal or lower paid classification in which he has previously served a successful probationary period. If a layoff shall occur, the Company shall notify the Union and the employee two (2) weeks before a layoff.  The Union will also have the right to hold a "meet and confer" with the Company to discuss the layoff implications.

### Section H: Recall

Recall shall be in reverse order of layoff. Recall from layoff shall be in writing, via registered mail. Employees have the right of one (1) recall refusal. Said refusal must be received by the Company within ten (10) days of the date of mailing of the recall notice and must be in writing, via registered mail. A working employee who has recall rights in more than one (1) job classification may refuse recall in one (1) classification without forfeiting recall rights to other job classifications.

Individuals who are laid off have the responsibility to provide the Company with a current address in order to be eligible for recall. Failure to provide an address which would allow for written communication to be received from the Company in a timely fashion shall waive the individual's recall and seniority rights.

## ARTICLE 9 - PERSONNEL FILES
### Section A:  Confidentiality

The Company agrees that personnel records are confidential and shall not be subject to public

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

inspection, except as required by law, or as authorized in writing by the employee.  If the employee's personnel records in possession of the employer are compromised to the employee's detriment, the employer will comply with applicable laws to remedy the situation.

### Section B:  Contents of Personnel File
The Company will maintain personnel files pursuant to laws that are applicable to the state of California.  All personnel records are and remain property of the Company.  At the employee's written request, the employee shall be provided a copy of any document placed in the employee's file.  Refusal by an employee to sign any document shall not be grounds for disciplinary action.

### Section C:  Employee Access
Every employee has the right to inspect the personnel records upon request at reasonable intervals and times that do not interfere or conflict with an employee's work assignment.   Viewing may be monitored by a supervisor and in no circumstances, will an employee remove the file or piece of the file from the viewing location.  A copy of all documents signed by the employee that are contained in the personnel file will be provided to the employee upon request without charge one time during a rolling twelve (12) months.  Additional copies of all signed documents will be available at $0.10 per page copied.

### Section D:  Communications
The Company agrees that individual employees shall have access to a "mailbox" system for the purpose of forwarding personal written messages to individual coworkers.  Such communications shall not contain derogatory or satirical comments regarding any employee, member of the management staff or the company.


## ARTICLE  10 - SAFETY
### Section A: General
The Company recognize the importance of adequate provisions for the protection of the health, life, and limb of employees and will mutually make every reasonable effort to improve hazardous working conditions as they become apparent.

### Section B: Safety Meetings
All employees are required to attend safety meetings as a part of their job and shall be paid for the actual time spent at the meeting, with a minimum of two hour's pay per meeting.

### Section C:  Safety Committee
A Safety Committee, consisting of two Company representatives and two employees, shall be established to discuss and resolve safety issues concerning the operation of Sonoma County Transit.

The committee shall recommend topics and issues to be added to the safety meeting agendas for discussion and/or presentation. The Company agrees to pay the employees of this committee for time spent in the performance of these duties.  All members of the Safety Committee shall have had no preventable accidents during the previous twelve (12) month period.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

### Section D:  Defects

Employees shall immediately, or at the end of their shift report all equipment defects on a suitable form furnished by The Company.  Employees not reporting defects shall be subject to disciplinary action by The Company.  The Company shall not require any employee to take out equipment that has been reported by any other employee as being in an unsafe operating condition until same has been deemed as being safe. The final determination as to whether the equipment is in safe operating condition will be made in accordance with applicable laws and/or codes after the equipment is inspected by a qualified company technician.

### Section E:  Maintenance of driver credentials

All transit bus drivers shall maintain current and valid Verification of Transit Training (VTT), medical credentials, and commercial driver's license.  Any transit bus driver whose credentials or licenses expire shall be suspended without pay until his/her credentials are renewed.  If renewal is not completed within sixty (60) days, he/she will be terminated.  This language will not apply to an employee that is on an approved leave of absence until his or her leave has lapsed.

### Section F: Criminal Background Checks

Employees must undergo a criminal background check every four (4) years after the date of hire. Employees must consent to a background check using the appropriate Background Check Release form.  If an employee refuses to sign the release form, they will be placed on unpaid administration leave until form is signed.


### ARTICLE  11 - ASSIGNMENT OF WORK

### Section A:  Route Bidding – Operators

The computation and preparation of work schedules is a right held by the Company.  All runs shall be posted for seniority bidding at least three (3) times each calendar year.  The Company may post runs more frequently as changes in service may require.

Run Assignments shall be posted for review at least seven (7) calendar days, if practicable, prior to the beginning of the selection process.  For bidding purposes, each day will begin at 6:00A.M. and end at 8:00 P.M.  Run assignments shall be available for bid after 8:00 P.M. on the first day of bidding of the top one fifth of seniority, after 8:00 P.M. on the second day of bidding for the second fifth of seniority, and after 8:00 P.M. on the third day for the third fifth of seniority, and after 8:00 P.M. on the fourth day for the fourth fifth of seniority, and after 8:00 P.M. on the fifth day for the final fifth of seniority.  Each operator shall be assigned a time to bid and given a minimum of five (5) minutes to bid in a time period designated by the company to be completed not later than 9:00 P.M. of the assigned day.  No trading of runs will be permitted. For informational purposes a list of operators and their present runs will be posted alongside each new bid.

Operators may leave a written list of run choices with the Dispatcher or Supervisor in writing. In the event that none of the listed choices are available, it will be the operator's responsibility to contact the Dispatcher giving additional choices.  An operator failing to bid by the end of their assigned time will be assigned to the extra-board.  An employee failing to bid prior to the end of his assigned time will be assigned to the extra-board. Failing to bid shall be defined as failure to turn in either a proxy or a sufficient number of available bids.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

Run Cut Committee (RCC) comprised of two bus operators and two representatives of management will be formed to jointly review the run cut.

### Section B:  Elimination of Routes – Operators

Operators who are displaced by the elimination of routes by the client shall be offered any available open routes, in descending order of seniority, to work until the new bid is implemented. Those displaced operators for whom such work is not available shall be give preferential treatment on the extra board. Preferential treatment shall require that during the interim period, the displaced operators shall be the first to be offered available extra board work on each of the days on which they would normally have worked their bid route(s).

### Section C:  Extra-board – Operators

The purpose of the extra-board (EB) is to enable The Company to provide reliable, uninterrupted service to the system's riders. An Extra Board Operator who fails to call in for work assignments between 3:00 PM and 5:30 PM will be subject to the attendance policy and will move to the end of the rotation list. Part Time extra board Operators shall be assigned work after full time EB Operators. Employees called in for work, once off property, shall be paid or worked a minimum of two (2) hours.

### Section D:  Hold-Downs – Operators

With the commencement of each new bid period, all full-time EBs will enter into a rotation initially based upon seniority/hire date/time in service/etc.  When hold-downs become available, the most senior EB may elect or refuse to perform any currently open hold downs, with the remaining open hold-down(s) (if any) being offered to the second most senior EB and so on. Once an EB selects a hold-down, they will be unable to select any other hold-down until the completion of the originally selected hold-down, with "completion" defined as having the regular bid operator returning to his/her normal work duties, or if a hold down is given up by the EB and the EB returns to the daily EB rotation.

Upon completion of a hold-down, the EB will re-enter the hold-down rotation at the bottom and will move up in rotation as other hold-downs are selected and/or refused by EBs higher in the rotation.

Refusal of any and all open hold-downs will move the affected EB to the bottom of the hold-down rotation, with no impact on their standing in the daily rotation. In the event that an EB is on vacation or extended PTO and cannot be contacted for a hold-down, that employee shall remain at the top of the hold-down rotation list.

Consecutive days of vacated bid work shall not be considered for hold-down outside of confines of the pay week, 12am Sunday to 11:59 pm Saturday.  If a bid becomes open for two weeks, starting on a Wednesday, only the portion of that vacancy confined in a pay week shall be made available as a hold-down, with the remaining workdays placed into daily rotation.

### Section E: Work Schedules – Utility Workers

The computation and preparation of work schedules is a management right held by the Company. At least three times each year the Maintenance Manager will prepare and post a work schedule. Employees will submit their schedule recommendations to the Maintenance Manager

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

within 3 days after posting. After reviewing the employee's input, the Maintenance Manager will finalize the work schedules and number of employees necessary during each shift. Utility Workers shall then bid on these schedules by seniority.

### Section F:  Out of Contract Service – Operators
A sign-up sheet for out of contract work will be posted in advance.  The shift will be assigned to the most senior operator on the sign-up sheet.  Should the request be made by the county for a specific operator, management shall have the right to assign service to that operator. Work that is not billed to the county will not be considered out of contract.

### Section G:  Procedures for Assignment of Work as Applied to Bus Operators
**Step 1**
All work other than bid runs shall be assigned primarily to extra-board operators, rotating through the list of extra-board in seniority order.  Once all required extra-board operators receive a work assignment based upon this step of the procedure, those operators drop to the bottom of the current EB seniority rotation.  The rotation then starts again the following day with the next Extra Board Operator in line that did not work the previous day.  EB operators who work a four (4) hour or less shift will NOT drop in rotation.

1. Each Extra Board Operator shall call in to the dispatch office between 3:00P.M. and 5:30 P.M. daily to determine the work assignment for the next day. Any extra board operator who fails to call in for work assignments between 3:00 P.M. and 5:30 P.M. will be subject to the attendance policy and will lose their spot in rotation.

2. Once an EB has accepted a shift, that shift will not be changed without the mutual consent.

3. EBs will remain in EB seniority rotation for the next day worked until either assigned work or 5:30 P.M.

4. Any reduction of pay hours shall be made only with employee consent.

5. Extra Board Operators called back to work once off property shall be paid or worked a minimum of two (2) hours.

6. All work called in after 5:30 P.M. for the next day shall be filled by any means. EB seniority within the rotation will be considered when practicable and pursuant to the needs of the business.

7. When an EB is precluded from working a shift due to the nine (9) hour rule, A and B pieces of paddles may be assigned independent from each other in an even-handed manner pursuant to the need of the business.

8. EB's will select available work for the following day by EB rotation seniority. EB's may not choose to pass on available work.

9. Known open pieces of work will be posted in dispatch along with a rotation guide.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

10. All EB Operators will be listed in rotation seniority and will be given a deadline choice time, with at least 10 minutes per employee.

11. From the initial posting and up until the operator's deadline time, they can choose by rotation seniority and have their work for the next day. Once the EB has chosen work he/she may not pick new work that subsequently becomes available.

12. After the #1 position has received their work, the next rotation position will be able to make their selection.

13. If an operator is off or on the road, attempts to contact the operator will be made to obtain their choice prior to their deadline time. If an operator is in-service, their time will be extended until they can safely contact dispatch by radio or phone; this also applies to equipment issues.

14. If an operator is unable to be reached due to making themselves inaccessible, that operator will drop to the bottom of rotation.

15. All deadline times will be between 1500 and 1730 hours

16. EB operators may use PTO as a means for income and still retain their position in the rotation order. However; if work becomes available and is offered to the EB Operator and they choose to still use PTO instead of taking the work offered, that EB will be considered to have selected work for that day and will drop in rotation as if they had worked.

17. If all EB operators receive work for the next day, the rotation will progress for the following day by the number one (1) EB Operator moving to the bottom of the rotation list. This method will occur every time all extra board operators have received work.

18. An EB requiring a day off based upon days or hours worked or requesting a day off will drop in rotation as if they chose work.

**Step 2**
In the event that work cannot be filled based upon Step 1 that work is then offered from the extra work sign-up sheet up to 5:30 P.M.

1. An extra work signup list is posted each Sunday for the following week (seven days in advance).

2. Any operators desiring to work extra shall indicate such by signing their name only, on the extra work sign-up sheet for each day intended. Dispatch shall ignore any additional notations.

3. The cut off time for signing the extra work sign-up sheet is 10:00 hours for work the following day.

4. Extra work shall be offered in seniority order to available employees. Available means:
   a. The employee is familiar enough with the route to effectively perform the work.

11

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

   b.  The work can be performed within the employee's legal hours of service.
   c.  The employee can perform the work on time with the proper equipment.
   d.  The employee could do some, but not all of the work unless another employee is capable of completing the work.

5.  For the purposes of Step 2 only, "employee" means an employee who has signed the extra work sign-up sheet.

6.  Work shall not be split in such a manner as to qualify an employee for minimum report time pay.  Work shall only be split when the work cannot be fully covered by employees meeting all of the requirements of Step 2.

7.  All work called in after 5:30 P.M. for the next day shall be filled by any means and shall not be grieved.

**Step 3**

The company will make a last-ditch effort without regard to seniority to fill the open work assignment prior to proceeding to Step 4, mandatory assignments.  The company reserves the right to determine the most available employee and forgo extra work list seniority as a factor in the assignment of work.  The company reserves the right to fill only a portion of the work, with the remainder continuing to Step 4 as a mandatory work assignment.  Any errors or omission at this step or after 1730 hours shall not be grieved.

**Step 4**

In the event that the work is not filled at Step 3, that work is then assigned from the seniority roster in reverse order, with such assignment being mandatory. Declining a work assignment will result in a one (1) point attendance infraction.

In the event of a PTO cancellation for the following day after 3:00PM the employee cancelling the PTO shall not be placed back on his/her regular shift if it has already been assigned to another employee. Such employee may elect to be placed on the extra work sign up list and will be subject to the provisions in Step 2.

***Section H: Shift Trading***

The trading of shifts shall be as follows:

The trade is for one day up to one week, each employee involved in trading shifts may trade shifts for any day if it is for the same payroll week (Sunday to Saturday).  The trade must be requested by the end of the workday on the Friday before the first affected piece of work (This means the prior payroll week).  A request slip signed by both employees and the Operations or Maintenance Manager or his/her designee denoting approval must be on file before the trade. Each employee is responsible for the shift and work piece that they agree to, and he/she must complete the entire shift.  No exceptions. Trades will be managed by the Operations and/or Maintenance Manager or his/her designee and will be subject to the attendance policy. Employees will not be allowed to break up a split schedule.  Both parts of the split are included in the trade.  Straight pieces can be traded with splits, one day's work for another.  Trades must occur the same payroll week (Sunday – Saturday).  Management has the right to reject the trade if it creates an undue hardship on the Operations or Maintenance Department, including but not limited to scheduling, overtime, staff driving, Wage Order 9 and/or violating the 9-hour rule (off

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

the clock).  Employees agree to forfeit any loss of run pay, holiday pay, OT or any PTO benefit created by the trade.

## ARTICLE  12 - WORK WEEK AND OVERTIME
### Section A: Application
The provisions of this section are intended only to provide a basis for determining the number of hours of work for which an employee shall be entitled to be paid at overtime rates and shall not be construed as a guarantee to any employee of any specified number of hours of work, either per day or per week.

The normal work week commences at 12:01 A.M. Sunday and continues until 12:00 midnight the following Saturday. A day is defined as a twenty-four (24) hour period beginning with the start of the employee's shift.

Pay periods for all Company employees shall be of fourteen (14) days each.

All employees will be off duty 9 hours before reporting back to work except, when changing shifts. Operators may opt to have less than a nine-hour break between days through mutual agreement with the company and if there is no violation of applicable rules and regulations.

### Section B: Overtime
Time and one-half (11/2) shall be paid for:
All hours in excess of forty (40) hours per week.
Hours in excess of eight (8) hours per day for employees working a five (5) day week.
Hours in excess of ten (10) hours per day for employees working a four (4) day week.
Hours in excess of eight (8) hours per day for extra-board operators, unless such employee is working a 4/10 schedule as a hold-down.

Hours paid for but not worked shall not be counted as hours worked for the purpose of computing overtime.

## ARTICLE  13 - WAGE RATES
### Section A: Hourly Rates – Operators
Employees will march through the steps below reaching the most experienced rate.

| Months of Service | Drivers' current wage rate | July 1, 2020 **3.0%** |
|---|---|---|
| 00-12 months | $21.00 | **$21.63** |
| 13-24 months | $23.28 | **$23.98** |
| 25-36 months | $24.31 | **$25.04** |
| 37-48 months | $25.50 | **$26.27** |
| 49+ months | $29.11 | **$29.98** |

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

### Section B: Hourly Rates – Utility Workers
Employees will march through the steps below reaching the most experienced rate.

| Months of Service | Utility's current wage rate | July 1, 2020 **3.0%** |
|---|---|---|
| 00-12 months | $18.90 | **$19.47** |
| 13-36 months | $21.19 | **$21.83** |
| 37-60 months | $21.61 | **$22.26** |
| 61+ months | $22.04 | **$22.70** |

In addition, the annual anniversary wage steps described in this agreement will increase as of July 1, 2021 as follows: all employees shall receive an increase by a percentage described in the Consumer Price Index – All Urban Consumers for the San Francisco – Oakland – San Jose areas as of April 1 of that year to the rate in place for the immediately preceding option year. The purpose of this paragraph is to provide that whatever percentage increase Sonoma County Transit grants the Company on or after July 1, 2021, the Employer shall pass such percentage increase to the employees.

Step increases for employees shall be considered effective as of the first day of the pay period closest to their actual date of increase (i.e., if the date of the increase falls on days 1-7 of the pay period, the increase shall be effective as of day one. If the increase falls on day 8-14 of the pay period, the increase shall be effective on the first day of the next pay period.)

The employer may increase wage rates at any time in the future after notifying the union of such change or changes.

### Section C: Application – Operators

The positions of relief dispatcher, Operator Trainer (behind the wheel ), shall have supervisory authority in the area of work assignment and training/instruction and shall have the ability to recommend discipline as well as pull an employee from service for a disciplinary suspension or investigation. A premium of $1.00 per hour over and above the employee's base wage shall be paid to this person. Operator's cadetting shall receive a premium of $0.50 per hour while performing such function.

Relief dispatchers shall successfully complete a two (2) week training program sponsored by management.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

## ARTICLE   14 - MEAL AND REST PERIODS
### Section A - Meal Periods

Employees shall be provided with an unpaid meal period of at least 30- minutes when their shifts exceed six (6) hours of work.  If an employee does not commence a scheduled meal period within 6 hours of the start of their shift, the employee shall be entitled to be paid for one (1) hour at that employee's regular hourly rate of pay.  A DUTY-FREE LUNCH PERIOD WILL BE PROVIDED UNLESS THE PERIOD IS AT THE END OF THEIR SHIFT.

The Parties agree that the provisions of this section satisfy the requirements of section 512 of the California Labor Code and Industrial Welfare Commission Wage Order No. 9 regarding the provision of meal periods. The Union and the Company also agree that if an employee works no more than six (6) hours for the day, the meal period shall be waived pursuant to Labor Code Section 512.  Additionally, the Parties agree that any employee that works more than ten (10) hours, but no more than twelve (12) hours for the day, need not be provided a second meal period pursuant to Labor Code Section 512.

Any disputes concerning the application of meal periods under this Agreement shall only be subject to final and binding arbitration as set forth in the grievance procedure of this Agreement. In the event the Union files for arbitration, and the grievance is denied, the Company and the Union shall share equally in the costs of paying the arbitrator and the court reporter. In the event the Union files for arbitration and the grievance is sustained, the company shall bear the entire cost of paying for the arbitrator and the court reporter.

### Section B - Rest Periods

Every employee shall be entitled to take a ten (10) minute net rest period during each four (4) hour block of work or major fraction thereof during the course of the employee's shift, which rest period shall be paid time.  The rest period may include periods when the employee is on his/her route, but the employee is not required to operate or remain in the vehicle.  If the Company prevents the employee from taking such rest period(s) during the course of the employee's shift, the employee shall be entitled to be paid for one (1) hour at that employee's regular hourly rate of pay, provided that any claim for the denied rest period must be made in

writing to the appropriate supervisor within 24 hours of the end of the shift in which the rest period was prevented.  Any dispute related to rest periods for employees covered by this Agreement shall only be subject to resolution through the grievance and arbitration provisions of this Agreement. In the event the Union files for arbitration, and the grievance is denied, the Company and the Union shall share equally in the costs of paying the arbitrator and the court reporter. In the event the Union files for arbitration and the grievance is sustained, the company shall bear the entire cost of paying for the arbitrator and the court reporter.

## ARTICLE 15 – HEALTH & WELFARE BENEFITS

The Company agrees to offer medical, dental and vision benefits to all full-time employees covered by this agreement following ninety (90) consecutive days of full-time employment. Full-time employment, for purposes of this article, is defined as those scheduled to work 30 hours or more per week.  The Company reserves the right to change or modify its medical plans, including but not limited to the right to change insurance carriers or administrators, the amount

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

of employee contribution for individual and dependent coverage, the initial length of employment eligibility period. The Company agrees to meet the requirements of the Patient Protection and Affordable Care Act (PPACA) or other legislation that may amend or replace it.

### *Section A: Medical Insurance*

The Company and employee shall share in the cost of medical coverage as follows.

The following medical plans will be offered as of January 1, 2020 and the Company will contribute toward the cost as indicated:

| BCBS IL HCA 656 | Employee Cost | Employer Cost |
|---|---|---|
| Employee | 15.0% | 85.0% |
| Employee + Spouse | 35.0% | 65.0% |
| Employee + Child(ren) | 35.0% | 65.0% |
| Family | 35.0% | 65.0% |

| Kaiser of CA DHMO 500 North | | |
|---|---|---|
| Employee Only | 15.0% | 85.0% |
| Employee + Spouse | 35.0% | 65.0% |
| Employee + Child(ren) | 35.0% | 65.0% |
| Family | 35.0% | 65.0% |

In addition, pursuant to the Affordable Care Act (ACA) the Company will offer an affordable, minimum value plan and may contribute more than the percentages stated above in order to meet the definition of "affordable" under the Act.

Rates are subject to change in January of each year. The employee portion of premiums will be payroll-deducted on a pre-tax basis.

### *Section B: Dental Insurance*

The Company will provide a group dental plan through Delta Dental or equivalent for full-time, regular employees. This coverage is a traditional indemnity plan with deductibles, co-insurance and a $1,500 annual benefit limit, along with orthodontia benefits for minor dependents. The percentages the company will contribute toward the dental plan are:

| **Delta Dental** | **Company Contribution Percentage** |
|---|---|
| Employee only | 80.3% |
| Employee plus family | 31.3% |

The employee shall be responsible for any difference in the monthly premium through payroll deductions.

### *Section C: Life Insurance*

The Company agrees to provide all full-time, regular employees a term life insurance policy in the amount of $30,000 plus an accidental death or dismemberment policy of an additional $30,000.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

### Section D: IRS Section 125
Employee contributions toward medical premiums will be deducted on a pre-tax, per 125a basis. Information related to pre-tax deductions and plan eligibility and elections are included in the Plan Document.

### Section E:  Retirement
All full and part time employees will be offered a company sponsored 401(k) Plan.  New employees will be eligible to join the plan the first day of the quarter following one year of employment.  Company contributions will have a 5-year vesting schedule where the participant will earn a year of vesting service for each calendar year in which they work at least 1000 hours.

### For Employees eligible prior to July 1, 2018
For employees with less than 10 years of continuous Sonoma service, the company match of $.50 for every $1.00 of    employee contribution will increase to a maximum of 9.0% of eligible compensation (4.5% maximum company contribution) effective in the pay period that includes the employee's anniversary date.

For employees between 10 years of continuous Sonoma service and less than 20 years of continuous Sonoma service, the company match of $.50 for every $1.00 of employee contribution will increase to a maximum of 11% of eligible compensation (5.25% maximum company contribution)  effective in the pay period  that includes the employee's anniversary date.

For employees with 20 or more years of continuous Sonoma service, the company match of $.50 for every $1.00 of employee contribution will increase to a maximum of 12% of eligible compensation (6.0% maximum company contribution) effective in the pay period that includes  the employee's anniversary date.

### For employees eligible as of July 1, 2018
For employees eligible as of July 1, 2018 for the 401(k) Plan will receive the company match of 50% up to 6% match effective in the pay period that includes the employee's anniversary date.

### Section F: Flexible Spending Account
Employees will be allowed to participate in a flexible spending account.


### ARTICLE  16  - TIME OFF
The Company reserves the right to limit the number of employees taking time off work whether paid or not.  At no time shall there be more than six (6) Bus Operators and one (1) Utility Worker off at a time.

Employees off for more than 16 consecutive weeks will not be counted towards the number of employees off.

Employees will be allowed to take 3 sick days or up to 24 identified sick hours off per floating 12 months without penalty or attendance point as long as they have available PTO to cover the time off.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

### *Section B: Paid Time Off Rate Accrual*

PTO shall accrue for all employees at the following rates:

| | | |
|---|---|---|
| 00-12 | months of service | .0308 per hour |
| 13-72 | months of service | .0769 per hour |
| 73-120 | months of service | .0962 per hour |
| 121-180 | months of service | .1077 per hour |
| 181-240 | months of service | .1154 per hour |
| 241 + | months of service | .1231 per hour |

Paid hours shall include all hours paid on the employee's paycheck, including regular hours, overtime hours, and PTO. New employees on probation shall accrue PTO during their probationary period.

Employees shall be able to use accrued PTO as soon as the pay period after it is accrued, subject to the limitations of other applicable sections of this agreement. All PTO taken will be paid at the then current rate of pay for that employee, and the hours taken will be deducted from the employee's accrued total. Once an employee's PTO request has been approved it shall not be cancelled without the employee's written agreement.
PTO requests submitted more than six months in advance shall not be accepted.
The company shall post an updated listing of time off available daily to help employees plan the taking of PTO.

Employees may "cash in" accrued PTO without taking the time off under the following three circumstances:
1) during the first pay period in December, or,
2) They may "cash in" up to an additional 40 hours of PTO when taking PTO for a week or longer. The company agrees to pay the employee in advance for these additional hours of PTO accompanying a vacation, providing enough advance notice has been given for payroll to be processed.
3) In case of an emergency for bills at the discretion of management.

At no time shall an employee accrue more than 300 hours of PTO. The employee must either take time off if 300 hours are accrued, or PTO hours in excess of 300 will be automatically paid on the employee's paycheck.

PTO may be taken in units of not less than four (4) hours or an A or B part of a shift.

A vacation bid will be instituted for each calendar year. Only vacation blocks will be scheduled and only for eligible periods. After initial bidding period, all blocks not already filled will be available on a first-come, first served basis. No more than two (2) Bus Operators and One (1) Utility Worker shall be allowed to bid the same week. Any vacation blocks pre-approved will be maintained.

Vacation bid weeks of PTO may be switched to an open week with prior approval from the company, however, when a bid week is cancelled, the entire week must be cancelled. Employees will not be allowed to bid weeks of PTO, and then cancel selected days for the purpose of insuring they get individual days off.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

### Section C: Unpaid Time Off

One unpaid day per quarter may be taken without penalty. The following provisions apply to the use of the unpaid day:

- A request must be made to management in writing at least two (2) days prior to the requested unpaid day.
- At the time of the request, the unpaid day will be granted pursuant to business necessity at the sole discretion of the employer.
- Only two days may be taken back to back.
- The use of these days will be excluded from any attendance infraction.
- These days may roll over from quarter to quarter but will not roll over to the following year.

### Section D: Modified Service Days

Certain weekday dates may be designated by Sonoma County Transit (SCT) as modified service days on which SCT will operate Saturday service schedules.

It is the Company's intent to allow employees with sufficient accrued PTO to use available PTO to avoid loss of pay, should they not receive a work assignment that they otherwise would have, due to the altered service schedule. Nothing in this section is intended in any way to modify an employee's PTO accrual rate or otherwise entitle an employee to any other additional unpaid time off.

Work assignments for modified service days will be made as follows.  The company will post for a week the modified service day signup sheets for each scheduled run. Work will be filled in descending order of the number of pay hours. Assignments from each signup sheet will be made in seniority order. Any work remaining open after assignments are made from the signup sheets will be assigned in reverse seniority order starting with employee whom otherwise would have worked on that date according to their bid sheet, then any remaining work will be assigned in reverse seniority order including employees on a regular day off according to their bid sheet; such assignments shall be mandatory. Declining a work assignment will result in a one (1) point attendance infraction.  Any employee wishing to use PTO to avoid incurring an attendance infraction must do so within the parameters set forth in other sections of this agreement affecting PTO. Only after all work assignments for the modified service day are filled, will employees who otherwise would have worked their bid assignment on that date, be permitted to substitute accrued PTO or receive an approved unpaid absence with no attendance infraction. The amount of PTO paid to an employee will equal the number of hours that employee otherwise would have worked on that date, according to their bid sheet.

## ARTICLE 17  - HOLIDAYS

Full-time regular employees will be eligible to receive seven (7) paid holidays: New Year's Day, Easter Sunday, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. Full-time regular employees will be eligible for holiday pay after they have completed thirty (30) days of continuous full-time employment.

Full-time employees must work their last scheduled working day preceding a paid holiday and their first scheduled working day following in order to receive holiday pay period. For purposes of this

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

article only, the definition of a scheduled working day does not include pre-scheduled Paid Time Off (PTO) days.

When requesting time off around a holiday, the vacation bid shall take precedence. Should fewer than two operators or no maintenance employees elect to bid vacation time around a holiday, employees may then take a pre-scheduled PTO day as the day preceding or following a holiday without jeopardizing their holiday pay, assuming said employee then works his/her next scheduled day preceding or following the holiday. Management retains the right to limit the number of employees taking pre-scheduled PTO days around a holiday with no exceptions to:

- A maximum of six (6) Bus Operators, and

- One (1) Utility Worker

- Requests for PTO days around a holiday separate from the vacation bid will be approved on a first-come, first-served basis.  Pre-scheduled PTO is PTO scheduled 48 hours in advance.

Full-time employees must work on the holiday if scheduled to work; otherwise they will forfeit holiday pay. Full-time employees must be available for work to receive holiday pay; i.e., employees will not be paid for a holiday that falls during a leave of absence for any reason.

Employees who are required to work on a recognized holiday shall be paid at one and one half (1 ½ ) times their straight time hourly rate times the number of hours worked in addition to their straight time holiday pay.

If a holiday falls on a Sunday it will be observed on Monday unless dictated by the County, except that Easter will be observed on Sunday.

Should a paid holiday fall within an employee's vacation period, the employee shall have the option of reducing their PTO request to encompass the holiday pay or take the full block and the holiday pay.

Holiday pay shall be paid for eligible employees at their straight time hourly rate of pay as follows:
- Employees with a regularly scheduled or bid run times their scheduled hours for that day.

- For employees who do not work a regular schedule, i.e., extra board operators, holiday pay shall be eight hours.

## ARTICLE  18 - LEAVE OF ABSENCE

### Section A: Medical Leaves
Medical leaves may be taken in cases of pregnancy, proven illness or injury when the employee has used all available PTO in excess of 80 hours and when such illness or injury will result in an

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

extended absence of no less than four (4) days. The employee has the option of retaining up to 80 hours of PTO to be used upon returning from the medical leave. Reasonable effort should be made to request medical leaves in advance and all requests must be made in writing to the Operations Manager. The employee shall be given the opportunity to remain in the group insurance programs; however, the employee will be responsible for paying all premiums. Should an employee fail to pay premiums by the date established by the Company or make arrangements for payment he shall be dropped from the policy. When the employee returns to active employment, he shall be reimbursed for the employer's share of the premium up to six months. Before returning to work from a medical leave of absence an employee shall:
- Notify the Company at least twenty-four (24) hours prior to the date they plan on returning to work; and
- Provide a written certification from their physician permitting them to return to work.
The Company reserves the right to have the employee examined by its own physician.

### Section B: Personal Leaves

Any employee desiring leave of absence without pay from his employment shall secure written permission from the Company. The employee has the option of retaining up to 40 hours of PTO to be used upon returning from the personal leave. Failure to comply with this provision shall result in the complete loss of seniority rights by and the dismissal of the employee involved. Any employee failing to return to work on his first scheduled working day following the last day of an approved leave of absence shall provide to the Company a reasonable explanation verifying the reason for the absence prior to the reinstatement by the Company. During the period of absence, the employee shall not accept employment elsewhere; acceptance of employment elsewhere shall be grounds for discharge.

The determination as to the number of persons who may be granted a leave of absence at any one time is vested solely with the Company. The purpose of this section is to provide a leave of absence for a legitimate reason, such as emergency or hardship, and not simply for personal convenience.

An employee off on personal leave of absence without pay shall not be entitled to any benefits, except that an employee may remain enrolled in the group insurance plans; however, the employee will be responsible for paying all premiums. Should an employee fail to pay premiums by the date established by the Company or make arrangements for payment, he/she shall be dropped from the policy. When the employee on personal leave of absence returns to active employment, he/she shall not be reimbursed for any share of the premium.

### Section C: Bidding Rights

No employee on leave of absence per Sections A and B of Leave of Absence, shall be permitted to bid on runs posted if said leave will cause an employee to be absent more than forty-five (45) days of any regular bid or thirty (30) days of the Summer bid. In order to bid, an employee must provide a medical release indicating clearance for return to full duty or a return to work request for those not on medical leave.

Upon return to work, those employees not permitted to bid due to a personal leave of absence shall be placed on the extra board until the next regular run bid.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

### Section D: Jury Duty

In order to be eligible for juror pay, full-time employees must notify the Company within three (3) days after their first receipt of notice of selection for jury duty. The Company reserves the right to request to have the employee excused from jury duty. The Company shall pay to full-time employees covered by the Agreement and who serve on jury duty the difference between jury duty pay and the employee's scheduled work shift for each work day lost during the regular week due to serving as a juror. Juror pay shall be limited to twenty (20) days in any calendar year. When any full-time employee is excused from jury duty either temporarily or permanently on any scheduled work day, the employee shall promptly contact dispatch, and maintenance employees shall contact either the Maintenance Manager or the Operations Manager for assignment, if any. Any employee working a graveyard shift will be allowed to report off subsequent to jury duty without incurring any attendance infraction points.

### Section E: Bereavement Leave

In the event of a death in the immediate family (father, mother, father-in-law, mother-in law, grandparent or grandchild, wife, husband, brother, sister, son, daughter, step child, step-parent or domestic partner), a regular full-time employee shall be entitled to up to three (3) days leave with pay or five (5) days in the event of an out-of-state travel of more than 1,000 miles. The compensable day or days must fall within the employee's regular scheduled work week. Bereavement leaves shall be paid upon receipt of satisfactory proof provided by the employee, such as a newspaper article or obituary.

 Each employee shall also be allowed to take bereavement leave without pay for up to three (3) days without penalty for the death of a close friend or relative not covered under the current bereavement leave policy. Such a leave shall be granted no more than once during the term of this agreement for each employee, and satisfactory proof shall be provided by the employee that said death occurred.

### Section F: FMLA

Employees on Family Medical Leave (FMLA), whether for their own or a family member's condition, shall be allowed to retain up to eighty (80) hours of PTO.

## ARTICLE  19 - DISCIPLINE AND DISCHARGE

### Section A: General

The Company agrees to observe a policy of progressive/corrective discipline, and that the objective of such policy shall be to correct instances of improper conduct. To that end, any disciplinary action taken will be disregarded twelve (12) months after the offense for non-repetitive infractions. A non-repetitive infraction is one that has not recurred during the rolling 12-month period. Should the same infraction occur during this rolling 12-month period, the occurrence will remain on the employee's record for 18 months, however, employees who are continual offenders and/or have multiple warnings will be judged by total performance.

Before discharge for an accumulation of infractions, the Employee shall receive at least one (1) written warning notice.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

A formal warning must be issued within ten (10) working days of knowledge of an infraction, It is provided, however, that the following shall be cause for immediate dismissal without warning or hearing: dishonesty, being under the influence of alcohol, drugs or narcotics while on Company property or operating equipment; recklessness or carelessness resulting in an accident while on duty; failure to report an accident by radio or nearest telephone immediately from the scene when physically able, or failure to make a written report upon return to the garage; threatening or  intimidating a supervisor, Company official, or other Company employees, employees of the County, or passengers; insubordination; carrying of any unauthorized passenger, falsifying time or revenue records, accident reports or the original application, failure to maintain credentials and violation of the company cell phone or communication device policy.

Employees who receive a citation for a major driving violation may be suspended from all driving duties until convicted or the citation is dismissed. Conviction of a major violation (Driving while intoxicated, Failure to stop and report an accident, Homicide, Manslaughter, or Assault arising out of the operation of a motor vehicle, Possession of opened container of alcoholic beverages, and Speed Contest, Drag Racing, or Attempting to elude an officer of the law), in an employee's personal vehicle will result in disciplinary actions, up to, and including, termination.

Conviction of a major violation in a Company vehicle will result in immediate termination.

Failure to immediately report a citation received for a major violation will result in termination.

Failure to immediately report any citation in a Company vehicle will result in termination.

Employees whose operator's license is expired or suspended, or whose medical certificate is invalid, shall be suspended until the employee obtains a valid license or certificate, unless the suspension is for one of the "major" violations listed above, in which case, employment may be terminated.

While the Company regards most cases of improper conduct as correctable, it is understood that there are offenses of such serious nature as to provide cause for discharge without notice or hearing. The procedures for discipline may include one or more of the following steps:

1. Counseling
2. Verbal Warning
3. Written Warning
4. Suspension from Duty
5. Disciplinary Probation Period
6. Dismissal/Discharge from Service

As an alternative to an unpaid suspension, employees have the option of taking a reduction in accrued PTO in lieu of unpaid time off. The disciplinary action will still stand as a suspension, but the employee will not be forced to take unpaid time off.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

## ARTICLE 20 - ATTENDANCE
### Section A: Absence and Late Report
The company follows a No-Fault Attendance Policy; legally protected absences are exceptions to this policy.

Five (5.0) attendance infractions within a four (4) month rolling period will result in termination of employment. A notice of infraction will be issued after each occurrence, and a written warning will be issued after the third and fourth infractions. Employees will be able to use PTO with an attendance infraction. The following details the possible attendance infractions and disciplinary actions that accompany each infraction:

| | |
|---|---|
| Late Report-more than ten minutes | ½ point infraction |
| Early Out-worked ½ of shift or at least "A" or "B" part of shift | ½ point infraction |
| Instance of unapproved absence | 1-point infraction |
| Lack of adequate notice | 1 1/2-point infraction |
| Refusal of Work Assignment | 1-point infraction |
| No Call – No Show | 2-point infraction |

Each late report of more than 10 minutes shall count as a ½ point infraction, with the exception that a sole occurrence of a late report within a 4-month period shall not count against an employee's record.

For early outs and absences with adequate notice, if the employee is able to provide reasonable documentation to the Operations Manager and/or Maintenance Manager of a medical or personal / family emergency, the employee will be allowed to take available PTO to avoid incurring an infraction. The company will apply what reasonably would be considered an emergency to make this determination.  Lack of adequate notice shall be defined as failing to notify the company of an absence eight (8) hours prior to your assigned start time. No call –no show shall be defined as failing to notify dispatch of your absence within thirty (30) minutes of your assigned report time.

For lack of adequate notice and no call/no shows, if the employee is able to provide reasonable documentation to the Operations Manager and/or Maintenance Manager of a medical or personal/family emergency, and if that documentation provides proof that the employee was physically unable to contact dispatch for notification of absence, the employee will be allowed to take available PTO to avoid incurring an infraction.  The company will apply what reasonably would be considered an emergency to make this determination.

Refusal of Work Assignment is separate from an absence.  Additional attendance infraction will apply for any unapproved absences.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

Should an absence extend beyond five (5) days (or four (4) days for employees with a four-day work schedule), the employee must submit a written and signed return to work certificate from their physician upon returning from work. If this is not done, each day of absence beyond the initial five (5) days off work (or four (4) days for employees with a four-day work schedule), shall be counted as an additional instance of unpaid time off.

Employees reporting to work late will be replaced by an extra-board operator or assigned by dispatch which may result in that employee being placed at the bottom of the extra-board list for the day or being placed on their run. Operators will be expected to check in at times set by the dispatcher and will remain available for any work assigned. Failure to check in with the dispatcher or remain available for work when requested may result in disciplinary action.

## Section B: Tardiness

A tardy shall be when an employee is more than one (1) minute late for scheduled starting time(s) and less than ten (10) minutes late for scheduled starting time(s).

The following discipline shall be administered for tardiness on a floating calendar year basis:
  a.  six (6)     tardies – counseling
  b.  seven (7)  tardies – verbal warning
  c.  eight (8)  tardies – written warning
  d.  nine (9)   tardies – 2-day suspension
  e.  ten (10)   tardies – Termination


## ARTICLE  21 - ACCIDENTS
**Section A:** The Safety and Training department will communicate the status of the pending determination of preventability/non-preventability within five business days of the date of the accident.
No employee who accumulates 3 preventable accidents in a 24-month period may drive on behalf of the Company, in any capacity.

Employees must comply with the standards for preventable accidents and moving violations in company vehicles.

  • Operators with three (3) preventable accidents involving a company vehicle in the previous 24 months will be terminated.
  • All moving violations or accidents in a company vehicle will be reviewed by management and may result in disciplinary action up to and including termination.


## Section B: Accidents and Administrative Leave

Should an employee be pulled from service while preventability of an accident is determined, that time from work shall be called an administrative leave.  Should said accident be determined preventable, and a disciplinary suspension is given due to the preventable accident, that unpaid suspension will be charged against the administrative leave. If the employee is found to be involved in a non-preventable accident, the administrative leave will be paid.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

## ARTICLE 22 -  GRIEVANCE AND ARBITRATION

A.   <u>Definition of Grievance</u>: Dispute(s) arising regarding the interpretation and/or application of the specific terms of this Agreement, and/or disciplinary action, including discharge taken pursuant to alleged violation(s) of work rules or procedures and/or the terms and conditions of this Collective Bargaining Agreement shall be processed in the time and manner as follows:

B.   <u>STEP ONE</u>**:** Any and all grievance of the Union or employees that may arise with reference to the interpretation or application of any provisions of the Agreement or the enforcement thereof, shall be reported, in writing, by the party aggrieved to all other parties within ten (10) working days after the occurrence or knowledge of the occurrence. Any dispute or grievance which is not so submitted within ten (10) working days after occurrence or knowledge of occurrence shall be conclusively deemed untimely, waived and not subject to the adjustment and arbitration proceeding of this section, and will be deemed resolved in accordance with the position of the Employer.

It is agreed between the Union and the Company that the following terms Apply:
1. Work/Business Days: Monday – Friday and excludes weekends and holidays.
2. Calendar Days Each day of the calendar year.
3. Where the Collective Bargaining Agreement does not specify  "Work/Business" or "Calendar" days; it is understood and agreed that the Agreement shall default to "Calendar Days."
4. When a holiday falls on any day (Calendar or Work/Business) the timeliness for any provision will be extended by on (1) day.

For all purposes of this Section, "in writing" shall be defined as including mail, fax, e-mail or hand delivery.

The written dispute or grievance must contain:

1.   A statement of the events giving rise to the dispute or grievance.

2.   The Section(s) of the Agreement alleged to have been breached or violated.

3.   The date(s) of the alleged breach or violation.

4.   A statement of what is being requested as a remedy or adjustment of the dispute or grievance.

5.   An Employee dispute or grievance must be signed by the Union Representative.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

Once a grievance has been presented and its processing begun, the nature of the grievance may not be enlarged upon; that is, new demands in connection with the grievance may not be made. Any proposed additions or enlargements may be processed through the grievance procedure, starting at Step 1, if timely, as a new and separate grievance. Any grievances later submitted are subject to the time limitations previously discussed.

C.     Time shall be of the essence in all phases of the grievances. The Employer agrees to honor all request for grievance meetings that are filed in a proper and timely manner.

D.     At all stages of the grievance procedure any employee acting in the capacity of a Shop Steward may be paid by the Employer for all hours spent in such meetings on a case by case basis. Any Employee acting as a witness or observer will not be paid the Employer.

E.     Upon receipt by the Employer of a written grievance, the Employer and the Union shall attempt to informally resolve the matter within ten (10) working days. If the matter is not settled, the Union within the next ten (10) working days may request in writing that the matter proceed to a Board of Adjustment.

F.     The Board of Adjustment shall consist of two (2) supervisory/management employees appointed by the Employer that are employed at a location other than Sonoma County Transit and two (2) Teamster Business Representatives not employed by Teamsters Local 665.

G.     The Board of Adjustment shall receive all facts in the case before it, and its decision shall be by a majority vote.

H.     In the event that the Board of Adjustment cannot reach a decision within fourteen (14) calendar days of the Board of Adjustment meeting, plus any extension of time that may have been mutually agreed upon, the Board of Adjustment shall lose jurisdiction over the matter.

If, after the Board of Adjustment a grievance remains unresolved, the Union may in writing request arbitration. After the Union requests in writing for arbitration, the Employer and Union shall within ten (10) working days attempt to choose a mutually acceptable neutral arbitrator. In the event an agreement cannot be reached as to the arbitrator, the Union may request a panel of seven (7) arbitrators from the Federal Mediation Conciliation Service within ten (10) working days of the parties' failure to reach an agreement on a mutual arbitrator. The parties shall alternatively strike names from the list until one (1) name remains. The remaining person shall be the arbitrator. An arbitrator shall be selected within thirty (30) calendar days of the day FMCS submits a panel of arbitrators to the parties.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

I.  The cost of arbitration shall be borne equally by the Employer and Union, which includes, but is not limited to, the arbitrator's fee, the room, (if agreed to by both parties) and the court reporter (if agreed to by both parties).

No arbitration shall go beyond the interpretation and/or application of this Agreement. It shall in no way be construed that the arbitrator shall have the power to add to, subtract or modify in any way the terms of this Agreement. The arbitrator shall agree to be bound by this Agreement.

J.  The decision of the arbitrator so selected shall be in writing, a copy that will be furnished to the Employer and to the Union and shall be binding upon the parties hereto.

## ARTICLE 23 - UNIFORMS

### Section A: Uniforms – Operators

All vehicle operators will be issued an authorization to secure uniforms as approved by the client to wear while performing their assigned duties. The Company agrees to provide operators with an initial issue of new uniforms upon their successful completion of the probationary period, this shall include:
- Five (5) shirts
- Five (5) pair of pants or shorts
- One (1) jacket with liner

Upon the completion of six (6) months of active service, the company, upon request, will add the following:
- Two (2) sweaters
- Three (3) additional pairs of pants or shorts
- Five (5) additional shirts

Uniform items shall be replaced at no charge to the employee, upon the presentation to management of the worn-out item. Should the uniform become damaged or excessively worn or stained due to acts or conditions not associated with work (such as spills or tears) the employee will be responsible for replacing the damaged uniform part. Employees are responsible for the regular maintenance of their uniforms which are made of wash and wear materials and can be washed in a regular washing machine with liked colored clothing and either tumbled-dried in a dryer or drip dried.

Uniforms must be clean and neat. Uniforms may be worn to and from work but are not to be worn while participating in any other activities. Wearing of uniforms in other activities or to other establishments may subject the employee to disciplinary action.

Badges and/or patches are to be worn at the prescribed place on the uniform.

Operators will wear shoes with anti-slip soles.  Shoes will be navy blue, brown or black in color with a heel no higher than one (1) inch.  Open-toed shoes are not permitted.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

Uniform designs and/or changes may be made by the client. Such changes shall become a part of the uniform requirement. Employees on duty who are out of uniform or in unclean or otherwise un-presentable uniforms will be subject to the attendance policy and incur a late report.

### *Section B: Uniforms/Shoes – Utility Workers*

All Utility Workers shall be supplied with uniforms by the Company.

Uniforms damaged through carelessness are to be replaced at the employee's expense.

Badges and/or patches are to be worn at the prescribed place on the uniform.

Utility Workers shall be allowed to take uniforms home with them, if desired. Utility Workers must be in uniform, ready to work, when reporting to work to begin their shift. Should a Utility Worker lose or damage any uniform items at home, they will be responsible for the cost of replacement or repair.

Uniforms provided by the Company through initial issue shall be turned in when an employee leaves the employment of the Company.

There will be a Shoe voucher of up to $175 to be used towards the purchase of safety shoes for Utility Workers.  A new voucher will be issued for new shoes when shoes need to be replaced due to normal wear and tear and no longer meet safety requirements.   Such vouchers shall be used exclusively for the purchase of safety shoes to be used in the performance of required duties.

Shoes must be approved "safety shoes" that have a safety toe and meet the latest ANSI and Cal-OSHA regulations for maintenance facilities.

## ARTICLE 24  - PERFORMANCE REVIEW

Job performance is reviewed periodically and at least annually or as required by management to ensure the safety, consistency and quality of service to the public; for vehicle operators this will consist of a road test as well as other factors. Appraisals are rated on knowledge of job, safety, dependability, quantity and/or quality of work, passenger relations and adaptability as well as other factors.

## ARTICLE  25 - PHYSICAL EXAMINATIONS

### *Section A: General*

Physical, mental or other examinations required by State or Federal law or Company/client policy shall be promptly complied with by all employees.  The Company may, at its own expense, require physical examinations of an employee to determine the physical fitness of said employee for continued employment. Such examinations shall be given by a physician or other licensed medical practitioner of the Company's choice. The right to require physical examinations shall be exercised neither arbitrarily nor capriciously. The employee will be compensated for the time spent at the examination at their current hourly rate.

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

All applicants and employees will be examined only by a Company authorized physician/medical professional for purposes of required medical examinations and certifications. DOT medical examinations shall only be provided by DOT-Certified Medical Examiners. Controlled substances and/or alcohol testing may be part of the physical examination as needed (i.e.: pre-employment or post-accident testing).

## ARTICLE 26 - FULL UNDERSTANDING, MODIFICATION, WAIVER

This Agreement sets forth the full and entire understanding of the parties regarding the matters set forth herein. Any other prior or existing understanding or agreements by the parties, whether formal or informal, regarding any such matters are hereby superseded or terminated in their entirety.

Except as specifically provided herein, it is agreed and understood that the Union voluntarily and unqualifiedly waives its rights to and releases the Company from any obligation to meet and confer on any subject or matter contained herein. The Union acknowledges that the Company has fulfilled its obligations to bargain in good faith on the matters contained herein for the term of this Agreement.

No Agreement, alteration, understanding, variation, waiver or modification of any of the terms or provisions contained herein shall in any manner be binding upon the parties hereto unless made and executed in writing by the parties hereto.

The waiver of any breach, term or condition of the Agreement by either party shall not constitute a precedent in the future enforcement of all its terms and provisions.

Should the Customer, through the actions of the Union. Make a decision to give extra monies over and above that which is stated in the Master Agreement for the purposes to improve Wages, retirement benefits, Health and Welfare benefits or any other financial improvements to the bargaining unit employees, it is agreed that the Company and Union will meet and decide upon how said monies shall be spent.

## ARTICLE 27 - SEPARABILITY AND SAVINGS

If any provision or part thereof of this Agreement is in conflict with any applicable federal or state law or regulation, such provision shall be deemed to be in effect only to the extent permitted by such law or regulation. In the event that any provision of this Agreement is thus rendered inoperative, the remaining provisions shall nevertheless remain in full force and effect.

## ARTICLE 28 - SUCCESSOR CLAUSE

The provisions of this Agreement shall be binding upon the Company and its successors and the assigns and all the terms and obligations herein contained shall not be affected or changed in any respect by the consolidation, merger, sale, transfer or assignment of the Company or any or all of its property, or affected or changed in any respect by any changes in legal status, ownership or management of the Company.

## ARTICLE 29 - TERM OF AGREEMENT

**3-year term upon date of ratification**

TRANSDEV SERVICES INC. SONOMA / TEAMSTERS LOCAL #665

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers and representatives as of the date and year written below.

**Date**_____

**For the Company**                              **For the Union**

_____        _____
Kevin Healy, Senior Director                   Mike Yates, President Teamsters Local 665
Labor Relations

_____        _____
Richard Mitchell, General Mgr.                Tom Woods, Business Agent Teamsters Local 665

_____        _____
Marrett McLeod, Regional                       Chris Christensen, Driver
Director H.R

_____        _____
Erika Werelius H/R Mgr.                         Renee Robinson, Driver

_____        _____
Ronald Bushman, Regional V.P.

# EXHIBIT E

Agreement

Between

Teamsters Local Union No. 665

Affiliated with the International Brotherhood of Teamsters

and

Transdev Services, Inc.

as the Contractor
for the Shuttle Operations at the
Mineta - San Jose International Airport

August 31, 2018-September 1, 2023

## Contents

COLLECTIVE BARGAINING AGREEMENT ................................................................1
SECTION 1 - RECOGNITION ........................................................................................1
SECTION 2 - EMPLOYMENT OF UNION MEMBERS ................................................1
SECTION 3 - HIRING ....................................................................................................2
SECTION 4 - DISCRIMINATION ..................................................................................2
SECTION 5 - HOLIDAY BENEFITS ..............................................................................3
SECTION 6 - VACATION BENEFITS ............................................................................4
SECTION 7 - WAGES ....................................................................................................5
SECTION 8- SHIFTS AND SCHEDULING ....................................................................6
SECTION 9 – OVERTIME ..............................................................................................9
SECTION 10 -PAID TIME OFF (PTO) .........................................................................10
SECTION 10 – B – ATTENDANCE ..............................................................................11
SECTION 11 - 401(k) PLAN .........................................................................................12
SECTION 12 - GRIEVANCE PROCEDURE ..................................................................12
SECTION 13 - NO STRIKES OR LOCKOUTS .............................................................14
SECTION 14 - MANAGEMENT RIGHTS ....................................................................14
SECTION 15 - SENIORITY ...........................................................................................15
SECTION 16 - LEAVES OF ABSENCE (UNPAID) ......................................................16
SECTION 17 - LEAVE OF ABSENCE (PAID) ..............................................................17
SECTION 18 -WORKERS' COMPENSATION .............................................................17
SECTION 19 - HEALTH & WELFARE, DENTAL, PRESCRIPTION AND VISION.......18
SECTION 20 – BULLETIN BOARD AND SHOP STEWARD ......................................20
SECTION 21 – DISCIPLINE AND DISCHARGE ..........................................................21
SECTION 22 - LABOR-MANAGEMENT COMMITTEE ..............................................22
SECTION 23 - UNION VISITATION RIGHTS ..............................................................23
SECTION 24 - CREDIT UNION ...................................................................................23
SECTION 25 - EMPLOYMENT OF RELATIVES .........................................................23
SECTION 26 - UNIFORMS, COMPANY EQUIPMENT, PARKING PERMITS AND AIRPORT BADGES........23
SECTION 27 - SEPARABILITY ....................................................................................24
SECTION 28 - FULL UNDERSTANDING, MODIFICATION AND WAIVER ...............24
SECTION 29 - MISCELLANEOUS PROVISION ..........................................................24
SECTION 30 - DURATION OF AGREEMENT ..............................................................24
INDEX .........................................................................................................................26

# COLLECTIVE BARGAINING AGREEMENT

THIS AGREEMENT, entered into as of this August 31, 2018 by and between Transdev Services Inc., hereinafter referred to as "Employer,", and Teamsters Local Union No. 665 Affiliated with the International Brotherhood of Teamsters, hereinafter referred to as the "Union," acting on behalf of the Employer's bus operators employed at the Mineta – San Jose International Airport under the Employer's contract to provide service for the shuttle operations for the City of San Jose.

## SECTION 1 - RECOGNITION

Employer recognizes the Union as the sole collective bargaining agent for all bus operators with the Employer at the Mineta - San Jose International Airport as set forth above, and no others.

## SECTION 2 - EMPLOYMENT OF UNION MEMBERS

A.  Membership in good standing in the Union not later than the 31st day following the beginning of employment shall be the condition for employment for employees covered by this Agreement. Employment will start on the date of hire, which is the first date on payroll. It is expressly understood that these membership obligations cover all bus operators employed by the Employer for the operation of the shuttle-contracted service at the Mineta - San Jose International Airport.

B.  Upon written authorization from an employee, the Employer agrees to deduct each month from the earnings of the employees, the periodic Union membership dues and initiation fees as set by the Union, and to remit same together with a list of the names, addresses, and social security numbers of the employees involved to the Union office.

C.  If an employee voluntarily signs the check-off form attached hereto as Appendix "A", which is authorized by the Union, three (3) dollars per month shall be deducted from his/her total hourly earnings for that pay period and be transmitted to the Union's Committee on Political Education (COPE). It is agreed and understood that this voluntary contribution is not a condition of employment.

D.  No later than the 31st day following the end of the Employees probation period, new employees not members of the Union shall have an appropriate amount deducted from the next following paycheck that shall be for such initiation fee and one month's dues. Thereafter, Employer shall deduct the regular monthly periodic dues uniformly required as a condition of each employee retaining membership.

E.  The Union shall indemnify the Employer and hold it harmless against any and all suits, claims, demands and liabilities that may arise out of, or by reason of the application of, or implementation of the provisions of this section.

## SECTION 3 - HIRING

A.    Applicants for bus operator positions may be referred by the Union on a nondiscriminatory basis and shall be considered equally with all other applicants. The Employer shall hire those applicants it determines are most qualified, provided, however, nothing herein shall require the Employer to hire an employee who fails to meet the qualifications required by the Employer and its contract with the City of San Jose.

B.    For the first ninety (90) calendar days of employment, an employee shall be considered a probationary employee who, at the Employer's sole discretion, may be terminated or otherwise disciplined without resort to the Grievance/Arbitration Procedures of this Agreement. However, if an employee is absent from work for good cause during the probationary period, probation shall be extended to meet the required probationary period. For the purposes of this paragraph, "good cause" shall be defined as criteria for special circumstances as considered for non-probationary employees. The employees' situation shall be treated like any other non-probationary employee [on a case-by-case basis].

C.    All employees who are transferred to a new classification after the effective date of this Agreement shall be on probation immediately following his or her date of transfer for the period of ninety (90) calendar days. If an employee is absent from work for good cause during the probationary period, probation will be extended to meet the required probationary period. If such an employee fails to complete such probation successfully, he or she shall be returned to his or her former classification without loss of seniority as long as the employee's failure is not due to violation of Company policy in accordance with Appendix II of the Company's work rules.

D.    No later than the 31st day following the date of hire the Employer shall notify the Union of the name, address, position, status and social security number of the employee hired.

## SECTION 4 - DISCRIMINATION

A.    No employee or applicants for employment shall be discriminated against because of membership in the Union or activities on behalf of Union, and Union agrees that the employees covered hereby shall be admitted to membership without discrimination. Neither Employer nor Union shall discriminate for or against any employee or applicant for employment in any manner that is contrary to applicable federal, state or local laws or regulations.

B.    The Employer and the Union recognize the importance of providing all employees with equal employment opportunities, as provided by applicable laws.    Therefore, the Employer and the Union agree that no employee will be discriminated against based upon their race, color, creed, religion, sex, sexual orientation, national origin, age, disability, status as a Vietnam era veteran or any other ground prohibited by federal, state or local law.    The Employer and the Union will comply will all laws preventing

2

discrimination, harassment and/or retaliation.

C.     Any employee who feels he/she has been subjected to unlawful discrimination or harassment of any kind will notify any of the following: management, human resources, the Union or the NLRB. Employees are encouraged to meet with local management with Union representation with regard to the above. Employees can raise concerns and make reports without fear of reprisal or retaliation.

D.     With regard to the American with Disabilities Act, it is agreed that Employer has the sole discretion to determine the qualifications and suitability of any applicant or employee for a position. The Employer has the duty to provide reasonable accommodations for qualified individuals with disabilities within the bargaining unit, upon request, consistent with the ADA. This provision is subject to the Grievance/Arbitration procedure.

## SECTION 5 - HOLIDAY BENEFITS

A.     For all employees the following eight (8) days shall be observed as Holidays:

| Holiday | Month |
|---|---|
| New Year's Day, | January |
| Martin Luther King's Birthday, | January |
| Presidents Day, | February |
| Memorial Day, | May |
| Independence Day, | July |
| Labor Day, | September |
| Thanksgiving Day, and | November |
| Christmas Day. | December |

Effective in 2021 employees shall receive Veterans Day as an observed Holiday.

B.     In order to be eligible for Holiday pay,

1.     an employee must work on his/her scheduled workday immediately prior to a Holiday, must work on their scheduled workday immediately following that Holiday and on the day of the Holiday (if scheduled), except for Vacation, Military leave, Funeral leave and pre-approved PTO.

2.     an employee who fails to report for scheduled work on a Holiday shall be entitled to his/her holiday pay if the absence is due to a bona fide illness with verification by a medical doctor. Phone in verifications will not be accepted. Call in procedures will apply to be eligible (refer to Section 8, paragraph F).

C.     Holidays shall be paid at the rate of straight-time pay for the average number of hours per

day in the employee's normally scheduled workweek, not to exceed eight (8) hours Holiday pay.

D.  Any employee who works on one of the holidays recognized in paragraph A above, shall receive time and one half (1½) pay for each hour worked on that holiday plus the Holiday pay, if eligible under paragraph B above.

E.  If a Holiday falls during an employee's vacation period, the employee will be compensated for the Holiday pay and for the vacation pay as described in Subsection C. above.

## SECTION 6 - VACATION BENEFITS

A.  All employees who have been continuously employed by Employer for a period of one full year shall, at that time, be granted and vested with vacation time as determined by multiplying total compensated hours as defined under 6(H) below by .0385 not to exceed eighty (80) hours.

All employees who have been continuously employed by the Employer for a period of five full years or more shall be granted and vested with vacation time as determined by multiplying total compensated hours as defined under 6(H) below by .0577 not to exceed one-hundred-twenty (120) hours.

All employees who have been continuously employed by the Employer for a period of ten full years or more shall be granted and vested with vacation time as determined by multiplying total compensated hours as defined under 6(H) below by .0770 not to exceed of one-hundred-sixty (160) hours.

B.  Employees shall be allowed to accumulate their accrued vacation hours to a maximum of two (2) years accrual at which point they will cease to accrue additional hours paid vacation until they either use or cash out all or part of paid vacation under Section 6 (E) and (F). For purposes of this Section it is understood that employees shall not lose any vacation accrued after twenty-four (24) months of continuous accrual, but can only retain vacation equal to twenty-four (24) months accrual. Any vacation accrued beyond the amount accrued in twenty-four (24) months shall be automatically cashed out by the Employer to the employee on the first payday following the qualifying (anniversary) date of thirty-six (36) months of continuous accrual.

C.  When a holiday falls within an employee's vacation period, the employee will be compensated for holiday pay equal to the employee's normally scheduled workday not to exceed eight (8) hours, refer to Section 5, paragraphs (C) and (E).

D.  Until six (6) months of employment, no employee may use vacation time.

E.    Vacation time-off and payments: Vacation time-off shall be taken by employees at a time mutually agreed upon with Employer. All vacation requests must follow the Employers work rules and be submitted in writing for approval at least thirty (30) days in advance of the start of vacation.

F.    It is important that employees take time off from work. Accordingly an employee may not receive vacation pay in lieu of time off except that an employee may make a written request to cash out vacation pay at any time, but only once per 365 day period.

G.    All employees who wish to receive their vacation pay in advance of going on vacation shall indicate their request on the vacation request form. The vacation pay shall be in the employee's regularly scheduled paycheck prior to their vacation. Vacation pay will be equal to the vacation time requested.

H.    For Section (6) compensated hours shall include all regular time, overtime and double time hours worked and include paid vacation (including when designated for FMLA leave), Paid Time Off (PTO) (including when designated for FMLA leave), paid holidays and paid funeral leave. For the purposes of calculating vacation benefits compensated hours may not exceed two thousand-eighty (2080) hours in any twelve (12) month period.

I.    For purposes of this section, an employee's seniority date shall be the criteria used for determining vacation accrual. This language shall apply to all successive Employers.

## SECTION 7 - WAGES

Regular Straight Time Rate for Existing Employees

A.

| New Hire | After 1 Year | After 2 Years |
|----------|--------------|---------------|
| $26.54   | $28.15       | $30.27        |

B.    The "regular straight time rate" is defined as the wage rates established in this section calculated without fringe benefits.

C.    The above rate(s) shall increase on September 01, 2019. Said increase shall be equal to the percent annual increase in the consumer price index (Urban Wage Earners and Clerical Workers, base year 1982-1984 = 100) for the San Francisco-Oakland San Jose CMSA, published by the United States Department of Labor, Bureau of Labor Statistics. The increase shall be calculated with the CPI in June published in the month of July. The purpose of this paragraph is to provide that whatever percentage increase the City of San Jose grants the Company, the Employer shall pass such percentage increase to the employees.

5

The employer may increase wage rates at any time in the future after notifying the union of such change or changes.

Effective 7/1/21 and 7/1/22 either party may request to reopen the agreement to discuss the annual adjustment however neither party is obligated to agree to any modifications.

## SECTION 8- SHIFTS AND SCHEDULING

A. After meeting and conferring with the Union, the Bid Rules may be subject to changes based upon Employer's needs and requirements. All open shifts will be made available for bid by seniority. There will be a regularly scheduled shift bid every four (4) months. Shift bids are scheduled subject to the service requirements as established by the Employer's contract with the City of San Jose Airport.

B.

Employer shall allow all employees to bid for work pursuant to the Shift Bid Rules as follows: Shifts will consist of start dates, start times and ending times. Bidding will be by seniority. Each employee will be given up to ten (10) minutes to bid. Bids may be done in person, by phone or written proxy. Once an employee has completed a bid, no dropped shifts will be allowed. Employees will work the entire scheduled weekly shift until the next bid. An employee who fails to show up or call at their scheduled appointment time will be repositioned at the bottom of the shift bid list and scheduled a new bid time. Any employee who misses their second bid will be considered to have voluntarily resigned. Employees on vacation or unable to bid in person will be allowed to bid by phone or written proxy.

All regularly scheduled shift bids shall be posted and the Union shall be provided a copy for review at least fourteen (14) calendar days before the regularly scheduled shift bid. This time period shall be waived if the service requirements of the Airport require an emergency shift bid to be implemented within ten (10) days. However, upon written notification by employee (Briefing Discrepancy Form) of any errors within the shifts, corrections shall be made as soon as possible, but no later than ten (10) days of the notification by employee.

C. If the service requirements of the Airport require a new shift bid within thirty (30) calendar days of the regularly scheduled shift bid, the Employer shall present to the Union the new shift bid. The Union and Employer agree that the next scheduled shift bid shall take place six (6) months from the date of shift bid required by the Airport. The Employer shall give the Shop Stewards as much advance notification as possible concerning the details of shift bids required by the Airport.

D. Weekly Bid. All newly created or newly vacated work covered under this Agreement shall be posted for seven (7) calendar days. Employees may obtain a bid form for any such position from their Supervisor or Dispatcher.

E.  Equalization of Work Hours. The Employer agrees to make every reasonable effort to maximize the hourly schedules of those employees who want more hours (see Section 8(E) for details).

F.  Equalization of work hours (vacancies), for employees with less than forty (40) hours: the Employer agrees to make every reasonable effort to maximize the hourly schedule of those employees who want more hours who do not have forty (40) hours, beginning with those with less than twenty (20) hours in seniority order. Such work (vacancies) will be awarded in a manner that minimizes overtime.

The Employer shall determine all daily assignments and weekly shift schedules. Employer shall consult with the Union regarding the number and character of daily assignments and weekly shift prior to any substantial restructuring or revising of the work schedule.

Employer shall maintain a weekly signup sheet (Extra Work Book) for employees who wish to work additional hours. Employees will be called from the Extra Work Book in order of seniority in a manner that minimizes overtime.

Vacant shifts will be filled by employees that will not exceed forty (40) hours per week as a result of such shift award in the following manner:

Straight Time (first):

1.  Work will be awarded to employees that have signed up for extra work in the Extra Work Book (first) in order of seniority.

2.  Thereafter, employees will be awarded shifts from the Weekly Master Worksheet in order of seniority.

Overtime (second):

3.  Overtime will be awarded to operators who as a result of such shift award incur the least amount of overtime hours. In the event no employees are available for straight time work after the Extra Work Book and the Weekly Master Worksheet are exhausted, operators with forty (40) hours will be awarded the overtime, in the following manner.

4.  Overtime will be awarded to operators that have signed up for extra work in the Extra Work Book (first) in order of seniority.

5.  Thereafter, work will be available for any employee who wants it, whereas a result of such award will not incur double overtime. If a vacant shift still remains, double-overtime will be awarded in the following manner:

Double Overtime (third):

6.     Double overtime will be awarded to employees that have signed up for extra work in the Extra Work Book (first) in order of seniority.

7.     Thereafter, double-overtime work will be available for any employee who wants it, and be awarded by seniority. There will be no first come first served.

F.     Given the difficulty in securing substitute employees and for these employees to arrive at work without loss of service there must be a three (3) hour call-in time if an employee is unable to report to work. When no call is received, applicable discipline and work rules will apply and the employee will not be eligible to use PTO (see Section 10).

G.     Management's right to perform the services of bus operator is limited to the time required for a bus operator to be called and to appear at the Airport ready to work. Management shall begin calling a replacement driver within 15 minutes of becoming aware of a vacant shift.

H.     Employees on light or modified duty can be utilized temporarily to perform front office work. Employees on light or modified duty will perform work assignments as directed by the Employer. Light or modified work assignments must be consistent with the physician's documented restrictions. Front office duties shall exclude hiring, firing, issuing discipline or any other supervisory or management duty as prescribed by the NLRB guidelines.

I.     The Employer will not utilize a member of the bargaining unit in the capacity of dispatcher, unless the situation is of an emergency condition (as determined by the Employer) or training for a change in classification. The Employer shall only assign employees as dispatcher who has volunteered for such duties.

J.     During each shift bid, all drivers must bid a total of at least-two days of scheduled work per week, if available, or they will be considered to have voluntarily quit. This section does not apply to relief drivers.

K.     Regular scheduled drivers on an approved leave of absence (Vacation, PTO, Medical, Worker's Compensation, FMLA, etc.) shall not be able to return early to replace relief drivers who are working their shift. Drivers on a leave of absence returning early shall be able to work in whatever shifts are available The relief driver will be allowed to finish the workweek for which he or she has bid.

L.     The Company will allow permanent shift trades based on the following conditions:

    •   A permanent shift trade must be submitted to management seventy-two (72) hours in advance for approval.

8

- The employees on permanent shift trade will not be allowed to trade shifts again for the duration of the shift bid.
- The shift trade will not result in any overtime.

- The Company will allow non-permanent shift trades based on the following conditions (and separate and distinct from the permanent shift trade mentioned above) based on the following conditions:

- The trade must be submitted to management forty-eight (48) hours in advance for approval.
- The shift trade must be in the same work week and will not result in any overtime.
- Employees that fail to honor a shift trade agreement may be disciplined according to the attendance policy.
  o Should such failure occur and discipline is issued, neither party included in the shift trade will not be allowed to participate in the shift trade program for a period of six (6) months.


## SECTION 9 – OVERTIME

A.    The workday shall be in accordance with the Industrial Welfare Commission Order #9-2001.  The workweek consists of seven (7) workdays beginning on Sunday and ending on Saturday.

B.    Except as set forth below, all time worked in excess of an eight (8) hour daily assignment, all time worked in excess of a ten (10) hour daily assignment and all time worked in excess of forty (40) hours per week, shall be paid at the rate of time and one-half ($1\frac{1}{2}$ x) of the regular straight time rate.  Any work performed on the seventh (7th) consecutive day (Saturday) in a workweek shall be compensated at double (2x) the regular straight-time rate of pay.  All time worked in excess of twelve (12) hours per workday shall be paid at double (2x) the regular straight-time rate of pay.

C.    Employees shall be paid bi-weekly and the Employer shall establish definite paydays in accordance with Section 204 of the California Labor Code.  All employees may enroll in the payroll direct deposit within ninety (90) days of their employment or within ninety (90) days of the effective date of this Agreement.

D.    Should an employee be required to report for work and no work is available, he/she shall be paid for four (4) hours.  Should an employee work for more than four (4) hours, he/she shall be paid for the actual hours worked.

SECTION 10 -PAID TIME OFF (PTO)

A.  Paid Time Off (PTO)

All employees covered by this Agreement, who have been continuously employed for a period of one year, shall thereafter be entitled to paid time off to be calculated as follows: on the one year anniversary the eligible PTO time will be determined by multiplying the total compensated hours as defined in section 10(C) by .0270 not to exceed fifty-six (56) hours annually. For the purposes of calculating PTO benefits compensated hours may not exceed two thousand-eighty (2080) hours in any twelve (12) month period.

B.  New Hires (after July 1, 2003) will be eligible for PTO at the following rate:

| Anniversary | Multipliers |
|---|---|
| One (1) Year | .0 193 (40 hour maximum) |
| Two (2) Year | .0270 (56 hour maximum) |

For the purposes of calculating PTO benefits compensated hours may not exceed two thousand-eighty (2080) hours in any twelve (12) month period.

C.  For Section (10)(A) Compensated hours worked shall include all regular time, overtime and double time hours worked and include paid vacation (including when designated for FMLA leave), Paid Time Off (PTO) (including when designated for FMLA leave), paid holidays and paid funeral leave.

Refer to section 8 (F) for details concerning call in time. Failure to comply with Section 8 (F) will preclude use of the PTO for that day. PTO deduction will be for an entire shift or for a partial shift if the employee becomes ill during his/her shift.

D.  All PTO time is considered an excused absence (except when it is cashed out) if the employee notifies the Employer twelve (12) hours prior to shift start time. All call-ins must be in accordance with established guidelines. If PTO notification is less than twelve (12) hours, Employer may request Medical Documentation. Call in procedures would apply to be eligible for Holiday Benefits (refer to Section 8, paragraph F).

E.  It is important that employees take time off from work. Accordingly an employee may not receive PTO pay in lieu of time off except that an employee may make a written request two (2) weeks prior to their anniversary date with the Employer to cash out a portion of the PTO time earned. The PTO time can be cashed out at any time, but only once per 365 day period. PTO earned must be used by the employee within twenty-four (24) months of the employee's anniversary date with the Employer at which point they will cease to accrue additional PTO hours until he/she either uses or cashes out part of the employee's PTO. However, it is understood that employees shall be limited to cashing out no more than fifty percent (50%) of their PTO time at any one time.

Any employee that did not use PTO time during the twelve (12) months between anniversary dates with the Employer in any given year, will be paid an additional day of PTO time equal to 1/7th of their total PTO time earned between the prior anniversary dates.

## SECTION 10 – B – ATTENDANCE

Employee attendance directly impacts service quality, employee morale and other areas of operating efficiency. If an employee is absent or late to work, others must become responsible to ensure that service to the community continues uninterrupted. The primary function of the Employer is to provide safe on-time service to the community, and because small increments of time are so critical to the provision of service, it is imperative that employees are reliable and provide adequate advance notice when they will be absent.

1.  Good Attendance: All employees are responsible for good attendance and punctuality. This means reporting to work on time each scheduled work day. Failure to meet this requirement may result in disciplinary action up to and including termination of employment.

2.  Unauthorized Absence Defined: An unauthorized absence is defined as one or more scheduled consecutive work days (or any part of a work day) when an employee is not at work. An employee who misses up to three (3) consecutive scheduled days for the same serious illness or medical condition, will be considered one (1) unauthorized absence.

3.  Miss Out: An occurrence whereby an employee reports to work sixty-one (61) seconds after the scheduled starting time of his/her shift.

    Paragraph 10-B-3 is contingent upon the Employer installing an accurate time clock.

4.  No Call/No Show: An occurrence whereby an employee fails to show up or fails to call ShuttlePort Dispatch for a work assignment within three (3) hours after his/her report time.

5.  Employer shall issue an Employee Handbook outlining all Rules, Regulations and Policies including rules on attendance which will be negotiated with the Union. Prior to the implementation of any new rule, regulation or policy, the Employer will issue an addendum to the Employee Handbook with a copy given to each employee and Union, at least fourteen (14) days prior to the implementation of said rule, regulation or addendum.

11

## SECTION 11 - 401(k) PLAN

A.

All full and part-time employees may participate in the Company sponsored 401(k) Plan the first January 1 or July 1 following the completion of one (1) Year of Service. The Company shall contribute seventy-five (75) cents for every dollar that the employee contributes up to a maximum of $1,000 per year. There is a five (5) year vesting schedule where a Year of Service is earned for every calendar year in which an employee works at least 1,000 hours.

For employees hired before 3/31/2000, Employer will match contributions dollar for dollar up to the $1,500 annual maximum beginning January 1, 2001.

## SECTION 12 - GRIEVANCE PROCEDURE

A.    Definition of Grievance:    Dispute(s) arising regarding the interpretation and/or application of the specific terms of this Agreement, and/or disciplinary action, including discharge taken pursuant to alleged violation(s) of work rules or procedures and/or the terms and conditions of this Collective Bargaining Agreement shall be processed in the time and manner as follows:

B.    STEP ONE: Any and all grievance of the Union or employees that may arise with reference to the interpretation or application of any provisions of the Agreement or the enforcement thereof, shall be reported, in writing, by the party aggrieved to all other parties within ten (10) working days after the occurrence or knowledge of the occurrence. Any dispute or grievance which is not so submitted within ten (10) working days after occurrence or knowledge of occurrence shall be conclusively deemed untimely, waived and not subject to the adjustment and arbitration proceeding of this section, and will be deemed resolved in accordance with the position of the Employer.

It is agreed between the Union and the Company that the following terms Apply:
1. Work/Business Days: Monday – Friday and excludes weekends and holidays.
2. Calendar Days Each day of the calendar year.
3. Where the Collective Bargaining Agreement does not specify "Work/Business" or "Calendar" days; it is understood and agreed that the Agreement shall default to "Calendar Days."
4. When a holiday falls on any day (Calendar or Work/Business) the timeliness for any provision will be extended by on (1) day.

For all purposes of this Section 12, "in writing" shall be defined as including mail, fax, e-mail or hand delivery.

The written dispute or grievance must contain:

1.      A statement of the events giving rise to the dispute or grievance.

2.      The Section(s) of the Agreement alleged to have been breached or violated.

3.      The date(s) of the alleged breach or violation.

4.      A statement of what is being requested as a remedy or adjustment of the dispute or grievance.

5.      An Employee dispute or grievance must be signed by the Union Representative.

Once a grievance has been presented and its processing begun, the nature of the grievance may not be enlarged upon; that is, new demands in connection with the grievance may not be made. Any proposed additions or enlargements may be processed through the grievance procedure, starting at Step 1, if timely, as a new and separate grievance. Any grievances later submitted are subject to the time limitations previously discussed.

C.      Time shall be of the essence in all phases of the grievances. The Employer agrees to honor all request for grievance meetings that are filed in a proper and timely manner.

D.      At all stages of the grievance procedure any employee acting in the capacity of a Shop Steward may be paid by the Employer for all hours spent in such meetings on a case by case basis. Any Employee acting as a witness or observer will not be paid the Employer.

E.      Upon receipt by the Employer of a written grievance, the Employer and the Union shall attempt to informally resolve the matter within ten (10) ~~business~~ working days. If the matter is not settled, the Union within the next ten (10)  working days may request in writing that the matter proceed to a Board of Adjustment.

F.      The Board of Adjustment shall consist of two (2) supervisory/management employees appointed by the Employer that are employed at a location other than San Jose Airport and two (2) Teamster Business Representatives not employed by Teamsters Local 665.

G.      The Board of Adjustment shall receive all facts in the case before it, and its decision shall be by a majority vote.

H.      In the event that the Board of Adjustment cannot reach a decision within fourteen (14) calendar days of the Board of Adjustment meeting, plus any extension of time that may have been mutually agreed upon, the Board of Adjustment shall lose jurisdiction over the matter.

I.      If, after the Board of Adjustment a grievance remains unresolved, the Union may in writing request arbitration. After the Union requests in writing for arbitration, the

13

Employer and Union shall within ten (10) working days attempt to choose a mutually acceptable neutral arbitrator. In the event an agreement cannot be reached as to the arbitrator, the Union may request a panel of seven (7) arbitrators from the Federal Mediation Conciliation Service within ten (10) working days of the parties' failure to reach an agreement on a mutual arbitrator. The parties shall alternatively strike names from the list until one (1) name remains. The remaining person shall be the arbitrator. An arbitrator shall be selected within thirty (30) calendar days of the day FMCS submits a panel of arbitrators to the parties.

J.     The cost of arbitration shall be borne equally by the Employer and Union, which includes, but is not limited to, the arbitrator's fee, the room, (if agreed to by both parties) and the court reporter (if agreed to by both parties).

       No arbitration shall go beyond the interpretation and/or application of this Agreement. It shall in no way be construed that the arbitrator shall have the power to add to, subtract or modify in any way the terms of this Agreement. The arbitrator shall agree to be bound by this Agreement.

K.     The decision of the arbitrator so selected shall be in writing, a copy which will be furnished to the Employer and to the Union and shall be binding upon the parties hereto.

## SECTION 13 - NO STRIKES OR LOCKOUTS

During the term of this Agreement, there shall be no strikes; sympathy strikes, picketing, handbilling, slowdown, cessation or stoppage of work, or any other interruption or interference with the work or business of the Employer, or lockouts indulged in by the Employer. In the event of a strike by another group involving the City of San Jose's premises (including the Airport) or operations or on-line operations, employees under this Agreement shall remain on the job.

## SECTION 14 - MANAGEMENT RIGHTS

The Employer reserves all rights, power and authority, except as otherwise specifically designated or modified by express provisions of this Agreement, including, but not limited to: the right to direct the work force, increase, decrease or reassign the work force, hire, promote, demote, discharge or discipline, establish work duties, reclassify employees, assign employees overtime and special work requirements and to determine the necessity, merits, mission and organization of any service or activity of the Employer.

       Such rights and functions also specifically include:

(a)    The determination of the size of the workforce and allocation of work, including overtime, to employees, the determination of policies affecting the selection of employees and/or applicants for employment, promotions, transfers,

14

(b)     The establishment of standards of customer service, quality of work, and other measure of employee productivity, including improvement, change or elimination of methods, materials, equipment or facilities.

The foregoing statement of Management Rights shall not be deemed to exclude other management rights not specifically stated, including those rights provided by law.

## SECTION 15 - SENIORITY

A.      Overall seniority shall be defined as the total length of service at the respective job site at the Mineta – San Jose International Airport with the Employer or its predecessor(s) and, if applicable, shall include prior service with AMPCO Auto Parks, Inc. and RV Goebel Family, Inc. (Shuttle Bus Service). The Union (with Employer input) shall resolve all questions of seniority.

B.      Seniority within a classification, defined as the date the employee begins paid service within the classification, shall prevail in shift bids, and layoffs or re-hires and shall be the prime criteria governing vacation preferences (providing the senior person has made a thirty (30) day prior request).

C.      No later than the 31st day following the implementation of this Agreement, the Employer shall provide to the Union a current seniority list indicating the seniority date of each driver as of the execution date of this Agreement. The current seniority list shall be attached to this agreement as Appendix "C". Any changes or updates to said list must be submitted to all Stewards as it is updated. All seniority lists shall be printed and posted so as to be clearly legible by all employees.

D.      Any employee who accepts a promotion into a management/supervisory position shall serve a probationary period of ninety (90) calendar days. If during such period the employee requests to return to the driver position, the driver shall be returned to any shift, which is vacant at that time with no loss of seniority, however, this does not exclude the Employer from terminating that employee for cause.

E.      An employee will lose seniority within his or her classification in the event that he/she:

        1.      Voluntarily quits;
        2.      Is discharged for cause;
        3.      Is laid off for a period of twelve (12) months or more (see conditions listed in paragraphs F and G of this Section); and/or
        4.      Is promoted out of the unit for ninety-one (91) days or more.

F.      In cases of layoff, the Employer shall send copies of notices to the Union (in writing) with the name(s) last known address and telephone number of the laid-off employee(s). It is the responsibility of the laid-off employee(s) to notify the Employer of any changes

15

to his/her address or phone number.

G.     In the event of rehire(s) following layoffs, the Employer shall notify the Union (in writing) of the names of employees to be called back to work. The Employer shall notify the Union via facsimile and by placing a notice in the Union mailbox. Those employees to be called back to work shall have twenty-four (24) hours to respond to the Union's notification and up to fifteen (15) calendar days from the date the Union is notified by the Employer to report to the Employer. It is understood that employees failing to notify the Union within twenty-four (24) hours or failing to report to the Employer for rehire within the specified timeline shall be considered to have "voluntarily quit" and will not be considered for rehire. If an employee is unable to follow the timelines as stated in this paragraph or is unable to return to work as needed by the Employer, the next employee(s) on the rehire list (by order of seniority) shall be called. It is understood that those employee(s) unable to return to work shall be moved to the next slot on the seniority list for rehire. If the employee(s) is unable a second time, he or she shall be moved to the bottom of the seniority list for rehire. The timelines listed above shall exclude weekends and holidays.

## SECTION 16 - LEAVES OF ABSENCE (UNPAID)

A.     Any driver with one or more years of continuous service with the Employer shall be eligible to request an unpaid leave of absence subject to the State and Federal laws regulating leaves of absences (i.e. Family and Medical Leave Act). The Employer's work rules shall define and establish the applicable qualifying guidelines and rules. It is understood that employees shall be required to use all available Paid Time Off (PTO) and vacation time while on leave.. The Company shall make its contribution to medical benefits during a State/Federal regulated leave for a period of up to three months, as long as the employee submits his/her required contribution while on leave. The employee shall be responsible for 100% of the health care premiums in the case of a leave of more than three months.

B.     Unpaid Union Leave: Leave of absence with accumulative seniority and no pay may be granted in the event an employee is elected or is requested by the Union and he/she accepts to take time off from work for official Union business, subject to Employer approval, which shall not be arbitrarily denied. The leave shall be for a maximum of thirty (30) consecutive days, but the Union may request an extension. The Union agrees to notify the Employer with reasonable advance notice in writing as to the time needed and nature of the time off requested subject to the Employer's approval.

C.     Jury Duty: An employee who must be absent from work to perform jury service shall not be paid for such time off. The employee shall submit proof of jury service to the Employer. An employee may use paid time off (PTO) and/or vacation (VAC) time off to cover days off for jury duty service.

D.     Military Leave: Emergency military leave, temporary military leave, and indefinite

military leave shall be granted to eligible employees in accordance with state and federal law.

E.  Personal Leave:  The purpose of a personal leave of absence is to provide unpaid time off from work for an extended period of time for an emergency or hardship after all Vacation, PTO and FMLA time (if applicable) has been used, and not simply for personal convenience or vacation.  Requests must be made in writing in advance on the appropriate form and with appropriate documentation when available.

A personal leave of absence without pay may be granted at the Company's discretion, for a period not less than seven (7) days and not to exceed thirty (30) days in any one (1) year period.  In exceptional cases, this period may be extended by the Company.  Leave of absence will not be charged to an employee's regular attendance record.  The employee shall be responsible for 100% of the health care premiums while on personal leave.

Durning the period of leave, an employee may neither accept employment elsewhere nor may he/she continue to work elsewhere: acceptance or continuation of employment elsewhere shall be grounds for discharge. Any employee who fails to return to work on their first scheduled working day following the last day of approved leave shall be considered to have abandoned their job.

## SECTION 17 - LEAVE OF ABSENCE (PAID)
### FUNERAL LEAVE

If a death occurs in the immediate family of a full-time or part-time employee, he/she shall receive a maximum twenty-four (24) hours over a period of three (3) days of funeral leave with pay, to be treated separately from and not to be deducted from PTO time. Immediate family shall be described as Mother, Father, Spouse, Son, Daughter, Brother, Sister, Grandmother, Grandfather, Mother-in-law, Father-in-law, Stepfather, Stepmother and Stepchild.

If an employee requires more than the three (3) days, he/she may use Vacation, PTO or unpaid time off (if Vacation or PTO is not available) not to exceed ten (10) calendar days from initial absence. The Employer may request proof of relationship to the deceased.

Bereavement days must be taken in contiguous days off unless approved by management ahead of time.

## SECTION 18 -WORKERS' COMPENSATION

A.  The Employer agrees to abide by the Workers' Compensation laws of the State of California covering each employee coming under the terms and conditions of this

Agreement.  The Employer has the responsibility to take all steps necessary to insure any employee who suffers an industrial injury or industrial illness shall receive medical attention as needed.  The Employer will be free to offer employee light duty work if available.

B.      The Employer will continue to make payment of health and welfare premiums for the benefit of any employee who suffers industrial injury or illness for the period of employee's temporary disability payments not to exceed the calendar month in which the employee suffers the industrial injury or illness and the next twelve (12) succeeding calendar months. During periods of industrial temporary disability, employee's seniority will not be affected.

C.      No Employer shall discharge or discriminate against any member of the Union because said employee elected to pursue any Workers' Compensation remedies guaranteed to him/her by state law.


SECTION 19 - HEALTH & WELFARE, DENTAL, PRESCRIPTION AND VISION

19.1 During the life of this Agreement the Employer shall provide to the employees the Kaiser Only Plan as offered by the union and shall pay to the administrator of Plan the premium and administrative cost as provided in the appropriate Trust Agreement and amendments thereto. The Employer shall make 95% of the contribution and the employee shall make 5% contribution. The employee contribution shall be by payroll deduction.

Total Premium shall be as follows:
        2019 - $1460.00 per month
        2020 - $1460.00 per month

Each year thereafter, any annual increase in the monthly premium up to 4% shall be paid entirely by the employer. In addition to the employee contribution at 19.1 any increase in the monthly premium above 4% will be paid by the Employee.


19.2 All employees who have completed one hundred twenty (120) hours of work in the previous month shall be eligible for coverage under such plan on the first of the month following completion of such one hundred twenty (120) hours of work. New employees shall become eligible to participate on the first day of the month immediately following the day which he or she completes sixty (60) days of continuous service.

19.3 Employer shall contribute the amounts provided for in the collective bargaining agreement to which it is a party, or specified by the Trustees, as the case may be, to provide benefits for each employee covered by the collective bargaining agreement and for any such additional employees accepted as participants in the Fund pursuant to uniform rules and regulations. Contributions are due on the tenth (10th) day of the month for hours worked in the preceding month, and become delinquent if not received by the Fund by the twenty-fifth (25th) day of the month due.

19.5 It is understood that the employer contributions referenced above may be increased as determined by the Trust Fund in order to maintain such benefits at the current level (full maintenance of benefits). In each year thereafter, any annual increase in the monthly premium up to 10% shall be paid entirely by the Employer. In addition to the Employee contribution at 19.1 any increase in the monthly premium above 10% will be paid by the Employee.

19.6 The employer agrees to abide by all terms and conditions of the Trust Agreement creating such Health and Welfare Funds as they have been or may be modified, altered or amended, and all regulations and rules of the Board of Trustees of such Trust.

19.8 Paid contractual vacations, PTO, and holidays shall be counted as time worked for the purpose of this Section; Drivers who are on authorized leave of absence for a period of more than twenty (20) days must agree to advance the required monthly premiums to protect their Health and Welfare coverage.

19.9 Health and Welfare premiums to be paid while employees are off on workers' Compensation up to six (6) months with a maximum of one time in the life of the Agreement. The first three (3) months shall be paid by the Bay Area Automotive Group Welfare Fund. The second three (3) months shall be paid by the Employer.

Section 19. Accident and Sickness Disability Plan

19.A The Health and Welfare plan provided for in Section 19 of this Agreement includes the following Accident and Sickness disability plan benefits.

a) First workday - when disabled because of accident or when hospital confined for either illness or accident.

b) 14th workday - when disabled because of an illness.

c) The maximum benefit payment is $200.00 per week payable for up to twenty-six (26) weeks maximum for any disability.

d) Employees must be on State Disability or Workers' Compensation to be eligible.

e) Eligibility of employees: All employees who have performed one hundred twenty (120) hours worked in the prior month.

f) Contractual vacations and holidays paid for but not worked shall be considered as time worked for purposes of this Section.

19.10. The company will carry $15,000 in life insurance on each regular driver.

## SECTION 20 – BULLETIN BOARD AND SHOP STEWARD

A.      The Employer shall provide a Union Bulletin Board at a place in its office or headquarters, which will be available for viewing only except as specified below. The Shop Stewards' Union Representative and Dispatchers shall have custody of the key(s) to the Bulletin Board. Said Bulletin Board shall be for the purpose of posting notices of official business of the Union. The Union and its membership agree that it will limit the distribution of handbills, poster or other literature to the bulletin board and employees' mailbox. A copy of any notices handbills, posters or other literature must be furnished to the Employer prior to being posted on the bulletin board or placed in the mailbox. All notices, handbills, posters or other literature must also identify the Union as the author and be initialed by the Union Representative prior to being posted. Only the Shop Stewards and/or Union Representative shall have access to the Union bulletin board for purposes of posting notices. The Employer shall contact a Shop Steward and/or Union Representative prior to removing any notices from the Union bulletin board.

B.      The Employer agrees that the Union shall be permitted to maintain a least two (2) Shop Stewards (both of whom are bus operators covered under this Agreement) per shift. The Union agrees to notify the Employer in writing upon adding or changing Shop Stewards. An employee directed to report to a supervisor in his/her office for any matter involving discipline, or which potentially may lead to discipline, if the employee so requests shall have the right to have a Shop Steward or Union Representative present if such person is available. However, if no such Shop Steward or Union Representative is available, the discipline may be deferred until such time as a Shop Steward or Union Representative becomes available. Availability will be defined as any action(s) that does not detract from Airport busing service and operations. The deferral will automatically extend the timelines for issuing the Disciplinary Notice. Copies of all written warnings shall be provided to a steward in the presence of the employee to whom the warning is issued, provided the employee does not object.

C.      The Employer agrees to respect the responsibilities of a Shop Steward. The responsibilities of a Shop Steward may be to meet with the General Manager or his/her representative to attempt to resolve all problems or disputes before they are referred to the grievance procedure. The Employer, acting in good faith may allow a Shop Steward (while on duty) a reasonable amount of time to confer with the Union member regarding a disciplinary action or to investigate an incident without loss of pay. It is Employer's sole discretion to remove the Shop Steward from service to meet with the member. The Shop Steward will be required to return to service as soon as the Employer directs him/her to do so. Prior to being at the work site, the Union must follow the guidelines of Section 23 "Union Visitation Rights."

D.      The Employer shall furnish all Steward with an updated seniority list of all employees as it is updated quarterly.

20

E.    Union Shop Stewards shall have no authority to change the terms of this Agreement.

## SECTION 21 – DISCIPLINE AND DISCHARGE

A.    No employee shall be disciplined, discharged nor will adverse entries be made in their personnel record without just cause. A copy of any written warning, discharge or other disciplinary note must be given to the employee and to the Shop Steward while in the presence of the employee, provided the employee does not object. A copy will also be sent to the Union, if requested by the employee.

The Employer shall permit employees to read, sign and attach written comments to disciplinary notices, provided the signing of such a notice by an employee shall only be considered an acknowledgment of receipt and not as an agreement to its content. The employee's failure to sign the disciplinary notice shall not be entered in their personnel record as confrontational and the employee will be able to obtain a copy of the Disciplinary Notice, if requested. However, the phrase "Declined to Sign" will be entered on the signature page of the Disciplinary Notice. A Supervisor, Manager and/or Shop Steward will initial next to the statement. To acknowledge receipt of the Disciplinary Notice, Shop Stewards or Union Representatives are required to sign all disciplinary actions, unless the employee did not request Union representation.

B.    Progressive Discipline consists of five (5) steps:
    1.    Verbal warning, documented in writing
    2.    First written warning
    3.    Second written warning
    4.    Suspensions
    5.    Termination

The type of discipline imposed in any instance shall depend on the nature and seriousness of the offense involved, as determined by the Employer in its discretion, in accordance with Section 21 (A). The Employer shall be able to impose termination without regard to the five steps for more serious offenses as determined by the Employer's written work rules and regulations. Any discipline step shall be imposed within five (5) calendar days of the next day the employee works after the Employer becomes aware of the offense, which causes it. The five (5) calendar days will be extended by weekend time, holidays (approved by this agreement), PTO and vacation use. For example: if the Employer becomes aware of an offense on a Monday and the employee works on Tuesday, starts vacation on Wednesday - the calendar timeline begins when the employee returns from vacation or other day's off. In other words, five (5) normal business days (Monday through Friday) any missed time or holidays will extend the five (5) day period.

C.    Any disciplinary action can only remain active in an employee's file for the following periods:

21

- Two (2) preventable accidents in a moving twelve (12) month period (3rd offense within the 12 months will be considered a terminal offense);

- The fourth preventable accident in a moving twenty-four (24) month period will be considered a terminal offense;
- All other infractions will remain active for a moving twelve (12) month period with the exception of Miss-Outs.
- Miss-Outs will remain active for a moving six (6) month period.

All timelines will begin, as stated above; from the date the offense was recorded, after which time it shall become inactive for disciplinary purposes.

D.   Work Rules:  The Employer shall have the right to establish and enforce work rules and regulations and agrees to inform the Union before the implementation of any work rule and regulations.  The Union acknowledges that this may include, but is not limited to, DMV &CDL regulations, Title 13 & 22 regulations, State & Federal DOT regulations, drivers testing and security procedures, provided, however, nothing herein shall preclude Employer from enforcing all Airport rules and regulations and all modifications of and additions thereto from time to time as may be promulgated by the Director of the Airport on the City of San Jose's behalf.  A copy of any memorandums or notices posted by the Employer, that affect Union members, regarding the Company work rules and regulations or any other work requirements shall be sent to the Union.

E.   For purposes of discipline regarding attendance, the third (Written Warning #2) and fourth (Suspension) phases of progressive disciplines, regarding Miss-Outs, it is understood that the Employer will notify the Shop Steward on duty or the next available Shop Steward and/or Union Representative in order to provide counseling to the Union member receiving the attendance discipline. The Union will be responsible for contacting the disciplined employee and to provide counseling to its member. Failure of the Union to provide counseling will not effect any disposition of the progressive discipline process.

## SECTION 22 - LABOR-MANAGEMENT COMMITTEE

The Employer and the Union agree that mutual interests are advanced in a climate of respect, mutuality and open communication. Therefore, the parties hereto agree to establish a Labor Management Committee. The purpose of the Committee shall be to meet as needed to discuss mutual concerns. The Committee shall normally consist of no more than three (3) management representatives designated by the Employer, and no more than four (4) ShuttlePort employees or representatives designated by the Union. The Union's Labor Management Committee members that are assigned to the Committee will not lose any wages while attending the Labor-Management meetings. Compensation is limited to those members that would normally be working a regular shift during the meeting.

## SECTION 23 - UNION VISITATION RIGHTS

The Union representative shall be allowed to make site visitations for the purpose of observing the conditions under which the employees are working and ascertaining whether or not this Agreement is being observed. The Union Representative shall notify management twenty-four (24) hours prior to said visit, and the Employer shall then be obligated to allow the requested site visitation. The Union Representative will not interfere with the normal course of work, especially while an employee is operating a vehicle or performing any work assignment. The Union specifically shall comply with all security requirements of the Employer. Union site visitations may be permitted without meeting the notification requirement at the Employer's discretion.

## SECTION 24 - CREDIT UNION

Upon written authorization from the employees, the Employer agrees to make regular and periodic deductions from an employee's paycheck and to remit such amount to the designated Credit Union (Common Wealth Central) for the purpose of an IRA or any other type of account. Employer shall have thirty (30) days to establish and implement this procedure.

## SECTION 25 - EMPLOYMENT OF RELATIVES

The Employer may hire relatives of current employees only if (1) the individuals concerned will not work in a direct supervisory relationship, and (2) the employment will not pose difficulties for the supervision, security, safety, or morale. "Relatives" are defined as spouses, children, sisters, brothers, mothers, or fathers and persons related by marriage. Present employees who marry, or become related by marriage, will be permitted to continue employment with the Employer only if they do not work in a direct supervisory relationship with one another, and do not otherwise pose difficulties for supervision, security, safety, or morale. If employees who marry, or who become related by marriage, do work in a direct supervisory relationship with one another, the Employer will attempt to reassign one of the employees to another position for which he or she is qualified, if such a position is available. If no such position is available, then one of the employees will be required to leave the Employer. The decision as to which employee will leave is left solely to the spouse-employee.

## SECTION 26 - UNIFORMS, COMPANY EQUIPMENT, PARKING PERMITS AND AIRPORT BADGES

A.    The employer shall designate the uniform to be worn by the employees. The employer shall pay for the cost of the required uniform. The employee shall be responsible for the proper upkeep and cleaning of the uniform. All employees are required to wear the prescribed uniform in the prescribed manner and to present a neat, clean appearance at all times as defined in the Employers work rules. The employee is financially responsible for all uniforms that are lost and damaged except for the normal work-related wear and tear.

23

B.    The employee is financially responsible for all company equipment, parking permits and airport badges issued to him/her that need replacement due to loss or damage or that are not returned upon separation from the Employer, any of which will be deducted from an employee's pay.

C.    Employees shall be paid for three (3) hours at their straight time rate for acquiring the initial and renewing the Airport identification badge (Non-SIDA).

Renewals are bi-yearly. Compensation will be based on a one-time test every two (2) years. Employees will be required to test on their own time (off duty) until they are able to pass the re-test without compensation from the Employer.

The Employer will make every effort to allow the employee to test during his/her normal work schedule without loss of pay (limited to three (3) hours). When an employee takes the test during his/her shift, the three (3) hours compensation, as stated above, is waived.

## SECTION 27 - SEPARABILITY

Notwithstanding, any other provisions of this Agreement to the contrary, in the event that any part of this Agreement shall be declared invalid by any court of competent jurisdiction, or by any decision by any applicable State or Federal law or regulation diminish the benefits provided by this Agreement, all other provisions of this Agreement shall continue in full force and effect.

## SECTION 28 - FULL UNDERSTANDING, MODIFICATION AND WAIVER

This Agreement sets forth the full and entire understanding of the parties regarding the matters set forth herein. Any and all prior or existing agreements or understandings, whether formal or informal, are hereby superseded and terminated in their entirety. Although nothing in this Agreement shall preclude the parties from mutually agreeing to meet and confer to negotiate on any subject within the scope of representation during the term of this Agreement, it is understood and agreed that neither party may require the other party to meet and confer or negotiate on any subject matter covered herein except any significant work rule/policy change (*i.e.* new Chapter or Section).

## SECTION 29 - MISCELLANEOUS PROVISION

The Employer agrees to provide an adequate resting facility as outlined in the Industrial Welfare Commission Order (#9-2001).

## SECTION 30 - DURATION OF AGREEMENT

This agreement shall remain in full force and effect from August 31, 2018-September 1, 2023. Thereafter, it shall automatically renew itself and continue in full force and effect from year to year thereafter unless written notice to reopen or terminate this Agreement is given in the final calendar year of the contract by either party and received by the other not later than sixty (60) days prior to its expiration.

Date: _3 | 13 | 2019_

Transdev Services, Inc.

Michael Girard, General Manager

Transdev Services Inc.

Dwayne Brown, Planning/HR Manager

Teamster Local Union No. 665

Affiliated with the International
Brotherhood of Teamsters

Florencio Sinogui, Business Representative

## INDEX

### A

Accrual, 6, 7
Activities, 4
Address, 1
Adjustment, 8, 16, 17
Admitted, 4
Age, 4
Agreement, 2, 1, 31
Agrees, 1, 4, 9, 10, 17, 22, 23, 24, 26, 28, 29, 31
Americans with Disabilities Act, 4
Anniversary, 7, 13, 14, 15
Applicants, 3
Arbitration, 3, 5
Attendance, 11, 14, 15
Automatically, 7, 26, 31
Average, 5

### B

Bargaining, 16, 17
Behalf, 1, 4, 28
Benefits, 2, 7, 8, 13, 14, 16, 21, 24, 25, 29, 31
Bereavement, 23
Bid, 8, 9
Bus, 20

### C

Calendar, 17
Case-by-case basis, 3
Cash out, 6, 7, 14
Check, 2
Circumstances, 3
City of San Jose., 1, 3
Claims, 2
Classification, 3, 11, 20
CMSA, 8
Color, 4
Compensated, 14
Covered, 1, 4, 9, 13, 24, 26, 31
Creed, 4
Customer service, 19

### D

Date, 1, 3, 7, 9, 13, 14, 17, 20, 21, 28
Days, 17
Deducted, 2, 23, 30
Demands, 2, 17
Disability, 4, 23, 25
Discipline, 27, 28
Discrimination, 2, 4
Doctor, 5
Double, 7, 11, 13, 14
Dropped, 9
Dues, 1, 2

### E

Effective, 3, 13
Emergency, 9, 11, 22
Employees, 2, 4, 6, 8, 9, 10, 11, 12, 13, 25, 30
Employer, 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31
Equal, 4, 6, 7, 8, 15
Exceed, 6, 7, 10, 13, 14, 22, 23
Extra Work Book, 10, 11

### F

Failure, 3, 12, 18, 27
Federal, 4, 22
Fees, 1
Fringe, 8
Funeral, 5

### G

Grievance, 3, 5, 16, 18, 19

### H

Harmless, 2
Holliday, 5
Human resources, 4

### I

Implementation, 2, 15, 20, 28
Indemnify, 2
Industrial Welfare Commission Order #9-2001, 12
Initiation, 1, 2
International Brotherhood of Teamsters, 1

### J

Jury duty, 22

### L

Labor Management Committee, 29
Laws, 4, 21, 23
Leave, 5, 7, 12, 14, 21, 22, 23, 25, 30
Leave of absence, 12, 21, 22, 25
Liabilities, 2
List, 1, 9, 18, 20, 21, 27
Local, 4
Loss, 3, 11, 20, 26, 30, 31

### M

Management, 11, 19, 29
Medical, 5, 12, 14, 15, 21, 23, 24
Membership, 1, 2, 4, 26

142924.3

26

Military leave, 5
Minimizes, 10

# N

Name(s), 1, 18, 21
National origin, 4
NLRB, 4, 11

# O

Office, 1, 11, 26
Opportunities, 4
Overtime, 6, 7, 10, 11, 12, 14, 19

# P

Paid, 5, 6, 7, 13, 14, 15, 18, 20, 21, 22, 24, 25, 30
Party, 8, 12, 16, 24, 31
Payday, 7
Period, 2, 3, 6, 7, 9, 12, 13, 14, 20, 21, 22, 23, 25, 28
Permanent shift trades, 12
Phone, 5
Policy, 3, 12, 15, 31
Pre-approved, 5
Probation, 3, 20
Procedures, 3
Provisions, 2, 16, 19, 31
Proxy, 9
PTO, 2, 5, 7, 11, 12, 13, 14, 21, 22, 23, 25, 28

# R

Race, 4
Rate, 8
Recognition, 2, 1
Refer, 14
Regulations, 4, 24, 25, 27, 28
Relatives, 30
Religion, 4
Resigned, 9
Retaliation., 4
Rules, 8, 9, 15, 28

# S

San Francisco-Oakland San Jose, 8
San Jose International Airport, 1, 20
Scheduled, 5, 6, 7, 8, 9, 11, 12, 15, 22
Section, 5, 6, 7, 9, 11, 13, 14, 17, 20, 25, 26, 27, 31
Seniority, 3, 7, 8, 9, 10, 11, 20, 21, 23, 27
Sex, 4
Sexual orientation, 4
Sickness, 25
SIDA, 30
Social security, 1, 3
Sole collective bargaining agent, 1
State, 4, 22, 23
Straight-time, 5, 13
Strike, 19
Suits, 2

# T

Teamsters, 1, 18
Termination, 3
Transdev Services Inc., 1, 32
Transferred, 3

# U

Union, 1, 2, 3, 4, 8, 9, 10, 15, 16, 17, 18, 19, 20, 21, 23, 26, 27, 28, 29
United States Department of Labor, Bureau of Labor Statistics, 8
Unlawful, 4
Urban Wage Earners and Clerical Workers, 8

# V

Vacancies, 10
Vacation, 5, 7, 12, 22, 23
Vietnam, 4
Violation, 3, 16, 17
Voluntarily, 2, 9, 12, 21

# W

Weekly Bid, 9
Workweek, 6, 12, 13

# EXHIBIT F

# LABOR AGREEMENT

## Between

## **Transdev Services, Inc.**
San Francisco Paratransit Division

## and the

# INTERNATIONAL BROTHERHOOD OF TEAMSTERS
Local 853

TABLE OF CONTENTS..................................................................................................................2
ARTICLE 1- TERM OF AGREEMENT...........................................................................................3
ARTICLE 2- RECOGNITION.........................................................................................................3
ARTICLE 3- PARTICIPATION.......................................................................................................3
ARTICLE 4- MANAGEMENT RIGHTS .......................................................................................4
ARTICLE 5- REPRESENTITIVES' RIGHTS..................................................................................7
ARTICLE 6- BULLETIN BOARDS.................................................................................................8
ARTICLE 7- COMPLIANCE WITH LAW.....................................................................................8
ARTICLE 8- AFFIRMITIVE ACTION............................................................................................9
ARTICLE 9- NO STRIKE, NO LOCKOUT.....................................................................................9
ARTICLE 10- DISCIPLINE...........................................................................................................10
ARTICLE 11- ATTENDANCE......................................................................................................15
ARTICLE 12- GRIEVANCE & ARBITRATION PROCEDURES ...............................................15
ARTICLE 13- CATEGORIES OF EMPLOYEES..........................................................................18
ARTICLE 14- HOURS OF WORK AND PAY..............................................................................18
ARTICLE 15- SENIORITY ...........................................................................................................19
ARTICLE 16- BIDDING...............................................................................................................20
ARTICLE 17- DRUG AND ALCOHOL PROGRAM....................................................................21
ARTICLE 18- MEAL & REST BREAKS......................................................................................21
ARTICLE 19- COMPLETE AGREEMENT ..................................................................................23
ARTICLE 20- SAVINGS CLAUSE...............................................................................................24
ARTICLE 21- UNION SECURITY................................................................................................24
ARTICLE 22- WAGES..................................................................................................................25
ARTICLE 23- MEDICAL BENEFITS...........................................................................................26
ARTICLE 24- PAID AND UNPAID TIME OFF............................................................................27
ARTICLE 25- RETIREMENT/401K.............................................................................................29
ARTICLE 26- PROTECTION OF RIGHTS...................................................................................29
ARTICLE 27- DURATION ...........................................................................................................29

## ARTICLE 1 -TERM OF AGREEMENT

This Agreement is entered into effective January 1, 2015, by and between Transdev Services Inc., (hereinafter referred to as the "Company") and Teamsters Local Union Number 853, (hereinafter referred to as the "Union"). Its purpose is the promotion of harmonious relations between the company and the Union, the establishment of an equitable and peaceful procedure for the resolution of differences, and the establishment of rates of pay, hours of work and other conditions of employment.

## ARTICLE 2- RECOGNITION

Section 2.1 -Bargaining Representative.  The Company recognizes the Union as the exclusive bargaining agent for all employees in the bargaining unit.

Section 2.2- Covered Employees.  The bargaining unit includes all part-time and full- time drivers and aides, working under any Contract between the Company and Transdev employed at 575 Tunnel Road Brisbane, CA 94005, excluding office clerical employees, professional employees, road supervisors, dispatchers, guards and supervisors as defined in the Act.

## ARTICLE 3 -PARTICIPATION

Section 3.1 – Purpose.  It is the purpose of this article to provide that all employees covered by this Agreement share equally the Union's costs incurred to negotiate, administer and enforce the terms of this Agreement.

Section 3.2- Membership.  An employee assigned to a covered classification who is employed by the Company on the date of contract ratification, as a condition of employment, will become and remain a member in good standing of the Union, not later than the 31st day following the employee's completion of training or the contract ratification date, whichever is later.

Section 3.3- Check off.  Membership as used herein shall mean only an obligation of an employee to pay periodic dues and initiation fees uniformly required, or in the event that

the employee objects to full dues and initiation fees, only to the obligation to pay periodic dues and initiation fees, as required by current law.

Section 3.4- Dues Deduction. It is further agreed that the Company shall deduct the initiation fees and dues from the pay of each employee, and shall forward all such fees and dues so deducted to the office of the Union each month. Such initiation fees and dues shall be deducted upon the basis of a dues deduction form voluntarily executed by the employee.

Section 3.5. Where an employee who is on Check-off is not on the payroll during the week in which the deduction is to be made, or has no earnings, or insufficient earnings during the week, or is on leave of absence, the employee must make arrangements with the Union to pay such dues before the end of the month.

Section 3.6. In the event an employee, fails to apply for or maintain his/her membership in the Union, after notice of his/her obligation to do so and opportunity to correct any failure to apply of failure to maintain membership, the Union may give the Company notice of this fact and the employment of such employee may be terminated by the Company.

Section 3.7. The Union shall indemnify the Company and hold it harmless against any and all claims, demands, suits, or other forms of liability of any kind which may arise out of or by reason of actions taken by the Company for the purpose of complying with this Article.

## ARTICLE 4 – MANAGEMENT RIGHTS

Section 4.1 - Company Rights. Except as expressly modified or restricted by a specific provision of this Agreement, all statutory and inherent managerial rights, prerogatives and functions necessary to fully control any matters concerning the management and conduct of its business are retained and vested exclusively in the Company, in accordance with its sole and exclusive judgment and discretion, including, but not limited to these rights:

    a) To reprimand, suspend, discharge, or otherwise discipline employees for just cause and to determine the number of employees to be employed.

    b) To hire employees, determine their qualifications and assign and direct their work; to promote, demote, transfer, lay off, and recall to work.

    c) To set the standards of productivity, the services to be rendered, to maintain the efficiency of operations; to determine the personnel, methods, means, and facilities

by which operations are conducted, to set the starting and quitting time and the number of hours and shifts to be worked and to modify schedules and routes.

d) To close down, or relocate the Company's operations or any part thereof; to expand, reduce, alter, sub-contract, combine, transfer, assign, or cease any job, department, operation, or service, to control and regulate the use of vehicles, facilities, equipment, and other property of the Company or the client.

e) To determine the price at which the Company contracts its services, to determine the methods of financing its operation and services, and to determine the number, location and operation of departments, divisions, and all other units of the Company.

f) To introduce new or improved technology, machines, tools, equipment, property, research, service, maintenance methods, and materials used to increase efficiency, to hire, promote, assign, transfer, demote, discipline and discharge for just cause.

g) To issue, amend and revise policies, rules, regulations, and practices including standards of performance; to take whatever action is either necessary or advisable to determine, manage and fulfill the mission of the Company and to direct the Company's employees; to determine the existence or nonexistence of facts which are the basis of management decision, and to carry out the lawful directives of the customers to whom the Company contracts its services.

Section 4.2 -Technology Rights. The Company may employ new technology, including video systems, GPS, mobile data terminals/computers and other present or future technologies for the transit industry, in order to help ensure the safety of the driver and passengers, and compliance with all federal, state and local driving rules and regulations by both the driver and the motoring or pedestrian public. The Company and the Union agree that any recording resulting from said technology may be used as evidence in the investigation of any incident involving the Company facility, another employee, or an employee while operating a Company vehicle. In the event any data or recording is used as evidence for purposes of disciplinary action, the Union shall be afforded an opportunity to view the evidence as soon as practicable after the action is taken. Any use of Technology for disciplinary purposes, as described in this Section, shall be in accordance with the terms of this Agreement and is subject to the grievance procedure contained herein. The

Company shall meet with the Union before implementation of new technology on an advice and confer basis, in order to explain and clarify the use and effects of said technology. The Union maintains all rights to the grievance procedure contained in this Agreement in the case of disagreement concerning any implementation of new technology as stated in this Section.

Section 4.3 – Client Contract. The Company and the Union acknowledge that the Company has entered into a contract(s) to provide transportation services with Transdev, hereto known as the "Client." The contract between the Company and Transdev contains specific performance requirements. Nothing contained in this Agreement will be construed to prohibit Company from fulfilling all of its contractual obligations to the Client. The Company will have the sole right to change any policies, rules and regulations governing employees without renegotiation of this Agreement should such changes in policies, rules and regulations be required in order to comply with any governmental law or regulation or to comply with any provision of the agreement between the Company and the Client. The Company will discuss and obtain input from the Union on any other new policies, rules and regulations without renegotiation of this Agreement prior to implementation. However, the Company shall have the sole right to make any and all final decisions regarding the implementation of said policies, rules and regulations. If the Company is required to remove a driver from service at the request of the Client, per provision(s) contained in the agreement between the Client and the Company, the Company agrees to discuss the matter with the Client to attempt to resolve the problem. If the Client maintains its position on the removal of the driver, the Company will then meet with the Union to discuss the status of the driver. Should the Client maintain its position concerning the status of the driver, such removal from service would be subject to the grievance procedure contained in this Agreement.

Section 4.4. The Company's failure to exercise any right, prerogative, or function hereby reserved to it, or the Company's exercise of any such right, prerogative, or function in a particular way, shall not be considered a waiver of the Company's right to exercise such right, prerogative, or function or preclude it from exercising the same in some other way not in conflict with the express provisions of this Agreement.

## ARTICLE 5-REPRESENTATIVES' RIGHTS

<u>Section 5.1- Recognition of Shop Stewards</u>. From among the employees employed in the bargaining unit, the Union may designate and the Company will recognize not more than two (2) Shop Stewards per one hundred (100) bargaining unit employees to serve as the Union's agent in the representation of employees in the bargaining unit. The Company will not be required to recognize any employee as a Shop Steward unless the Union has informed the Company, in writing, of the employee's name.

<u>Section 5.2- Leaves of Absence</u>. The Company agrees that members of the Union will be granted unpaid leaves of absence on Union business as authorized by the Union, when so requested, provided that the granting of such leave does not impact Company's ability to provide service to the Client. The Union agreed not to request that more than two such leaves of absence will be requested for any specific period of time. It is further agreed that any member of this Union who now holds office, or will be appointed or elected to any office in said Union, which requires his absence from the Company's employ, will upon his retirement from said office be placed in his former position with full seniority rights, rates of pay, vacation and retirement pay rights. Union business is further defined to mean employment directly and solely by the Union, or the International Union of which it is a division. During periods of any such leave, the employee shall not receive or accrue any pay, fringe benefits or other compensation to which the employee would have been entitled to under this Agreement had the employee not taken such leave of absence.

<u>Section 5.3- Duties of Shop Stewards</u>. Shop Stewards are authorized to represent bargaining unit members at meetings and process and settle grievances. Time spent on union business shall not be paid by the Company.

<u>Section 5.4- New Member Orientation</u>. The Company will make available to the designated Union representative(s) an opportunity to introduce themselves, explain the responsibilities of the stewards and provide a brief history and overview of Local 853 to newly hired employees for a maximum of 30 minutes. The new member orientation will occur during the initial training period for new employees. The actual time and place for such orientation will be mutually agreed upon by the Company and the Union.

<u>Section 5.5- Union Visitation</u>.  Upon giving reasonable notice to the Company, the Union will be allowed access to Company premises for the purpose of investigating or adjusting an actual grievance, or visiting the members in order to ensure the terms of this Agreement are being upheld.  The Union agent will confine any conversations with employees to non-work time and his activities will not in any manner interfere with the performance of work by the employee or cause interruption to the operation of the Company's business.

## ARTICLE 6- BULLETIN BOARDS

<u>Section 6.1 -Union Business</u>.  The Company agrees to provide space for bulletin boards for employees covered by this Agreement.  The Union-supplied bulletin board is for the Union's exclusive use where notices pertaining to meetings, social events and information of general interest to Union members may be posted.  Nothing will be posted that disparages the Company, the Union, the client or any other person or employee. All postings must be printed on official Union letterhead and signed by an officer of the Local. The Company shall also allow any official postings as mandated and prescribed by any government agency.

<u>Section 6.2- Indemnification</u>.  The Union indemnifies and will hold the Company harmless against any and all claims, suits, demands, charges, complaints or other causes of action for items that are posted on the bulletin boards.

## ARTICLE 7- COMPLIANCE WITH LAW

It is understood and agreed that the Union will comply with the provisions of applicable law pertaining to elections and that any provision of this Agreement, the legality of which depends upon an election, will not be effective until authorized in such election or until full compliance with the law is accomplished.

## ARTICLE 8 – AFFIRMATIVE ACTION

Section 8.1 – Equal Opportunity.  The Company and the Union recognize a common commitment to the equality of opportunity for all.  Therefore, the Company and the Union agree that neither will discriminate against any employee with respect to hiring, compensation or terms or conditions of employment because of such individual's race, color, religion, sex, age, national origin, marital status, sexual orientation, disability or Vietnam Era veteran status, or any other status protected by law.

Section 8.2 – Gender.  Whenever either the masculine or feminine gender is used in this Agreement, it is intended to include the opposite gender as well.

## ARTICLE 9 – NO STRIKE, NO LOCKOUT

Section 9.1 – Disputes.  It is recognized and understood that the Company and its workers are obligated to perform essential public service, and that this service must be continuously performed to the fullest extent.  The grievance and arbitration re-dress procedure shall be the sole and exclusive means for settling any dispute arising under this Agreement between the workers of the Union and the Company during the term of this Agreement.

Section 9.2 – No Strikes.  The Union agrees during the term of this Agreement that it will not engage in, encourage or condone any strike, slow-down, boycott, interference or interruption of production or service – especially in cases where such services include medical emergencies or delivery of patients to health care providers.  The Union shall take all affirmative action to prevent or stop any such strikes, slow-downs, walkouts, or other interference with work, and all employees are required to cross picket lines and report to work.  Any employee that refuses to cross any such picket line and not report to work or violates the provisions of this Article in any way, may be disciplined by the Company up to and including discharge.   The Company will use all available legal means in the event of a wildcat strike or a labor disruption violating this agreement.

Section 9.3 - Lockouts.  During the term of this Agreement, or any extension thereof there will be no lockouts by the Company.

# ARTICLE 10- DISCIPLINE

## Section 10.1 - Disciplinary Procedures.

a) All disciplinary processes will be performed by a General Manager, Operations Manager or Regional Vice President, or their management designee. The Company agrees to be fully compliant with employee's representational rights under the Weingarten decision. The charged employee shall be given the opportunity to attend all hearings, which may result in disciplinary action. A Union representative may also attend the hearing, if so requested by the employee.

b) The respective General Manager or designee, to whom the individual is requested to report, shall give a fair and impartial hearing to all employees. This shall also include corrective interviews, through the disciplinary process. Stewards will be notified in a timely manner of any suspensions or pending terminations.

c) A copy of bargaining member's disciplinary actions shall be given to the employee. The shop steward and the Local Union shall also be given copies of discipline within ten (10) business days of the issuance of said discipline.

d) Initial discipline shall occur within fourteen (14) business days of the Company's knowledge of an alleged infraction / incident. The Company will notify the union if an investigation will last longer than fourteen (14) business days to complete and the above time limit will be extended. This extension will be allowed only in situations where the investigation is delayed pending receipt of pertinent reports. The extension will be for a maximum of five work days after the receipt of the reports unless mutually agreed to extend further.

e) Disciplinary actions taken by the Company according to the terms of this Section are subject to the grievance procedure contained herein.

## Section 10.2 - Progressive Discipline.
Any violation of posted and/or written Company rules, policies and/or procedures may, at the Company's discretion, result in disciplinary action. With the exception of a violation of a serious infraction as listed in Section 10.4, Attendance Policy, or the Safety Policy, each infraction of any rule, policy or procedure may result in the following disciplinary action taken by the Company against the employee

who violates any rule, policy or procedure:

First Violation:          Policy review / documented verbal counseling.

Second Violation:      First Written Warning Notice.

Third Violation:         Final Written Warning Notice.

Fourth Violation:       Dismissal From Employment With Company

The definition "first", "second", "third" and "fourth" violation above shall mean the violation of any rule or combination of rules and shall not be construed to mean the first, second and third violation of each individual rule exclusive of violation of any other rules. If an employee does not have a disciplinary violation for a period of twelve consecutive months, then the employees will have his record cleared. This policy is based on a floating twelve (12) month time period.

Section 10.3- Work Rules. The Company will issue all employees a current Transdev Employee Handbook outlining all rules, regulations and policies.  Prior to the Implementation of any new or revised rule, regulation or policy in the Handbook, the Company will issue an addendum to the Employee Handbook, with a copy given to each employee and the Union, at least twenty (20) business days prior to the implementation of said rule, regulation or addendum. The Company shall have the sole exclusive right to adopt additional reasonable rules, regulations and policies to govern its operations and employees and, from time to time, to change or amend such rules, regulations and policies, to the extent they do not conflict with any express written provisions of this Agreement. The Company will notify the Union in writing of all changes in policy at least twenty (20) business days before they are implemented, unless required by client or safety concerns which demand a more immediate implementation.   In the event any Company Rule conflicts with the terms of this Agreement - this Agreement shall prevail. Any change to rules and regulations shall be posted and distributed to all employees in order to uniformly advise all bargaining unit members. Prior to implementation, the Union may request to meet with the Company to discuss the intent and purpose of any new rule or regulation. Disagreements concerning the implementation of any Company Rule conflicting with the terms of this Agreement is subject to the grievance procedure contained in this Agreement. If the Union fails to file a grievance within fourteen (14) business days after implementation, the new rule, regulation or work-related policy change will stand as implemented.

Section 10.4 - Serious Infractions. The following violations of Company policies and rules are considered Serious Infractions and shall be just cause for immediate discharge of the employee:

    a) Theft or deliberate destruction, defacing or damaging of Company or
       Client property or property of another employee or passenger.

b) Physical violence or fighting on Company premises or vehicles or any time while on duty.

c) Possession of firearms, weapons, or explosives, and similar devices on Company premises or vehicles or any time while on duty.

d) Threatening, intimidating, coercing or abusing fellow employees, passengers, customers or members of the public.

e) Conviction of a misdemeanor law while on duty. Conviction of a felony whether on or off duty either before or during employment.

f) Use of language or any another activity designed to create a hostile work environment or to offend or harass any other employee, customer or passenger based on that employee's, customers or passenger's race, color, religion, sex, age, national origin, marital status, sexual orientation, disability or Vietnam Era veteran status, marital status or any other status protected by law.

g) Failure for any reason to maintain a valid driver's license and all other certificates required by Federal, State or local law or regulation to operate the Company's vehicles. In the event the employee notifies the Company of a temporary loss of the required license or certification, the employee shall be first entitled to an unpaid leave of absence of up to thirty (30) calendar days in order to correct said loss of a valid driver's license or other certificate required to operate the Company's vehicles. In the event the employee does not immediately notify the company of any loss of license or certificate required to operate the vehicles, the employee may be terminated immediately.

h) Unauthorized touching, physical contact with or indecent exposure to a passenger or fellow employee.

i) Failure to properly secure using required tie down procedure, boarding belt and lap and shoulder restraints, any passenger in a wheelchair or other mobility assistance device.

j) The pickup of any unauthorized passenger or the drop off of any passenger, when such is required on the driver's manifest or when so instructed by the dispatcher, at any place without there being a physical handoff to a caregiver or other responsible adult at the destination or the pickup.

k) Reporting for work under the influence of intoxicating liquor or illegal drugs or violation of the Company's Drug and Alcohol Policy as contained in this Agreement.

l) Dishonesty, including but not limited to, knowingly falsifying of any document including employment applications, time records, manifests or any other document.

m) Failure to report a hazardous situation, accident or injury immediately or, at first opportunity to the dispatcher or supervisor. For purposes of this Section, a "hazardous situation" includes, but is not limited strictly to, a bio-hazard such as blood or other body fluid being present on the Company vehicle.

n) Selling any product or propositioning a sale of any product or service to a passenger while in revenue service.

o) Gross insubordination or refusal to perform assigned work.

p) Conviction of, whether in Company or any other motor vehicle, a serious traffic violation, including DUI, vehicular manslaughter, reckless driving or any driving offense involving alcohol or drugs.

q) Violation of the Company Drug and Alcohol, Cell phone, Unlawful Harassment and Transdev World Class Safety Policies and Procedures may also be considered serious infractions.

Section 10.5 - Safety Policy.    Because our clients rely upon Transdev Services for qualified, well trained and safe drivers, a good safety record on the part of our drivers is essential for us to serve our clients in the safe professional manner that they expect. It is the policy of Transdev Services that safety and accident prevention shall be considered of primary importance in all phases of operations and administration. Delete the remainder of this article.

Section 10.6- Safe Vehicles.    No employee shall be disciplined for refusing to drive an unsafe vehicle nor shall any employee be required to drive a bus that has not been determined by the maintenance department to be safe, nor shall any employee be required to transport a passenger in a mobility assistance device unless the proper number of securement straps or devices, as determined by the Company, are provided in the vehicle.

## ARTICLE 11- ATTENDANCE

Employees will comply with the Company's Attendance Policy. Any changes to this policy will be presented to the Union a minimum of fourteen (14) business days prior to implementation.

## ARTICLE 12- GRIEVANCE AND ARBITRATION PROCEDURES

<u>Section 12.1 -Definition</u>. For purposes of this Agreement a grievance is defined as any dispute, claim or complaint involving the interpretation or application of the provisions of this Agreement, not settled through the process outlined below. Said grievance also includes any claim under state substantive or federal law. All such grievances or claims shall be settled and determined exclusively by the grievance procedure, the only claims filed out side of this provision shall be limited to claims arising under the NLRA which shall be referred to those processes established by the NLRB. In the event such a claim is made, the following procedures must be followed.

<u>Section 12.2 – Filing a Grievance</u>. The grievance must set forth the nature, details, date of the alleged violation, and Article and Section of this Agreement claimed to have been violated. The written grievance must be presented by the employee or the Union to the General Manager or his designee within ten (10) business days following the occurrence out of which the grievance arose. Failure to present the grievance within ten (10) business days will be deemed a waiver of the grievance.

**STEP 1**

Such grievance will be presented in writing to the Assistant General Manager for operations, or his designee. Within ten (10) business days of receipt of the grievance, a meeting will be scheduled between the employee, the shop steward, and the Assistant General Manager Operations, or his designee. A representative of the Union shall accompany the employee, if requested. If the Assistant General Manager Operations or his designee and the grievant are unable to arrive at a satisfactory settlement during the meeting, the General Manager or his designee will provide a written answer to the Union within ten (10) business days after the date of the meeting.

## STEP 2

If the grievance is not resolved in Step 1, the Union must refer the grievance in writing to the General Manager, or his designee within ten (10) business days after receipt of the Step 1 decision. Failure of the Union to request Step 2 within the ten calendar days shall constitute a waiver of the grievance.  Upon receipt of the written Step 2 grievance:

    a)   The General Manager, or his designee, and a representative of the Union will meet in person or via conference call within ten (10) business days after the receipt of the Grievance.  The grievant may be invited to participate in this Step 2 hearing.

    b)   If the parties are unable to arrive at a satisfactory settlement during the meeting, within ten (10) business days of the meeting the General Manager, or his designee, will provide a written answer to the Union.

## STEP 3

If the grievance has not been settled in Step 1 or Step 2, the Union may, within ten (10) business days of receipt of the Company's Step 2 decision, submit the grievance to an arbitrator. Failure of the Union to request arbitration within the ten calendar days of the Company's Step 2 response shall constitute a waiver of the grievance by the Union and the employee.

Section 12.3- Expedited Procedure.  The Company and the Union may agree to submit the grievance to either a Board of Adjustment or an expedited arbitration process subject to the following conditions:

    The Board shall consist of two (2) members selected by the employer and two (2) members selected by the Union.  The Board shall proceed to hear the matter in question; each party being permitted to produce such evidence as may be material.  The Board shall have no jurisdiction or authority to add to, subtract from, or alter in any way the provisions of this contract, but shall have authority to interpret or to apply the provisions thereof to the extent necessary for the determination of grievances heard. A decision shall be rendered promptly in writing, a copy of such decision to be delivered to each party.   A majority award by a Board shall be final and binding in the resolution of the grievance before it.

a) Both parties must mutually agree to expedited arbitration to resolve a specific grievance, and legal counsel will not be used as advocates.

b) The hearing will be informal

c) No briefs will be filed

d) Formal rules of evidence will not be strictly followed.

e) The arbitrator may issue a bench decision at the conclusion of each hearing, but in any event will render a decision within 48 hours after the conclusion of each hearing

f) The arbitrator's decision will be based on the record before the arbitrator, and may include a brief written explanation of the basis for such conclusion

g) The arbitrator's decision will be final and binding upon the parties. An arbitrator who issues a bench decision will furnish a written copy of the award to the parties within forty-eight (48) hours of the close of the hearing

h) No decision by an arbitrator in this expedited process will be deemed to establish practice or any precedent for future proceedings

i) The fees of the arbitrator will be borne equally by both parties

j) No decision by an arbitrator in the expedited process will be deemed to establish practice or any precedent for future proceedings.

<u>Section 12.4 – Arbitrator Selection</u>. If the expedited arbitration procedure is not selected by the parties, the Company and Union will mutually select an arbitrator from a list of seven (7) qualified arbitrators provided by the Federal Mediation and Conciliation Service. This selection will be completed within ten (10) business days, if possible. The decision of the impartial arbitrator will be final and binding on the parties hereto. The fee, if any, of the impartial arbitrator will be borne equally by the parties hereto. All other mutually agreed to expenses of arbitration, excluding legal fees, are to be divided equally between the parties hereto. The arbitrator shall have no power to add to, subtract from or modify any provision of this Agreement, nor shall the arbitrator have the power to order the Company to do anything that will cause the Company to violate any provision of its Agreement with the client.

## ARTICLE 13- CATEGORIES OF EMPLOYEES

Section 13.1 -Regular Full-Time.  Employees whose regular scheduled bid is at least thirty (30) hours in a workweek shall be classified as Regular Full-Time.

Section 13.2 -Regular Part-Time.  Employees whose regular scheduled bid is less than thirty (30) hours in a workweek shall be classified as Regular Part-Time.

Section 13.3 -Part-Time Casual.  Part-time employees who are regularly scheduled to work less than thirty (30) hours per work week, and who do not have a regular bid assignment, or who work on an irregular basis throughout the year or work weekend only shifts shall be classified as Part-Time Casual.

Section 13.4-Classification Change.  Part-time employees may be required to work more than thirty (30) hours in a workweek to meet unusually high service demands or other unusual situations.  If a full-time employee's schedule changes to where he is scheduled and works less than thirty (30) hours in a workweek, each week for six (6) consecutive pay periods, his classification will be changed to Regular Part-Time. Nothing in this Agreement shall be construed as a guarantee of hours.

## ARTICLE 14- HOURS OF WORK & PAY

Section 14.1 -Pre-trip Duties.  Employees are required to perform various pre-trip duties prior to departure from the facility when their trip starts from the garage. Employees are permitted Ten (10) minutes for performing the required pre-trip duties. When performing a relief, the Operator will perform a safety walk around inspection when taking over the vehicle, and then a vehicle inspection at subsequent layover points with time required to be included in the schedule.

Section 14.2- Post-trip Duties.  An operator's paid time ends after their last trip is performed and the vehicle is refueled, returned to the yard and the post-trip is completed.

Section 14.3- Workweek. The workweek shall begin at 12:01 AM on Sunday and shall end at Midnight Saturday.  Employees shall be paid every two weeks, with paydays on alternate Fridays.

Section 14.4 – Overtime.  Unless otherwise stated in this Agreement, time and one half shall be paid for all hours actually worked in excess eight (8) hours per day or forty (40) hours per week. Employees who bid or are assigned a shift comprised of a four (4) day work week containing four (4) ten (10) hour work days shall be paid time and one half for all hours actually worked in excess of ten (10) hours per day or forty (40) hours per week.

## ARTICLE 15- SENIORITY

Section 15.1– Definition.  Seniority is defined as the length of time an employee has been continuously employed by the Company since the date of his most recent employment by the Company. The Company will recognize seniority rights from the employee's first day of work. If more than one employee begins work on the same day, the employee with the earliest date on their application will have the highest seniority.   When these same employees also share the same application date, then the employee with the earliest time and date of their drug screen will have the higher seniority.

Section 15.2– Layoff.  When a reduction in the workforce becomes necessary, such layoff will be made in the reverse order of seniority. Likewise, the employee with the most seniority will be the first one recalled from layoff.

Section 15.3– Use.  Seniority will commence with the date of employment.  Seniority will be observed with regard to all layoffs, rehiring, job bids, and vacation selection. The Company and the Union will have the authority to determine seniority dates for employees in the unit and to resolve conflicts among employees as to seniority dates.

Section 15.4– Continuous Service.  Unless otherwise stated, wherever reference is made to "continuous service" in this Agreement, shall be interpreted to mean employment without a break with the Company, or with a predecessor employer, when such predecessor employer serves as a contractor to the client. "Seniority" is defined as continuous service with the Company, or its predecessors, under contract with the client for purposes of determining wages, vacation accrual and classification seniority.

Section 15.5– Seniority List.  Within 30 days after the signing of this Agreement, and quarterly thereafter, a list of employees arranged in the order of their seniority will be posted in a conspicuous place at the place of employment. One seniority roster will be

maintained for all employees. A Union representative will be provided a current seniority list. The Union will immediately notify Company of any errors in the seniority list.

Section 15.6 -Probationary Period.   All employees will be on probation until they have completed ninety (90) working days following the completion of training with the Company. Until completion of said probationary period, an employee may be terminated at the complete discretion of the Company, and such termination will not be subject to the grievance provisions of this Agreement.

Section 15.7- Seniority Broken.   Continuity of service will be broken and seniority will terminate by:

a) Resignation

b) Discharge for just cause.

c) Failure to return to work from layoff within thirty (30) business days when called

d) Absence without leave or communicating with the Company for three (3) consecutive scheduled work days.

e) Layoff of twelve (12) months or more.

f) Promotion out of the bargaining unit for a period in excess of six (6) months.

Section 15.8- Seniority Not Broken.   Continuity of service will not be broken and seniority will not terminate by:

a) Authorized leave of absence.

b) Leave of absence to serve in the Armed Forces of the United States, as provided by law.

c) Absence due to authorized vacation or other PTO.

d) Absence due to sickness while such sickness continues, but not to exceed twelve (12) months unless extended by the Company and the Union.


## ARTICLE 16- BIDDING


Section 16.1 - Procedure.   The Company shall conduct General Bids at least 2 times each year, at a time determined by the Company or as required due to changes in demand for the service. The General Bid shall be posted at least seven (7) business days prior to bidding with a copy sent to the Local Union, when possible. Posted runs shall show the

approximate start and the approximate end times of the shift.

Section 16.2. Operators shall bid in seniority order as quickly as reasonably possible (three minutes maximum), so as not to hold up the bidding process. If an operator is unable to bid, a union representative shall make his/her selection. Employees may leave a list of proxies with the Company and the Union prior to the bid.

Section 16.3. Employees absent due to illness or injury of the employee will be permitted to bid if the bus operator has a release from a physician to return to unrestricted duty no later than the date the new bid becomes effective.

Section 16.4. A bid shall not be construed to mean that this is a minimum **or** maximum time the employee will work. Employees shall be required to call the evening prior to their scheduled work shift to obtain their actual starting time for the next day's work. The actual start time may vary from the bid time due to the demand of the system. During the work day, the number of trips or the circumstances of system demand, cancellations or add-ons may result in the end time of the shift being before or after the scheduled time.

Section 16.5 - Split Shifts. Split shifts may be designed based on the needs of the operation or requirements of the Client. Time in between split shifts shall be unpaid.

## ARTICLE 17- DRUG AND ALCOHOL PROGRAM

Employees will comply with Transdev's Drug and Alcohol Policy. Any changes to this policy will be presented to the Union a minimum of 14 business days prior to implementation.

## ARTICLE 18- MEAL & REST BREAKS

Section 18.1- Meal Periods. The Union and the Company intend for this section to comply with the "opt-out" provisions of California Labor Code section 512(e) with respect to all commercial drivers as defined in California Labor Code sections 512(f)(2) and (g)(l) employed in the bargaining unit. Every employee who is scheduled for or works more than six (6) hours during a workday shall be provided with a thirty (30) minute meal period prior to the completion of the fifth (5th) hour of the workday. Every employee who is scheduled for and works in excess of twelve (12) hours during a

workday shall be provided with a second thirty (30) minute meal period prior to the completion of the tenth (10th) hour of the workday. The meal period(s) shall be unpaid unless it is a "on duty" meal period. The Union hereby agrees on behalf of the employees in the bargaining unit that all employees who cannot be relieved of all duties during the employee's meal period due to the nature of the employee's work, as determined in the sole judgment of the Company shall be subject to an on-duty paid meal period agreement. With respect to non-driver employees only, the Union alone may revoke the on-duty meal period agreement at any time.

Section 18.2 - Waiver of Meal Period the Union hereby agrees on behalf of all employees in the bargaining unit to waive any meal period to which any employee might otherwise be entitled when the employee works at least 5 hours but no more than 6 hours during a workday. The Union also agrees on behalf of all employees in the bargaining unit to waive any meal period to which any employee might otherwise be entitled when the employee works at least 10 hours but no more than 12 hours in a workday.

Section 18.3 - Reporting Missed Meal Periods. Section Any employee who believes that he/she did not receive a proper meal period in accordance with this Agreement or law shall make such claim, in writing, to the appropriate supervisor within 24 hours of the end of the shift in which the meal period was allegedly denied or shall be deemed to have waived any right to recover for any failure by the Company to provide the employee with a meal period during such shift. The Company shall not be subject to any civil or statutory penalties with respect to drivers as a result of any violation of the terms and conditions of this section. To the extent the Company fails to provide meal periods in accordance with this Agreement; employees shall be entitled to a monetary remedy equal to one hour's pay. The monetary remedy will be paid only when it is demonstrated that the meal break was missed solely due to company requirements. The Company shall not be subject to any civil or statutory penalties with respect to drivers as a result of any violation of the terms and conditions of this section.

Section 18.4 - Rest Periods. Every employee is authorized and permitted to take a ten (10) minute net rest period for every four hours worked or major fraction thereof, which rest period shall be paid time. The rest period may include periods when the employee is on his/her route but the employee is not required to operate or remain in the vehicle. It is the

responsibility of employees to take rest periods even if it means the employee runs late on his/her route or for the next pickup. If a rest period is interrupted due to business needs, the affected employee is authorized and permitted to take a new, complete ten- minute rest period in place of the interrupted rest period.

Section 18.5 - Reporting Missed Rest Periods. Any employee who believes that he/she did not receive a proper rest period in accordance with this Agreement or law shall make such claim, in writing, to the appropriate supervisor within 24 hours of the end of the shift in which the rest period was allegedly denied or shall be deemed to have waived any right to recover for any failure by the Company to provide the employee with a rest period during such shift.

Section 18.6 Arbitration of All Meal and Rest Period Claims: Any and all disputes or claims alleging that one or more employees was not provided with one or more meal or rest periods in accordance with the requirements of this Agreement or law, whether brought individually or on behalf of one or more additional employees in any form of representative, private attorney general, mass, class or other collective action, shall only be subject to resolution or determination through the grievance and arbitration provisions of this Agreement, which arbitration shall be final and binding on all parties, and may not be brought in any other forum.

## **ARTICLE 19– COMPLETE AGREEMENT**

Section 19.1- Sole Agreement. This Agreement constitutes the sole and entire existing Agreement between the parties and supersedes all prior agreements, commitments and practices, whether oral or written, between the Company and the Union and between the Company and any of its employees covered by this Agreement, and expresses all obligations of and restrictions imposed on the Company.

Section 19.2- Waiver of Bargaining During Term. Notwithstanding any provision of this Agreement, the parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties are set

forth in this Agreement. Therefore, the Company and the Union each voluntarily and unqualifiedly waive the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter specifically referred to or covered in this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated and signed this Agreement. This Section shall not prevent the parties from meeting on and resolving issues that arise during the term of this Agreement.

## ARTICLE 20- SAVINGS CLAUSE

Section 20.1. If any part of this Agreement and/or the attachments hereto are determined to be in conflict with applicable City, State of Federal laws or regulations or becomes in conflict during the life of this Agreement, such part shall be deemed invalid. Such invalidity will not affect any other provision of this Agreement.

Section 20.2. If any parts of this Agreement and/or the attachments hereto are deemed invalid as set forth in Section 1 of this Article, the parties hereby agree to meet for the purpose of renegotiating the affected part of this Agreement. Failing agreement between the parties, the matter shall be submitted to arbitration for final resolution.

Section 20.3. The parties agree that the terms and conditions of this collective bargaining agreement supersede the provisions of the San Francisco Minimum Compensation Ordinance, San Francisco Minimum Wage Ordinance, San Francisco Sick Leave Ordinance and any and all applicable Living Wage Ordinances.

## ARTICLE 21- UNION SECURITY

Section 1 -Union Shop: All persons employed by the Company in the bargaining unit which is the subject of this Agreement shall become members of the Union not later than the thirty-first (31st) day following the beginning of their employment. The continued employment by the Company in said unit shall be conditioned upon the payment of the periodic dues of the Union. The failure of any employee to become a member of the union not later than the thirty-first day following the date of the employment shall obligate the Company, upon written notice from the Union to such effect, and to the further effect that Union membership was available to such a person on the same terms and conditions generally available to other members, to forthwith

discharge such person. Further, the failure of an employee to maintain his Union membership in good standing by his failure to pay the periodic dues of the union shall, upon written notice to the Company by the Union to such effect, obligate the Company to discharge such person.

## ARTICLE 22-WAGES

| Length of Service | Drivers | Aides |
|---|---|---|
| | | |
| Training | $12.66 | $12.66 |
| | | |

## Drivers

| | June 14, 2015 | July 1, 2016 | Jan. 1, 2017 | July 1, 2017 | July 1, 2018 | Jan. 1, 2019 | July 1, 2019 |
|---|---|---|---|---|---|---|---|
| (The Sunday following the 1st of dates shown) | | | | | | | |
| New Hire < 1 yr. | $17.25 | $17.50 | $17.50 | $17.75 | $18.00 | $18.50 | $19.00 |
| < 1 Year, current | $18.00 | | | | | | |
| 1 year - 2 year | $18.35 | $18.65 | $19.15 | $19.70 | $20.10 | $20.60 | $21.10 |
| 2 year - 3 year | $19.10 | $19.50 | $19.70 | $20.30 | $21.00 | $21.50 | $22.00 |
| 3 year - 4 year | $19.10 | $20.10 | $20.30 | $20.90 | $21.50 | $22.05 | $22.60 |
| 4 year - 5 year | $19.10 | $20.50 | $21.00 | $21.65 | $22.50 | $23.10 | $23.90 |
| 5 year + | $19.10 | $20.60 | $21.50 | $22.75 | $23.35 | $24.00 | $25.00 |
| 6 year + | | | | | $23.75 | $24.25 | $26.00 |

## Bus Aides

| | June 14, 2015 | July 1, 2016 | January 1, 2017 | July 1, 2017 | July 1, 2018 | July 1, 2019 |
|---|---|---|---|---|---|---|
| >1 year | $15.00 | $15.50 | $15.50 | $16.00 | $16.00 | $17.00 |
| 2 year + | $15.50 | $16.75 | $17.00 | $17.50 | $17.50 | $18.10 |
| 3 year + | | | $17.25 | $17.75 | $18.00 | $19.10 |
| 4 year + | | | $17.50 | $18.00 | $18.50 | $19.75 |

Cash out Procedures:
- Any payment to cash out Paid Time Off accruals will be made on the payroll following the receipt of the Cash Out form.
- Paid Time Off cash outs will be made in increments of 8 hours.
- Cashing out of Paid Time Off will only be done when the employee will have at least three (3) days of PTO accruals remaining after the cash out transaction.

## ARTICLE 23- MEDICAL BENEFITS

Section 23.1 PPACA. Except as provided below, the Company agrees to maintain health insurance coverage in effect for individuals who are Employees on or before the Effective Date of this Agreement throughout the term of this Agreement.  For Employees hired after the Effective Date of this Agreement, the Company's only obligation is to comply with the U.S. Patient Protection and Affordable Care Act, as amended, and related regulations ("PPACA"). The parties agree that PPACA may require the Company to make changes to the health insurance coverage provided to Employees.  The parties further agree that implementation of PPACA may create an opportunity for the Company to provide quality affordable health insurance coverage to Employees on a more cost effective basis than has previously existed.  Accordingly, the parties agree that at any time during the term of this Agreement the Company has the sole right to modify, amend, add to, reduce, and make any other changes to the health insurance coverage provided to Employees, provided that such changes are determined by the Company in its discretion to either:  (1) be required in order to ensure compliance with PPACA;   (2) enable Employer to provide quality affordable health insurance coverage to Employees on a more cost effective basis to both the Company and Employees as a result of PPACA; and/or (3) enable the Employer to avoid payment of the excise tax. The parties further agree that the Company may, at any time during the term of this Agreement and at the Company's sole discretion, layer a high deductible health insurance plan onto the health care benefits offered to Employees in addition to (but not in place of) the health care benefits already provided.

Section 23.2 Health Care Security Ordinance. The Company agrees to comply with the provisions of the San Francisco Health Care Security Ordinance (HCSO) by spending a minimum amount on health care benefits for each covered employee. The Company agrees to contribute up to the maximum number of hours per month and/or quarter for each eligible employee based on each employee's hours at the applicable rate.

Section 23.3 – Group Medical Benefits.  Group medical, dental and vision insurance when they become benefits eligible, which is on the first of the month following ninety (90) days of continuous employment. The Company shall contribute the amount required per hour

under the HCSO to Group Medical Benefits for each eligible employee.

The Company shall contribute the following amounts toward the cost of group health insurance including medical, dental and vision:

| Effective: | 1-1-16 | 1-1-17 | 1-1-18 | 1-1-19 | 1-1-20 |
|---|---|---|---|---|---|
| | $520.00 | $550.00 | $575.00 | $600.00 | $620.00 |

<u>Section 23.4- Medical Contributions</u>.  The Company shall contribute the amount required per hour under the HCSO to Healthy San Francisco for all eligible employees who choose to forego Group Medical Benefits without signing a Waiver to fulfill the San Francisco Health Care Security Ordinance (HCSO) requirements.

## ARTICLE 24- PAID AND UNPAID TIME OFF

<u>Section 24.1- PTO Eligibility</u>.  All employees shall be eligible to take paid time off (PTO) for vacation, sick, or personal reasons. All Employees will accrue 0.04615 (96/2080) hours of PTO for every hour worked. Employees accrue a maximum of 12 paid days (96 hours) per rolling 12-month period from the employee's hire date. Employees shall accrue a maximum hours of 1.75% of the maximum days (calculated at 8 hours per day) accrued, and shall stop accruing upon reaching that amount.

Increase the current twelve (12) paid days off accruals to the following:

| Effective: | 7-1-16 Days | 7-1-17 Days | 7-1-18 Days | 7-1-19 Days |
|---|---|---|---|---|
| Employees with Less than 2 years | 12 | 13 | 13 | 13 |
| Employees with 2 years or more | 14 | 15 | 15 | 17 |
| Employees with 4 years or more | 18 | 20 | 22 | 25 |

<u>Section 24.2 - Holiday Pay</u>: Effective 7-1-15 the following paid holidays will be added:

| Effective | 7-1-15 | 7-1-16 | 7-1-17 | 7-1-18 | 7-1-19 |
|---|---|---|---|---|---|
| All Employees | 2 | 3 | 3 | 4 | 5 |

The two holidays from 7/1/15 through 6/30/16 are Thanksgiving and Christmas. The additional third holiday is New Year's Day, the fourth additional is Independence Day and the fifth is Labor Day.

**Payment of Holiday Pay:** Holiday pay, as provided in this Article, shall be paid eight (8) hours pay at straight time for active employees assigned to a five (5) day work packet. Active employees assigned to work a four (4) day work shift bid shall receive ten (10) hours pay at straight time.

**Work requirements for Eligibility:** In order to be eligible to receive holiday pay as provided in this Article, an employee must work the last scheduled shift the days before and after the holiday and the holiday if scheduled.

Work to be performed on Holidays will be offered by seniority. If there is not enough volunteers then the Company shall force in reverse seniority.

**Pay for Time Worked on a Holiday:** An employee, who works on a day recognized as a holiday in this Article, shall also receive the straight-time hourly rate for all hours worked on the Holiday.

Section 24.3- UTO. All employees shall be eligible to take unpaid time off (UTO) for vacation, sick or personal reasons. Full-time employees may take up to eight (8) unpaid days (64 hours) off per year. Full-time employees (employee working at least 173 hours per month) accrue 5.33 hours per month. Part-time employees will accrue a prorated equivalent of unpaid day off per year based on the number of hours worked. All Employees shall accrue a maximum of eighty (80) hours, and shall stop accruing upon reaching that amount. Phase out unpaid time off (UTO) by two (2) days upon ratification; five (5) additional days beginning July 1, 2016, and remaining days effective July 1, 2017.

Section 24.4- PTO and UTO Approval. It is agreed that a maximum of three (3) Drivers and one (1) Aides may be scheduled off on any one day. Actual approvals will be made

at the sole discretion of the Company based on Operational needs. However, every reasonable effort will be made to approve PTO and UTO when possible.

## ARTICLE 25- RETIREMENT / 401K

Employees may contribute to a pre-tax retirement savings plan after six (6) months of employment. All full time and part time employees will be offered participation in a Teamster 853 sponsored 401(k) plan with a waiting period for new hires of the first quarter following 180 days of employment. The Company shall contribute into each employee's 401(k) plan, matching funds at a rate of 50% for every dollar deferred by the participant, up to a maximum of 6% of eligible compensation (3% maximum Company contribution). The 401K vesting for the Company contributions will be immediately.

## ARTICLE 26 – PROTECTION OF RIGHTS

The Employer shall not enter into any agreement or contract with persons covered by this Agreement individually or collectively, which in any way conflicts with the terms and provisions of this Agreement. Any such Agreement or Contract shall be null and void. Persons covered by this Agreement shall work in accordance with this Agreement. The Employer recognizes and acknowledges this agreement. Any past agreements, verbal or written, will no longer be in effect from the date of signing of this Agreement. There shall be no past practice whatsoever. All persons covered by this shall conform with all Federal and State of California Laws and Regulations regarding transportation and safety. The Employer reserves the right to develop and implement policies, rules and procedures that insure compliance with any law or regulation.

## ARTICLE 27- DURATION

This Agreement shall be effective upon signing, and shall remain in full force and effect up to and including June 30, 2020, and shall continue thereafter from year to year, unless at least ninety (90) days prior to June 30, 2020, either party shall file written notice

with the other party of its desire to amend, modify, or terminate this agreement.

**Signatures**

_____
Transdev Services, Inc.

_____
IBT Local 853

_____
IBT Local 853

**PROOF OF SERVICE**

*Ganther v Transdev Services, Inc.*
County of Napa Superior Court Case No. 22CV000632

    I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 300 South Grand, Suite 1500, Los Angeles, CA 90071. On July 20, 2022, I served a copy of the within document(s):

**NOTICE OF REMOVAL BY DEFENDANT
TRANSDEV SERVICES, INC.**

as follows:

☒    by sealing the document(s) listed above in an envelope and placing it for collection, which would, in the ordinary course of business, be deposited with the United States Postal Service on this date for delivery to the person(s) at the address(es) set forth below. by sealing the document(s) listed above in an envelope and placing it for collection, which would, in the ordinary course of business, be deposited with the United States Postal Service on this date for delivery to the person(s) at the address(es) set forth below.

☐    by sealing the document(s) listed above in an envelope and causing them to be personally delivered *via* courier to the person(s) at the address(es) set forth below.

☐    by electronically serving the document(s) listed above *via* File&ServeXpress on the recipient(s) designated on the Transaction Receipt located on the File&ServeXpress website.

☐    by sealing the document(s) listed above in a FEDEX envelope/box and placing it for collection, which would, in the ordinary course of business, be deposited with FEDEX for delivery to the person(s) at the address(es) set forth below.

☒    by emailing a true and correct copy of the document(s) listed to the person(s) at the email address(es) set forth below.

| | |
|---|---|
| Roman Otkupman, Esq.<br>Roman@OLFLA.com<br>Nidah Farishta, Esq.<br>Nidah@OLFLA.com<br>OTKUPMAN LAW FIRM, A LAW CORPORATION<br>5743 Corsa Ave., Suite 123,<br>Westlake Village, CA 91362<br>Telephone: (818) 293-5623<br>Facsimile: (888) 850-1310 | Attorney for Plaintiff |

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 20, 2022, at Los Angeles, California.

*/s/Dana Chan*
DANA CHAN

ANSWER BY DEFENDANT TRANSDEV SERVICES, INC.

CASE NO. 22CV000632

HUSCH BLACKWELL LLP
300 SOUTH GRAND, SUITE 1500, LOS ANGELES, CA 90071
(213) 337-6550